## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| INTERTOUCH HOLDINGS LLC, | Case No. 18-12772 (BLS) |
| Debtor. | |
| In re: | Chapter 11 |
| INTERTOUCH TOPCO LLC, | Case No. 18-12773 (BLS) |
| Debtor. | |

## GATE WORLDWIDE HOLDINGS LLC'S EMERGENCY MOTION TO DISMISS THE DEBTORS' CHAPTER 11 CASES PURSUANT TO § 1112(b) AND/OR ABSTAIN FOR HEARING DEBTORS' CHAPTER 11 CASES PURSUANT TO § 305(a) OF THE BANKRUPTCY CODE

Gate Worldwide Holdings LLC ("GWH") moves (the "Motion") on an emergency basis to dismiss the Chapter 11 cases filed by interTouch Topco LLC ("Topco")[1] and interTouch Holdings LLC ("interTouch" and collectively the "Debtors")[2] (collectively the "Bankruptcy Cases") pursuant to Section 1112(b) of Title 11 of the United States Code (the "Bankruptcy Code"), or in the alternative, to abstain from hearing the Bankruptcy Cases under Section 305(a) of the Bankruptcy Code. This Motion is supported by the *Affidavit of Joseph L. Clasen in Support of GWH's Emergency Motions for (i) Entry of an Order Dismissing Debtors' Bankruptcy Cases Pursuant to Sections 1112(b) and/or 305(a) of the Bankruptcy Code and (II) Entry of an Order Granting Relief from the Automatic Stay Pursuant to Section 365(d) of the*

---

[1]    Topco filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code on December 10, 2018, case number 18-12773.

[2]    InterTouch filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code on December 10, 2018, case number 18-12772.

*Bankruptcy* Code (the "Clausen Affidavit"), filed contemporaneously herewith.   In further support of this Motion, GWH respectfully states:

<u>**INTRODUCTION**</u>

1.        The Debtors, two holding companies with no business operations, and no prospect of reorganizing, filed Chapter 11 bankruptcy petitions at 4:30 a.m. on December 10, 2018 and just hours before the Supreme Court of the State of New York, County of New York (the "New York Court") in an action entitled *Gate Worldwide Holdings LLC v. interTouch Holdings LLC, et al.,* Index No. 650026/2018 (the "New York Action") was scheduled to enter a final order approving the sale of Topco's 100% ownership interest in and control of interTouch to GWH. Rather than allowing the New York Court to enter its order, Seale A. Moorer, Jr. (the "Principal"), a principal of the Debtors, authorized the bankruptcy filings in an effort to benefit from the Bankruptcy Code's automatic stay provisions.

2.        It is clear from the record that the Debtors' only reason for filing the bankruptcy petitions was to delay and frustrate GWH's efforts to partially satisfy an over $50 million New York Court judgment through the acquisition of the Topco's 100% interest in interTouch. Indeed, the Debtors agreed to a New York Court-sanctioned sale process and public sale of interTouch; however, after GWH prevailed as the highest bidder under the sale process, and after a Friday, December 7, 2018 hearing in the New York Court (required to confirm the sale), on Monday, December 10th, the Debtors filed the Bankruptcy Cases, hours before the New York Court entered the order confirming the sale.

3.        By filing the Chapter 11 petitions, the Debtors unequivocally attempt to (1) stay the sale of Topco's 100% interest in interTouch, (2) relitigate claims that have already been decided against the Debtors in the New York Court, and (3) frustrate GWH's efforts to gain

satisfaction of its judgment.  These grounds, when coupled with the fact that the Debtors have no prospect of reorganizing, require dismissal under Third Circuit precedent.  Stated simply, the Debtors do not seek to preserve assets or properly reorganize their businesses; rather, the Debtors seek only to delay the transfer of their business, impose unnecessary and substantial costs upon GWH, and undermine the orders of the New York Court.  Accordingly, this Court should exercise its statutory authority, broad discretion and equitable powers to dismiss the Debtors' cases for lack of good faith.

## JURISDICTION

4.       This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b).  The Motion is a core matter within the meaning of 28 U.S.C. § 157(b)(2).

5.       Venue of the Motion in this Court is proper pursuant to 28 U.S.C. § 1409.

6.       The statutory predicates for the relief requested herein are sections 105(a), 305(a), and 1112(b) of the Bankruptcy Code and related Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## FACTS[3]

**The Parties:**

7.       Topco and interTouch are two Delaware limited liability companies that were formed on or around September 29, 2015.  Both entities are affiliated entities of a non-debtor, ST Holdings, LLC ("ST Holdings"), a limited liability company owned and controlled by the Principal.  *See* New York Complaint (attached as <u>Exhibit 1</u> to the Clasen Affidavit), ¶¶ 2-5.

8.       ST Holdings owns 100% of the membership interest in Topco.  *See id.*

---

[3]       The factual assertions are supported by documentary evidence submitted as exhibits attached to the Clasen Affidavit.

9.     In turn, Topco is a holding company that owns one asset: 100% of the membership interest in interTouch.  Topco has no independent business operations, has no employees—and gleaned from the identical list of creditors contained in *List of Creditors Who Have the 20 Largest Unsecured Claims and are not Insiders*—no real operating expenses or revenues, other than professional fees and intercompany debts.  *See id.*, ¶¶ 2-6; *see also* Bankruptcy Petitions filed by Topco and interTouch (Dkt. Entry No. 1).

10.     interTouch is also a holding company, which owns 100% of the interest in two operating entities, interTouch Pte. Ltd. based in Singapore and Nomadix Inc. based in California.  *Id.*  According to the company's website, interTouch Pte. Ltd. and Nomadix Inc. provide wireless broadband connectivity services, multimedia services, interactive TV and networking monitoring to hotels around the world.  *See* www.intertouch.com/company.

11.     Similar to Topco, interTouch does not own any other assets, conducts no regular business operations, incurs no operating expenses, generates no operating revenue, and does not have any employees.  *See* New York Complaint (Clasen Aff., Ex. 1).

12.     GWH is a limited liability company organized under the laws of Delaware.  *See id.*

**The Note Purchase Agreement and Promissory Note:**

13.     On or about September 29, 2015, interTouch entered into a Note Purchase Agreement (the "NPA") with non-party NTT Docomo, Inc. ("Docomo").  The NPA governed the obligations owed by interTouch to Docomo.  *See id*, ¶ 9; Copy of the NPA is attached as Exhibit A to the Complaint.  (The NPA, all amendments and modifications thereto, all promissory notes, collateral agreements, guarantees and other note documents and obligations are collectively referred to as the "Note Documents.")

14.     On or about September 29, 2015 and pursuant to the NPA, interTouch duly executed, acknowledged, and delivered to Docomo a Note in the original principal amount of Fifty-Five Million Dollars ($55,000,000), by which interTouch agreed to repay pursuant to the terms of the Note and NPA.  *See* New York Complaint (Clasen Aff., Ex. 1), ¶ 10; Copy of the Note is attached as Exhibit B to the Complaint.

15.     Under the terms and provisions of the NPA and Note, interTouch was required to pay all of the outstanding principal of the Note on the Maturity Date of March 31, 2017.  The failure to pay any part of the principal of the Note when due constituted an "Event of Default." *See* New York Complaint (Ex. 1), ¶¶ 12, 15; *see also* Note attached as Exhibit B to the Complaint.

16.     As security for payment under the Note, Topco and other related entities executed various guaranties and pledges.  These guaranties and pledges were part of the consideration to Docomo and secured the obligations under the Note.  *See* New York Complaint (Clasen Aff., Ex. 1), ¶¶ 28-37 10; Copies of the Topco Guaranty and UCC-1 Financing Statement are attached as Exs. G & H to the New York Complaint.

17.     Specifically, Topco executed a guaranty, which provided that in the event that interTouch failed or was unable to pay or perform its obligations under the Note, Docomo or its assigns may proceed directly against Topco to obtain performance and to collect and recover the full amount, or any portion, of the obligations that are due and payable (the "Topco Guaranty"). *See id.*, ¶¶ 35-36.

18.     The Topco Guaranty was secured by a Membership Interest Pledge, which provided that Docomo and its assigns had a first priority security interest in "the membership interest units of [interTouch] owned by [Topco], as such amount may be adjusted from time to

time by [interTouch], pursuant to splits, together with all certificates, options, or rights of any nature whatsoever that may be issued or granted in such membership interest units by [interTouch] to [Topco] while this Agreement is in effect."[4]  *See id.* & Exhibit G to New York Complaint.

19.     interTouch caused an Event of Default by failing to pay all outstanding principal of the Note by or on the Maturity Date of March 31, 2017.  *See* New York Complaint (Clasen Aff., Ex. 1), ¶¶ 51-58.

**Assignment of Note Documents**

20.     On or about August 30, 2017, Docomo assigned to GWH all rights, title, and interests in, to, and under the Note Documents.  *See* New York Complaint, ¶ 47.  Pursuant to the Purchase Agreement, Docomo agreed to assign, sell, convey, endorse and deliver to GWH, its successors and assigns, to have and to hold forever, all of Docomo's rights, title and interests in, to and under the Note, the Note Purchase Agreement and all other Note Documents (including, without limitation, the right to act as Noteholder, Pledgee, Holder and Secured Party thereunder).  *See id.*, ¶¶ 48-50.

**The Forbearance Agreement**

21.     On October 6, 2017, GWH, on the one hand, and interTouch, Topco, ST Holdings, and Nomadix, Inc. (the "New York Court Defendants"), on the other, entered into a forbearance agreement (the "Forbearance Agreement").  *See* New York Complaint, ¶¶ 59-63; Copy of the Forbearance Agreement is attached as Exhibit L to the New York Complaint.

---

[4]     Other related business entities also pledged collateral to secure the Note.  Nomadix executed a Patent Security Agreement providing the holder of the Note with a security interest in Nomadix's patents.  ST Holdings executed a Membership Interest Pledge in the membership interest units of Topco.  *See* New York Complaint (Clasen Aff., Ex. 1), ¶¶ 18, 38.

22.     Pursuant to the Forbearance Agreement, GWH agreed to forbear from enforcing its rights and remedies under the NPA and related documents until November 1, 2017, subject to certain representations, warranties, covenants, and acknowledgments by the New York Court Defendants.  *See id.*

23.     Section 2(d) of the Forbearance Agreement provides:

> The Obligors [Defendants] confirm, acknowledge and agree that the current amounts owing under the Note Purchase Agreement and Other Note Documents is $48,050,000.00, plus interest, fees and all other amounts, and such amounts would be due under the Note Purchase Agreement and Other Note Documents absent the forbearance as provided in this Forbearance Agreement. ***Obligors [Defendants] agree that the foregoing amounts would be due and payable from Obligors [Defendants], are not contested by Obligors [Defendants], and that there would be no defenses, right of offset, credits or other claims or defenses with respect to such foregoing amounts.*** The Obligors further confirm that the Noteholder (including, for the avoidance of doubt, any predecessor thereof) has fully and timely performed all of its obligations and duties in compliance with the Note Purchase Agreement, the Other Note Documents and applicable law, and has acted reasonably, in good faith, and appropriately under the circumstances.

24.     Notwithstanding, to date, interTouch and Topco have failed to comply with their obligations under the Note Documents, including payment of the amounts due and owing GWH. *See* New York Complaint, ¶ 63.

**The New York State Court Foreclosure Action**[5]

25.     On January 3, 2018, GWH commenced the New York Action against the New York Court Defendants.  The New York Action was filed in order for GWH to enforce the terms of the Note and Forbearance Agreement.  *See* New York Complaint (Clasen Aff., Ex. 1).

---

[5]     GWH requests that this Court take judicial notice of the existence of pleadings, notices, and orders in the New York State Court Action, which the Court is permitted to do. *See O'Boyle* v. *Braverman*, 337 F. App'x 162, 164-65 (3d Cir. 2009) (affirming lower court's ability to take judicial notice of state court proceedings).  For ease of reference, the relevant pleadings, notices, and orders in the New York Action have been attached as exhibits to the Clasen Affidavit.

27528190.2 12/13/2018

26.    Shortly after the New York Action was commenced, GWH moved for summary judgment on its various claims, including its breach of contract claim and its claim seeking to foreclose on Topco's Membership Pledge.  *See* Notice of Motion for Summary Judgment (attached as Exhibit 2 to the Clasen Affidavit).

27.    On June 20, 2018, the New York Court granted GWH's Motion for Summary Judgment, in part, and on June 29, 2018, entered a judgment against interTouch, Topco, and Nomadix, Inc. in the amount of **$49,658,725.62**, with interest accruing on that judgment debt at a rate of 9% (the "New York Court Judgment").  *See* 06/20/18 H. Tr. (attached as Exhibit 3  to the Clasen Affidavit) & Judgment Order (attached as Exhibit 4 to the Clasen Affidavit).

28.    In an effort to partially satisfy the New York Court Judgment, GWH and the New York Court Defendants stipulated to a public auction process for selling Topco's membership interest in interTouch.  *See* Stipulation and Order for the Public Sale of Subject Collateral (the "Sale Order") (attached as Exhibit 5 to the Clasen Affidavit).  The New York Court So Ordered the Sale Order and selected Traxi LLC as the broker to assist with the public sale.  *See id.*; *see also* Court Notice (attached as Exhibit 6 to the Clasen Affidavit).

29.    Pursuant to the Sale Order, GWH placed an opening credit bid of $10,000,000 for the membership interest units in interTouch.  *See* Sale Order (Clasen Aff., Ex. 5).

30.    Traxi LLC engaged in a robust marketing of the public auction process, including working with interTouch's counsel on the Sale Teaser and Participation Requirements, publishing notices of sale in the Wall Street Journal, and sending solicitation emails to over One Thousand (1,000) potential bidders.  *See* Notice of Motion to Confirm the Sale of interTouch Holdings LLC (attached as Exhibit 7 to the Clasen Affidavit); *see also* Affidavit of Anthony Pacchia (Chief Executive Officer of Traxi, LLC) (attached as Exhibit 8 to the Clasen Affidavit).

8

31.     When the public sale concluded, no other parties had placed a bid.  *See* Clasen Aff., Ex. 7.

32.     On October 30, 2018, GWH filed a motion to confirm and approve the sale of interTouch to GWH for the credit bid amount of $10,000,000 (the "Motion to Confirm").  *See* Clasen Aff., Ex. 7.

33.     The Defendants, including interTouch and Topco, filed an opposition to the Motion to Confirm, baselessly claiming that GWH failed to retain a qualified broker on commercially reasonable terms and failed to take commercially reasonable actions in conducting the sales process.  *See* Opposition to Motion to Confirm (attached hereto as Exhibit 9 to the Clasen Affidavit).

34.     On December 7, 2018, the New York Supreme Court held oral argument on the Motion to Confirm.  At oral argument, counsel for the New York Court Defendants' stated that they had until the December 7, 2018 to make payment on the Judgment and that New York Court Defendants "expect to have that payment by the end of the day."  *See* Transcript of December 7, 2018 Proceeding (attached as Exhibit 10 to the Clasen Affidavit).  At the conclusion of oral argument, the Court stated that if the New York Court Defendants did not make payment on the Judgment by the end of the day, the Court would rule on GWH's sale motion early in the week beginning on December 10th.  *Id.*

35.     The New York Court Defendants did not make any payment on the Judgment by the end of December 7, 2018.  Accordingly, on Saturday, December 8, 2018, GWH advised the Court that no payment was made and requested that the Court proceed with entering the order confirming the sale Topco's 100% ownership interest in  interTouch to GWH.  *See*

Correspondence with the New York Court, dated December 8, 2018 (attached as <u>Exhibit 11</u> to the Clasen Affidavit).

36.     The Court's law clerk, Rose Magaldi, responded "Thank you. We will proceed as the judge indicated when you appeared [at the December 7, 2018 hearing]." *See id*.

37.     At approximately 4:30 a.m. on December 10, 2018, both interTouch and Topco filed the Bankruptcy Cases. *See* Notice of Bankruptcy (attached as <u>Exhibit 12</u> to the Clasen Affidavit).

38.     After the Debtors' filed the Bankruptcy Case but before the Debtors' filed notice in the New York Action, the New York Court entered an order, granting GWH's Motion to Confirm and ordering that the membership interest units in interTouch be transferred to GWH (the "Order Confirming Sale"). *See* Order Confirming Sale (attached as <u>Exhibit 13</u> to the Clasen Affidavit).

## THE BANKRUPTCY CASES

39.     As noted, *supra*, at around 4:30 a.m. on December 10, 2018, and with full knowledge that the New York Court was going to enter the Order Confirming Sale, the Debtors filed the Bankruptcy Cases.

**A.     *The Topco Case***

40.     Topco listed assets of between $0 and $50,000 and liabilities between $0 and $50,000.   However, Topco's *List of Creditors Who Have the 20 Largest Unsecured Claims and are not Insiders* ("Topco Top 20 List") reflects claims of non-insider professionals exceeding $1.2 Million.   *See* Dkt. Entry No. 1 at p. 3.   More troubling is that Topco's Bankruptcy Petition and Topco's Top 20 List, signed under penalties of perjury, omit any reference to GWH or the $50 Million Judgment GWH holds against Topco. *Id.*

41.     The Principal executed the *Unanimous Written Consent of the Sole Member of interTouch Topco LLC*; however, as noted, *supra*, ST Holdings is the sole member of Topco, and not the Principal.  *See* Dkt. Entry No. 1 at pp. 5-6.

42.     Topco did not file any of the Schedules, Statements and other Documents as required by Bankruptcy Rule 1007,[6] nor did it request an extension to file such Schedules, Statements and Documents.

43.     Topco did not file *any* of the typical first day motions, or a declaration in support of such motions, that one would expect to see filed in the Court.

**B.      *The interTouch Case***

44.     interTouch  listed assets of between $0 and $50,000 and liabilities between $500 Million and $1 Billion.  interTouch's *List of Creditor Who Have the 20 Largest Unsecured Claims and are not Insiders* mirror's Topco's Top 20 List, which reflects claims of non-insider professionals in the amount of $1.2 Million.  *See* Dkt. Entry No. 1 at p. 9-10.

45.     The Principal executed the *Unanimous Written Consent of the Sole Member of interTouch Holdings*, *LLC*; however, as noted, *supra*, Topco is the sole member of the interTouch, and not the Principal.  *See* Dkt. Entry No. 1 at pp. 5-6.

46.     interTouch did not file any of the Schedules, Statements and other Documents required by Bankruptcy Rule 1007, nor did it request an extension to file such Schedules, Statements and Documents.

47.     interTouch did not file *any* of the typical first day motions, or a declaration in support of such motions, that one would expect to see filed in the Court.

---

[6]        Bankruptcy Rule 1007 does permit the Debtors to file their Schedules, Statements and Other Documents within 14 days of the Petition Date.

27528190.2 12/13/2018

## RELIEF SOUGHT

48.     GWH seeks dismissal of the Debtors' Bankruptcy Cases with prejudice pursuant to section 1112(b) of the Bankruptcy Code. As set forth below, cause for dismissal exists when a debtor has filed its bankruptcy petition in bad faith.  This Bankruptcy Cases are the paradigmatic bad faith cases.

49.     In the alternative, GWH seeks an order from the Court: (i) abstaining from hearing the Bankruptcy Cases pursuant to section 305(a) of the Bankruptcy Code on the grounds that the Bankruptcy Cases are merely a two-party dispute between the New York Defendants and GWH, and that the Debtors filed in bad faith.

## ARGUMENT

**I.     THE DEBTORS' CHAPTER 11 CASES SHOULD BE DISMISSED FOR CAUSE UNDER SECTION 1112(b) OF THE BANKRUPTCY CODE BECAUSE THEY WERE FILED IN BAD FAITH**

### A.     Legal Standard Governing Motions to Dismiss Under Section 1112(b)

50.     Under 11 U.S.C. § 1112(b), this Court should dismiss the Debtors' bankruptcy petition "for cause" because the petitions were filed in bad faith.  *See In re 15375 Mem'l Corp.*, 589 F.3d 605, 618 (3d Cir. 2009); (quoting *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004)); *In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999).

51.     In the Third Circuit, it is the bankruptcy petitioners' burden to prove that the filing was made in good faith.  *See In re 15375 Mem'l Corp.*, 589 F.3d at 618; *In re SGL Carbon Corp.*, 200 F.3d at 162, n.10.  This burden requires proof that the petitions were filed in order to preserve the Debtors' going concern value or to maximize the value of the Debtors' estate, rather than as a litigation tactic.  *Id.*

12

52.    The Third Circuit has held that the "good faith" requirement for Chapter 11 petitioners has "strong roots in equity." *In re SGL Carbon Corp.*, 200 F.3d at 161. In *SGL Carbon Corp.*, the Third Circuit discussed the purpose behind the good faith requirement of 11 U.S.C. § 1112(b) as follows:

> A good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their equitable weapons . . . available only to those debtors and creditors with 'clean hands.' Another basic underpinning of the good faith doctrine is the equitable concept of clean hands. As a general matter, bankruptcy relief is equitable in nature, and, as a general rule, equitable remedies are not available to any party who fails to act in an equitable fashion.
>
> * * *
>
> A good faith standard furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way[.]

*Id.* at 161-62 (citations and quotations omitted).

53.    In order to determine whether a Chapter 11 petition has been filed in good faith, courts look to "'(1) whether the petition serves a valid bankruptcy purpose' and '(2) whether the petition is filed merely to  obtain a tactical litigation advantage.'" *In re 15375 Mem'l Corp.*, 589 F.3d at 618 (quoting *In re Integrated Telecom Express, Inc.*, 384 F.3d at 119-20) (emphasis supplied); *In re SGL Carbon Corp.*, 200 F.3d at 165 (noting that a "Chapter 11 petition is not filed in good faith unless it serves a valid reorganizational purpose[,]" that "courts have typically dismissed Chapter 11 petitions" that were filed "merely to obtain tactical litigation advantages[,]" and that where "the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the

petition may be dismissed as not being filed in good faith.") (citations and quotations omitted; alterations supplied).

### B.    The Debtors' Cases Serve No Valid Bankruptcy Purpose.

54.    The basic purpose of Chapter 11 are (i) "preserving going concerns," and (ii) "maximizing property available to satisfy creditors." *Integrated Telecom*, 384 F.3d at 119.  It is beyond dispute that the Debtors are not "going concerns" because both entities are special purpose holding companies that have no dedicated employees or business operations.  The Debtors were created solely for the limited purposes of owning a 100% membership interest in other business entities.  *See 15375 Memorial*, 589 F.3d at 619 (dismissal warranted where there was no "going concern" and debtor had "no employees, offices or business other than the handling of litigation").  As stated above, Topco owns only the membership interests in interTouch and interTouch only owns interests in two operating companies, Nomadix Inc. and interTouch Pte. Ltd.  Accordingly, to establish a valid bankruptcy purpose, the Debtors must show that the Bankruptcy Cases will maximize the value of the Debtors' estates, which they are unable to do.  *Id.*

55.    To say that a bankruptcy maximizes the value of the estate is to say that the bankruptcy "create[s] or preserve[s] some value that would be lost – *not merely distributed to a different stake holder*—outside of bankruptcy." *Integrated Telecom*, 384 F.3d at 120 (emphasis added).  *See 15375 Memorial Corp.*, 589 F.3d at 625.

56.    Moreover, the Third Circuit has consistently held that a naked desire to obtain the protections of the automatic stay is not a valid justification for seeking bankruptcy relief.  *15375 Memorial*, 589 F.3d 620; *Integrated Telecom*, 384 F.3d at 128.  The Third Circuit has also held that the liquidation and distribution of the debtor's estate to stakeholders, standing alone, are not

valid bankruptcy purposes justifying chapter 11 relief. *Integrated Telecom*, 384 F.3d at 126 (finding "no authority that the Code can be used to effectuate a liquidation that has no hope of maximizing the value of the company . . . but simply facilitates dissolution on terms favorable to equity interests"). This is particularly so where the bankruptcy liquidation and distribution processes would not result in any efficiencies not already available under state law. *Id.*

57. GWH cannot anticipate the "bankruptcy purposes" the Debtors may desperately advance to argue good faith in commencing the Bankruptcy Cases. But GWH is confident that any purported justification for the Debtors' bankruptcy filings will not withstand scrutiny in light of the extraordinary circumstances presented by the Bankruptcy Cases, which include *the vast majority* of the indicia of "bad faith" filings ordinarily identified by the courts, namely: (i) two single asset entities, (ii) few unsecured creditors, (iii) no ongoing business operations or employees, (iv) the Principal's knowledge that the New York Court was going to approve the sale of the interTouch Membership Interests to GWH on December 10, 2018; (v) the filing of the Bankruptcy Cases hours before it knew the New York Court was going to enter an Order approving the sale of the interTouch Membership Interests, (vi) a two-party dispute which is more appropriately resolved in the New York Action, where final judgment has already entered and the New York Court has overseen the sale process and entered the Sale Order and Order Confirming Sale[7], (vii) little or no cash or income, (viii) no pressure from non-moving creditors (no known pressure), (ix) no possibility of reorganization, and (x) filings intended solely to invoke the automatic stay. *See In re Primestone*, 272 B.R., 554, 557 (D. Del. 2002) (noting factors). Indeed, the *Primestone* case is particularly instructive.

---

[7]     For avoidance of doubt, the Order Confirming Sale was entered *after* the Bankruptcy Cases were filed.

27528190.2 12/13/2018

58.    Similar to the present case, the debtor in *Primestone* was a special-purpose entity organized for the purpose of acquiring, holding, exchanging, or otherwise disposing of limited partnership units (the "Prime Units") exchangeable into common shares of beneficial interest in a real estate investment trust whose subsidiary owned, managed, leased, developed an redeveloped office and industrial real estate.  The debtor had senior and junior loans secured by the Prime Units; the lenders' rights vis-à-vis one another were governed by an intercreditor agreement that required the junior lender to obtain the consent of the senior lender, or buy out the senior lender's position, prior to exercising remedies on the junior loan.  The junior lender sought to enforce its remedies.  When the senior lender did not consent, the junior lender bought out the senior lender pursuant to the intercreditor agreement and, thereafter, informed the debtor if its intention to dispose of the Prime Units at a public auction.  *Primestone*, 272 B.R. at 556.

59.    The lender retained an investment banker who distributed information to potentially qualified purchasers of the Prime Units and publicized notices of the auction.  In response to the lender's actions, the debtor objected to the auction process as "commercially unreasonable."  The lender commenced litigation against the debtor in Delaware Chancery Court seeking a declaration that the auction process was commercially reasonable and an injunction against interference with the foreclose process.  At 11:51 p.m. the night before the auction, the debtor filed a chapter 11 petition, resulting in the automatic stay of the foreclosure proceeding and the chancery action.  The debtor's 20 largest creditors list did not list any creditors.  The lender moved to dismiss the case for lack of good faith.  This Court granted the motion to dismiss.

60.    In granting the motion to dismiss, Judge Walrath concluded that the debtor was sufficiently protected by its bargained-for contractual rights under state law, and that it would be

inappropriate to arm the debtor with the powers of chapter 11 solely to disadvantage its one secured creditor. *Primestone*, 272 B.R. at 558. The district court affirmed this decision. *Id.*

61.     More egregious than the debtor in *Primestone*, the Debtors here invoke the bankruptcy process <u>after</u> agreeing to the New York Court-sanctioned sale process—with New York Court oversight—via the Sale Order entered in the New York Action, which ultimately was So Ordered by the New York Court. Arming the Debtors with the substantial powers of Chapter 11 is not justified by any legitimate bankruptcy purpose. Accordingly, the Debtors cannot establish the requisite good faith as defined by governing Third Circuit precedent, and the petitions must be dismissed under section 1112(b) of the Bankruptcy Code.

62.     The facts in this case are also similar to the *Jer/Jameson* case, in which the Bankruptcy Court (Walrath, J.) granted dismissal of the case after concluding that the debtor had filed its petition in bad faith. *In re Jer/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 300 (Bankr. D. Del. 2011). The debtor held only one asset (a membership interest in a subsidiary entity), had few unsecured creditors, had no ongoing business operations or employees, and filed its petition on the eve of foreclosure, solely to gain the benefit of the automatic stay. *Id.* at 299 (noting that "virtually all of the *Primestone* factors [indicating bad faith] are present").

63.     The *Jer/Jameson* court further concluded that the case involved a "two-party dispute", that "litigation is already pending in state court", and that the "threatened foreclosure will not affect the operations of the Inns; it will simply change the ownership of [the operating entity]." *Id.* Each of those factors is also present in this case. The Debtors filed the Bankruptcy Cases in order to thwart the entry of the Order Confirming Sale, and alter the status of the two-party dispute that is being litigated in the New York Court. Moreover, the impact of the Order Confirming Sale would simply transfer the ownership interests held by Topco, and will not have

17

any impact on the business operations of the Debtors, insofar as they have no business operations, apart from litigating this matter.

64.    More critically, if the Chapter 11 cases are allowed to proceed, it has the likelihood of causing material disruption to the business operations of both interTouch's operating business—Nomadix Inc. and interTouch Pte. Ltd.  Uncertainty regarding ownership of interTouch, and its operating entities, has been a matter of public record since the New York Action was originally filed and certainly after the Sale Order setting up the sale of Topco's interest in interTouch was approved by the New York Court on August 27, 2018.  The entry of the Order Confirming Sale on Monday, December 10, 2018, by the New York Court would bring certainty and closure regarding who owns and controls interTouch, and by implication Nomadix Inc. and interTouch Pte. Ltd.  Without such certainty, these companies clearly risk the prospect of eroding their enterprise value.

65.    Under the *Primestone* factors, the facts and circumstances firmly establish substantial cause for dismissal of the Debtors' Bankruptcy Cases, as it is clear that that both petitions were filed in bad faith.

### C.    The Debtors' Bankruptcy Cases Were Commenced Primarily to Obtain a Tactical Litigation Advantage.

66.    A chapter 11 case is subject to dismissal if it was commenced primarily to obtain a tactical litigation advantage.  *15375 Memorial*, 589 F.3d at 605; *SGL Carbon*, 200 F.3d at 165.  The tactical advantages gained by the Debtors in commencing the Bankruptcy Cases are obvious.  The Debtors' naked chapter 11 petitions – ***filed at approximately 4:30 a.m., nearly eight hours before the New York Court entered the Order Confirming Sale*** – automatically divested the New York Court with authority to oversee a case that it has closely administered since January 2018 with no showing whatsoever by the Debtors in the New York Action, or here for that

18

matter.  This is significant because, for the Debtors to have obtained similar relief outside of bankruptcy, it would have needed to convince the New York Court to avoid entering the Order Confirming Sale, which it attempted to do, but failed on Friday, December 8, 2018.  *See* Clasen Aff., Ex. 10 (12/7/18 Hearing).  The bankruptcy filings also saddled GWH with the burden of coming forward to affirmatively seek relief from the Debtors' abusive filings.  Indeed, because the Debtors did not seek any first-day relief from this Court (surely a strategic choice), it is likely the Court was unaware of the Bankruptcy Cases until it received the instant Motion.

67.    Additionally, but for the imposition of the automatic stay to prevent entry of the New York Court's Order Confirming Sale, the Order Confirming Sale would have been entered and the appeal period would have begun to run.  The stay of the entry of the Order Confirming Sale forces GWH to bear all the risk that the membership interest in interTouch loses value while the automatic stay remains in place.

68.    In sum, taking into account the lack of a valid bankruptcy purpose for the Bankruptcy Cases, the timing of the filing of the Debtors' petitions, and the tactical advantages gained from the bankruptcy filing by the Debtors, the only reasonable conclusion is that the Debtors filed the Bankruptcy Cases as a litigation tactic to frustrate the GWH's exercise of its remedies, which is a bad faith purpose for invoking bankruptcy protection.  *See In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004) ("filing a Chapter 11 petition merely to obtain a tactical litigation advantage is not within 'the legitimate scope of the bankruptcy laws'"); *Furness* v. *Lilienfield*, 35 B.R. 1006, 1009 (D. Md. 1983) ("The automatic stay was not intended to grant defendants a last-minute escape chute out of pending civil litigation.").

**D.      The Debtors' Inability to Effectuate a Plan Constitutes "Cause" for Dismissal Under Section 1112(b).**

69.      Under section 1112(b)(4) of the Bankruptcy Code, "substantial and continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" also constitutes "cause" for dismissal.  11 U.S.C. § 1112(b)(4)(A)-(B).   Based on the scant information available in the Bankruptcy Cases and the public information GWH has learned about the Debtors in the New York Action, it clear that the Debtors are balance-sheet insolvent, with no "going concern" to preserve in bankruptcy.   Conversely, the Debtors' estates face a serious threat of loss or diminution resulting from the accrual of chapter 11 administrative expenses (assuming the Court permits such expenses to be allowed) and potential reputational damage that may befall interTouch's operating entities if the entry of the Order Confirming Sale is further delayed.   Additionally, there is no reasonable likelihood of rehabilitation because a Chapter 11 plan cannot be confirmed over the dissent of GWH, the Debtors' sole secured creditor, whose judgment claim, if hypothetically bifurcated to account for a deficiency claim, would exceed the small amount of non-insider claims.  *See* 11 U.S.C. §1129(a)(10) (requiring at least one impaired accepting class).

70.      Moreover, the Debtors are single asset holding companies with no ongoing business operations and no employees.   As such, the Debtors have no prospect of reorganization and no place in bankruptcy court.   Faced with filings from similar single-asset holding companies, bankruptcy courts in the Third Circuit have granted motions to dismiss.  *See e.g., In re Jer/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 302 (Bankr. D. Del. 2011) (granting dismissal where debtor was mere holding company incapable of reorganizing); *In re 3 RAM, Inc.,* 343 B.R. 113, 119 (Bankr. E.D. Pa. 2006) (granting dismissal where debtor held one asset which was fully encumbered).

71.     For these reasons, *even if* the Debtors had commenced bankruptcy cases in good faith (which, as discussed *supra*, they did not), dismissal would still be mandatory under section 1112(b)(4).  Moreover, even if there were no "loss or continuing diminution to the estate," the Debtors' inability to effectuate a Chapter 11 plan would alone constitute "cause" for dismissal. *In re 3 RAM, Inc.*, 343 B.R. 113, 117 n.14 (noting the "loss or continuing diminution" element of § 1112(b)(4) might not be implicated, strictly speaking, in the case of holding-company debtor having no operations, nonetheless, the inability to effectuate a Chapter 11 plan would constitute independent "cause" for dismissal).

72.     For all of the foregoing reasons, this Court should dismiss the Debtors' Bankruptcy Cases for cause because the petitions were filed in bad faith.

## II.    ALTERNATIVELY, THIS COURT SHOULD ABSTAIN FROM HEARING THESE BANKRUTPCY CASES AND ENTER DISMISSAL PURSUANT TO SECTION 305(a) OF THE BANKRUPTCY CODE

73.     Alternatively, the Court should abstain from exercising its jurisdiction over the Bankruptcy Cases and dismiss the Bankruptcy Cases pursuant to section 305(a)(1) of the Bankruptcy Code.  Section 305(a)(1) empowers bankruptcy courts to dismiss an otherwise proper bankruptcy case at any time if "the interests of creditors and the debtor would be better served by such dismissal."  *See* 11 U.S.C. § 305(a)(1).  Pursuant to section 305(c) of the Bankruptcy Code, the decision to dismiss a bankruptcy case under section 305(a)(1) is left to the discretion of the bankruptcy judge and is not reviewable by the respective court of appeals or United States Supreme Court, although it is reviewable on appeal by the district court under an "abuse of discretion" standard.  *See* 11 U.S.C. § 305(c); *In re Monitor Single Lift I, Ltd.,* 381 B.R. 455, 463 (Bankr. S.D.N.Y. 2008); *Pennino v. Evergreen Presbyterian Ministries (In re Pennino)*, 299 B.R. 536, 538 (B.A.P. 8th Cir. 2003); *Steinman v. Spencer (In re Argus Group*

*1700)*, 206 B.R. 737, 755 (Bankr. E.D. Pa. 1996).   GWH, bears the burden of demonstrating that

the interest of the Debtors and its creditor(s) would be "better served" from such dismissal.

*Monitor Single Lift I*, 381 B.R. at 462-63.

74.    Although abstention under section 305(a) is generally considered "an

extraordinary remedy," *id.*, at 462, the rare set of circumstances presented by the Bankruptcy

Cases falls squarely within the type of case that courts have found to merit dismissal under

section 305(a)(1).  In considering whether dismissal under section 305(a)(1) is warranted, "courts

have considered a wide range of factors, including but not limited to who filed the bankruptcy

petition, the availability of another forum to resolve the pending disputes, the necessity of federal

proceedings to achieve a just and equitable solution, the expense of the federal proceedings in

comparison with the proceeds in another forum, the purpose of the party seeking to remain in

bankruptcy court, the economy and efficient of having the bankruptcy court handle the matter

and the possible prejudice to various parties." *Argus Group*, 206 B.R. at 755 (quoting *In re Carl

Mazzocone*, 200 B.R. 568, 575 (E.D. Pa. 1996)).; *accord Santa Fe Minerals, Inc. v. BEPCO,

L.P. (In re 15375 Mem. Corp.)*, 382 B.R. 652, 686 (Bankr. D. Del. 2008) *rev'd on other grounds*,

400 B.R. 230 (D. Del. 2009).  "In addition, if the bankruptcy court is being used as a forum to

resolve what is essentially a two-party dispute, this factor may also be considered in deciding

whether to apply section 305(a).  *Argus Group,*  206 B.R. at 755.  However, the exact factors to

be considered and the weight to be given to each factor "is highly sensitive to the facts of each

individual case." *Id.*

75.    Upon review of the factors set forth above and the totality of the circumstances, it

is readily apparent that the Debtors, GWH, and the other creditors would be better served if this

case were dismissed.  As the Court can see from the scant docket entries filed to date, by all

22

accounts, the Bankruptcy Cases were filed merely to thwart the entry of the Order Confirming Sale in the New York Action.  The Debtors have not moved for any preliminary orders regarding (i) the use of cash collateral, (ii) authorization for the payment of prepetition wages or other ordinary course expenses, (iii) the retention of counsel or other professionals; (iv) additional time to file Schedules, Statements and other Documents; or (v) the utilization of the Debtors' existing cash management systems, among other things.  The simple fact is that the Debtors are not operating businesses.  Indeed, the Debtors were willing participants in the New York Court-sanctioned sale process detailed in the Stipulation and So Ordered by the New York Court.  Yet, when the New York Court-sanctioned sale process revealed GWH as the highest bidder, with a credit bid of $10,000,000.00, the Debtors refused to allow the New York Court to enter the Order Confirming Sale and instead, attempted to seek refuge in this Court.

76.      As the Debtors are mere holding companies with few creditors and no business operations, this action is nothing more than a two-party dispute that is more properly resolved in the New York Court Action.  This factor alone weighs heavily in favor of dismissing the case under section 305(a)(1).  *See e.g., Argus Group*, 206 B.R. at 755-57 (dismissing case that was essentially a two-party partnership dispute under section 305(a)(1); *In re Business Information Co.,* 81 B.R. 382, 387 (Bankr. W.D. Pa. 1988) (dismissing case that was essentially a two-party dispute under section 305(a)(1)); *see also In re Seff Enters. & Holdings, LLC*, 2009 Bankr. Lexis 2483 (Bankr. D.N.H. Aug. 26, 2009) (dismissing case under section 305(a)(1) because it was, at its essence, a two-party dispute).

77.      Other factors frequently considered by courts also weigh in favor of dismissal. As noted, *supra,* the New York Court has already entered the Judgment, So Ordered the Sale Order, and on December 10, 2018 entered the Order Confirming Sale. Based on the New York

Court's involvement in the New York Action to date, GWH is confident that the New York Court is available to efficiently and expeditiously resolve any remaining matters in the New York Action, including entering the Order Confirming Sale.  As also previously argued in the context of dismissal under section 1112 of the Bankruptcy Code, federal judicial oversight via the Bankruptcy Code is not required to achieve a just and equitable solution. Conversely, if the Bankruptcy Cases are permitted to continue, considerable fees and expenses, including chapter 11 administrative expenses, will be incurred, which would not otherwise be incurred if the Bankruptcy Cases were dismissed and the matter permitted to proceed in the New York Court. Given that the Debtors have no actual business, no more value could be created for the Debtors or its creditors inside of bankruptcy than could be realized through the process that has been sanctioned by the New York Court.  This is particularly important given that two factors frequently cited by courts evaluating whether to dismiss a case under section 305(a)(1) are "the expense of the federal proceedings in comparison with the proceedings in another forum" and "the economy and efficiency of having the bankruptcy court handle the matter."  *See Argus Group,* 206 B.R. at 755.

78.     Moreover, the Debtors would most certainly not be able to confirm plans of liquidation or reorganization in the Bankruptcy Cases without the support of GWH.  *See* 11 U.S.C. § 1129(a)(10) (requiring at least one impaired accepting class); *see also Monsour Medical Ctr., Inc. v. Stein*, 154 B.R. 201, 203 (Bankr. W.D. Pa. 1993) (dismissing case under section 305(a)(1) to allow state receivership to proceed primarily because no plan would be confirmable without the support of the party seeking dismissal under section 305(a)(1)).

79.     Further, filing bankruptcy solely to avoid a state law foreclosure process justifies dismissal under section 305(a)(1).  *See In re Fast Food Properties, Ltd. #1*, 5 B.R. 539, 540

(Bankr. C.D. Cal 1980) ("It is obvious to me that this Chapter 11 case was filed solely for the purpose of frustrating the enforcement of the power of sale provisions . . . and that the Chapter 11 case should be dismissed.").  Coupled with the fact that the Debtors cannot accomplish any legitimate bankruptcy purpose through these Chapter 11 cases, as explained above, dismissal of this case under section 305(a)(1) is appropriate.

80.    For all of the foregoing reasons, the Court should dismiss the Bankruptcy Cases pursuant to section 305(a)(1) of the Bankruptcy Code.

## III.    DISMISSAL OF THE CHAPTER 11 CASE SHOULD BE WITH PREJUDICE PURSUANT TO SECTIONS 105(a) AND 349(a) OF THE BANKRUPTCY CODE

81.    Section 349(a) of the Bankruptcy Code provides that "[u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar a discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title."  11 U.S.C. § 349(a); *see* 11 U.S.C. § 109(g).

82.    Pursuant to section 105(a) of the Bankruptcy Code, the Court may "[tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, *or to prevent an abuse of process*."  11 U.S.C. § 105(a) (emphasis added).

83.    A bankruptcy court may apply its inherent powers under sections 105(a) and 349(a) to dismiss a debtor's chapter 11 case with prejudice and proscribe subsequent filings, where the debtor has commenced its bankruptcy case for an improper purpose and in bad faith. *See In re Jer/Jameson Mezz Borrower II, LLC,* 461 B.R. 293, 304 (Bankr. D. Del. 2011) (dismissing case with prejudice under section 349(a) because debtor "filed in bad faith and for no legitimate bankruptcy purpose").

84.     It is necessary for the Court to dismiss the Bankruptcy Cases with prejudice to prevent the Debtors from attempting to file a successive bankruptcy petitions in this or some other jurisdiction to further forestall GWH's efforts at obtaining entry of the Order Confirming Sale in the New York Action and obtaining Topco's 100% ownership interest in interTouch. The Debtors' bad faith and baseless filing provides justification for the Court to limit the Debtors' ability to seek further relief under the Bankruptcy Code without first seeking leave of this Court.

85.     For the foregoing reasons, in order to prevent further harm to GWH, the Court should make its dismissal of the Debtors' Chapter 11 cases with prejudice and prospectively enjoin any further filings by the Debtors.

## NOTICE

86.     Notice of this Motion has been provided to (i) counsel for the United States Trustee for the District of Delaware, (ii) counsel for the Debtors, (iii) all parties who have filed an appearance in the Chapter 11 cases; and (iv) the Debtors' top twenty creditors.  GWH submits that no further notice is necessary under the circumstances.

## CONCLUSION

87.     For the reasons set forth above, this Court should enter an order dismissing with prejudice, the Debtors' Chapter 11 cases for cause pursuant to § 1112(b) of the Bankruptcy Code.  In the alternative, the Court should enter an order: (i) abstaining from hearing and (ii) dismissing the Debtors' Chapter 11 cases pursuant to § 305(a) of the Bankruptcy Code.

Wherefore GWH respectfully requests that the Court enter an order: (i) dismissing, with prejudice, the Debtors' Chapter 11 cases under § 1112(b) of the Bankruptcy Code, or in the alternative, abstaining from hearing and dismissing the Debtors' Chapter 11 cases under § 305(a)

of the Bankruptcy Code, and (ii) granting GWH such other and further relief as is just and proper.

Dated:  December 13, 2018                    SAUL EWING ARNSTEIN & LEHR LLP


                                             */s/ Lucian B. Murley*
                                             Lucian B. Murley (DE Bar No. 4892)
                                             1201 North Market Street, Suite 2300
                                             P.O. Box 1266
                                             Wilmington, DE  19899
                                             Telephone: (302) 421-6898
                                             Facsimile: (302) 421-5864
                                             luke.murley@saul.com

                                             -and

                                             Joseph L. Clasen
                                             Patrick M. Birney
                                             Ian T. Clarke-Fisher
                                             Andrew A. DePeau
                                             **ROBINSON & COLE LLP**
                                             666 Third Avenue
                                             New York, New York 10017
                                             Telephone:  (212) 451-2900
                                             jclasen@rc.com
                                             iclarke-fisher@rc.com

                                             *Counsel for Gate Worldwide Holdings LLC*

27528190.2 12/13/2018