IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>interTouch Holdings LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 18-12772 (BLS) |
| In re:<br><br>interTouch Topco LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 18-12773 (BLS) |

**DECLARATION OF SEALE A. MOORER, JR.,
IN SUPPORT OF CHAPTER 11 PETITION**

I, Seale A. Moorer, Jr., hereby declare as follows:

1. I am the chief executive officer of interTouch Holdings LLC, a limited liability company organized under the laws of the State of Delaware. I serve in similar capacity for the other above-captioned debtor (together with interTouch Holdings LLC the "Company" or the "Debtors") in these cases filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). I have served as managing member of the Debtors since 2015 and am generally familiar with the day-to-day operations of the Debtors and their affairs, books, and records.

2. On December 10, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

3.      As managing member, I am responsible for the management of the Debtors' operations, overseeing the Debtors' liquidity management, and assisting with the Debtors' refinancing efforts. Except as otherwise indicated, all facts set forth in this declaration (the "Declaration") are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents, and information supplied by members of the Debtors' management and the Debtors' other advisors. If called upon to testify, I could and would testify competently to the facts set forth herein on that basis. I am authorized to submit this Declaration.

5.      This Declaration describes the Debtors' business, corporate structure and history, capital structure and secured and unsecured debt, as well as the circumstances surrounding the Debtors chapter 11 filings.

6.      The Debtors are affiliates of each other. Debtor interTouch Topco LLC owns 100% of the equity interests in Debtor interTouch Holdings LLC.

## INTRODUCTION

7.      interTouch Holdings LLC is a holding company formed in 2015 for the purpose of acquiring a group of operating businesses. As is further described below, certain of the Debtors' affiliates develop and market hardware and software products that principally are sold to and used by the hospitality industry. On September 29, 2015, interTouch Holdings LLC acquired Nomadix, Inc., a Delaware corporation with a principal place of business in Agoura Hills, California, and interTouch Pte. Ltd., a Singapore company, together with its subsidiaries (collectively, "interTouch") to complement and strategically expand the Debtors' existing businesses.

8.      Both Nomadix and interTouch were acquired from NTT DoCoMo, Inc., a Japanese corporation and predominant Japanese mobile phone operator. The acquisition of Nomadix and

interTouch partially was financed by NTT DoCoMo, Inc., in exchange for a promissory note in the original face amount of $65 million dated as of September 29, 2015 (the "Note"). Debtor interTouch Topco LLC and non-debtor affiliates of the Debtors, Nomadix and ST Holdings LLC, all are guarantors of the Note. The Note and interTouch Topco LLC's guaranty both are secured by Membership Interest Pledge Agreements executed by each interTouch Holdings LLC and interTouch Topco LLC, as well as a pledge of certain other assets.

9.      The Note matured in March of 2017 and, upon interTouch Holdings LLC's default, was sold to its current noteholder, Gate Worldwide Holdings LLC ("Gate"), in September 2017. On January 3, 2018, Gate brought suit in the Supreme Court of the State of New York, County of New York, to collect on the Note in an action against interTouch Holdings LLC, interTouch Topco LLC, Nomadix, Inc., and ST Holdings LLC (the "New York Action"). On June 29, a judgment was entered in favor of Gate in the amount of $49,658,725.62 (the "Judgment"). Since then, Gate has attempted to collect on the Judgment. As of the Petition Date, the New York Action has been stayed as against the Debtors.

10.     Beginning in mid-2016, and for the duration of the pendency of the New York Action, the Debtors have made extensive efforts to refinance the Note or to secure a cash infusion sufficient to buy out GWH and put an end to the New York Action. The chief impediment to refinancing has been the challenge of valuing the assets are held by the Debtors' subsidiary (and non-debtor) Nomadix, Inc. Those assets consist primarily of an extensive patent portfolio. Whether using cost-based, market-based, or income-based valuation, patent portfolio valuations require a high degree of sophistication. In August, 2016, Nomadix, Inc. engaged the services a prominent global financial advisory and forensic and litigation support firm with a strong background in the valuation of intellectual property whose professionals have been recognized as leading patent litigation expert

witnesses. Specifically, the advisory firm was engaged to review the patent royalty history and data to aid Nomadix, Inc.'s management team in determining the potential royalty stream and making cash-flow projections, based on a number of assumptions, related to certain portions of the Nomadix, Inc. patent portfolio. After six months of an extensive amount of research and dialogue between the financial advisory firm, Nomadix, and Nomadix's outside intellectual property legal team, the firm completed their evaluation of the data and provided Nomadix, Inc. with its finding in January, 2017. The third party financial advisory firm's evaluation of the data confirmed that the value of Nomadix' patent portfolio likely is several times greater than the New York Action defendants' indebtedness. Nevertheless, negotiations with several potential lenders in late 2017 and early 2018 failed to result in a successful financing transaction.

11.

12.     Finally, in May, 2018, ST Holdings LLC, an affiliate of the Debtors, secured a commitment by investment firm Tiller International Capital LLC ("Tiller"). That commitment came in the form of a promised equity contribution of $55 million to a newly formed joint venture that would own Nomadix, Inc., and a separate contribution of $20 million to a newly formed joint venture that would own the other operating entities of the interTouch group. On June 17, 2018, the Debtors entered into a series of agreements with Tiller that obligates Tiller to complete and consummate the foregoing transactions, but those transactions have yet to close. It had been anticipated Tiller would secure a loan to fund the transactions no later than Friday, December 7, 2018, but this projection failed to materialize.

13.     On October 30, 2018, Gate, in the New York Action, sought a transfer of all of interTouch Holdings LLC's membership interests to it free and clear of al liens, claims, and encumbrances in exchange for a $10 million reduction of the Judgment. Faced with an impending

4

foreclosure of their principal assets, and the likely resultant loss of the Debtors' property interest in Nomadix and interTouch, the Debtors sought a breathing spell by filing these chapter 11 cases in the early morning of December 10, 2018. The Debtors are hopeful the Tiller transaction will close in the foreseeable future, that they will pay off their secured indebtedness, and reach an amicable settlement with their unsecured creditors.

## II.    BACKGROUND

### A.    Business Operations

14.    The Debtors are holding companies that operate through several wholly-owned subsidiaries. Chief among those subsidiaries are Nomadix, Inc., and interTouch.

15.    Nomadix, Inc. manufactures and sells gateway devices that facilitate internet access for mobile users at public locations and are used almost exclusively in the hospitality and other visitor-based industries. Nomadix sells its product globally through a sales channel that numbers over 600 authorized distributors and resellers. It currently has well over 10,000 active licensed units globally, including businesses such as hotels, convention centers, schools, hospitals, airports, stadiums, retail stores, office businesses, multi-dwelling units, and the like, that depend on Nomadix's ongoing daily service, support, and software maintenance to help support to maintain their internet service. Nomadix supplies its solutions to large portions of several well-known hotel chains.

16.    interTouch is a leading global provider of technology-based services to the hospitality industry, including wired and wireless high-speed internet access, digital television, video-on-demand, digital signage, and other in-room entertainment and networking solutions to guestrooms, conference facilities, and other common areas at over 1,000 hotel properties in Asia-Pacific, Australia, Middle-East, Africa, and Central and Latin America.    interTouch is

5

headquartered in Singapore and operates in over 46 countries. Its customers include some of the top hospitality brands in the world.

17.     The Debtors are headquartered in Westerville, Ohio. They do not presently have any employees.

### B.     Corporate Structure

18.     Debtor interTouch Holdings LLC is a privately-held Delaware limited liability company formed in 2015 shortly before the acquisition of Nomadix and interTouch. interTouch Holdings LLC's equity is owned by Debtor interTouch Topco LLC. interTouch Topco LLC is fully owned by ST Holdings LLC, a Florida limited liability company.

### C.     Capital and Debt Structure

17.     As a holding company, interTouch Holdings LLC has relied on the financial support of its operating subsidiaries as well as the financial support of its equity holders. Following the completion of the Tiller transaction, and with the reduction in leverage following the payoff of the secured debt and anticipated cost reductions, such as the rightsizing of staff, the centralization of certain business functions, the implementation of best practices and automation of certain operational functions in the business, interTouch Holdings LLC believes that the operations of its current subsidiaries will be more efficient, streamlined, profitable and sufficient to fund its operations going forward.

#### *Secured Debt –Note held by Gate Worldwide LLC*

18.     The Debtors' sole secured lender is Gate Worldwide Holdings, LLC, a limited liability company formed under the laws of the State of Delaware on August 15, 2017, shortly before it acquired the Note. As of Friday, December 7, 2018, the amount outstanding under the Note, including all interest and fees, is $54,869,382.71. Gate's efforts to collect the debt and

enforce the Judgment included a process for the sale of interTouch Holdings LLC, initiated by Gate in the New York Action.

19. Gate engaged Traxi LLC, a broker located in Summit, New Jersey, to handle a sale process, that was to last a mere thirty days, unusually short for a sale of its size and complexity. That process, the Debtors contended in the New York Action, was not conducted in a commercially reasonable manner and without any effort to maximize the sale price. Among other things, the Debtors contend, Traxi (i) had no experience relevant to the Nomadix and interTouch businesses (i.e., delivering technology-based managed services, software solutions, and hardware solutions to the hospitality industry and other visitor network, including high-speed internet access, digital television, video-on-demand, digital signage, and other in-room entertainment networking solutions); (ii) failed to develop a thorough understanding of the assets it was representing by, for example, interviewing management or seeking their input on how to best position the assets for sale; and (iii) failed to set up a data room with relevant information for companies who reasonably would have had an interest in the assets to be sold. In the end, the bid deadline established by Traxi did not provide interested bidders with sufficient opportunity to review essential information regarding the Nomadix and interTouch businesses and analyze their value. Consequently, there were no bidders other than Gate itself, which credit bid $10 million-a fraction of the actual value of the assets purchased.

### *Unsecured Debt*

18. The Debtors' unsecured obligations consist of fees incurred for professional services rendered to the Company and the Company's obligations owed to certain affiliates on account of loans in exchanges for unsecured promissory notes. The proceeds of the aforementioned loans were used chiefly to pay principal, interest, and tax payments on the

Debtors' secured debt obligations. The Debtors have the same and only twelve non-affiliate unsecured creditors.

**D.      Debtor's Goals in These Chapter 11 Cases**

19.     The Debtors filed these chapter 11 cases to permit them to pursue a restructuring of the Company's debt obligations. The Debtors continue to pursue the Tiller transaction and anticipate proposing a plan of reorganization that will permit the Companies to fully pay the debt owed to secured and unsecured parties and to operate profitably on a going forward basis.

Pursuant to 11 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: December 13, 2018               */s/ Seale Moorer, Jr*
                                        Seale A. Moorer, Jr.
                                        Chief Executive Officer
                                        interTouch Holdings LLC and interTouch Topco LLC