FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM    INDEX NO. 650026/2018
NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 01/03/2018

connection with the acquisition of property, assets or businesses; (c) all indebtedness created or arising under any conditional sale or other title retention agreement, or incurred as financing, in either case with respect to property acquired by the Person (even though the rights and remedies of the seller or bank under such agreement in the event of default are limited to repossession or sale of such property); (f) all obligations with respect to capital leases, (g) all indebtedness referred to in clauses (a) through (f) above secured by any Lien upon or in property (including accounts and contracts rights) owned by such Person, even though such Person has not assumed or become liable for the payment of such Indebtedness (provided that the amount thereof shall be deemed to be the lesser of (x) the unpaid amount of such secured Indebtedness or (y) the fair market value of the property subject to such Lien); and (h) all guaranty obligations in respect of Indebtedness of others of the kinds referred to in clauses (a) through (f) above (provided that the amount thereof shall be deemed to be the lesser of (x) the unpaid amount of such guaranteed Indebtedness or (y) the maximum liability of such Person in respect of such guaranteed obligations).

For all purposes of this Agreement, the Indebtedness of any Person shall include all recourse Indebtedness of any partnership or joint venture or limited liability company in which such Person is a general partner or a joint venturer or a member, except to the extent such Person's liability is limited by the terms of the applicable partnership, joint venture or other applicable agreement.

"Installment Payment" has the meaning given such term in Section 1.7.

"Investment" has the meaning given to such term in Section 5.7.

"IRS" means the Internal Revenue Service.

"Issuer" has the meaning set forth in the preamble hereto.

"Legal Requirements" means any federal, state, local, municipal, foreign or other law, statute, constitution, principle of common law, resolution, ordinance, code, order, edict, judgment, decree, rule, regulation, ruling or requirement issued, enacted, adopted, promulgated, implemented or otherwise put into effect by or under the authority of any governmental entity.

"Legal Reservations" means the application of relevant Debtor Relief Laws, general principles of equity or principles of good faith and fair dealing.

"Liens" has the meaning set forth in Section 5.2.

"Losses" means any claims, losses, damages, liabilities (or actions in respect thereof), obligations, penalties, awards, judgments, expenses (including, without limitation, reasonable fees and expenses of counsel) or disbursements.

WEIL:\96547770\80\41359.0003
3579134-v12\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 2

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

"Material Adverse Effect" means (a) a material adverse effect on, or change in, the business, prospects, properties, operations, condition (financial or other) or results of operations of the Issuer, taken as a whole, or (b) a material adverse effect on (i) the ability of the Issuer or any of the Guarantors to perform its respective obligations under the Note Documents or (ii) the rights or remedies of the Noteholder under any Note Documents.

"Material Intellectual Property" has the meaning set forth in Section 4.5.

"Net Cash Proceeds" means (a) with respect to any sale or other disposition of assets, the cash proceeds (as and when received) net of (i) selling or transaction costs and out-of-pocket expenses (including reasonable broker's fees or commissions, legal fees, transfer and similar taxes and Issuer's good faith estimate of income taxes paid or payable (including, without duplication, pursuant to tax sharing arrangements or any tax distributions) in connection with such sale or other disposition), (ii) amounts provided as a reserve in accordance with GAAP against any liabilities under any indemnification obligation or purchase price adjustment associated with such sale or other disposition (provided that to the extent and at the time any such amounts are released from such reserve, such amounts shall constitute Net Cash Proceeds), (iii) the principal amount, premium or penalty, if any, interest and other amounts on any Indebtedness (other than the Notes) which is secured by the asset sold or otherwise disposed of in such sale or other disposition and which is required to be repaid or otherwise comes due or would be in default and is repaid (other than any such Indebtedness that is assumed by the purchaser of such asset), (iv) cash escrows (until released from escrow to Issuer) from the sale price for such sale or other disposition and (v) the aggregate amount of such cash proceeds applied or committed to be applied within one (1) year to the purchase of replacement assets of any kind; (b) with respect to any issuance or incurrence of Indebtedness or equity, the cash proceeds thereof, net of all taxes and fees, commissions, costs, underwriting discounts and other fees and expenses incurred in connection therewith; and (c) with respect to the licensing of the Nomadix Patents, the cash proceeds thereof received following the Nomadix Transfer Date (as and when received), net of (i) all taxes and fees, commissions, costs and expenses incurred in connection therewith, (ii) all costs and expenses related to enforcement of the Nomadix Patents and (iii) all revenue amounts due to Seller or any of its Affiliates.

"Nomadix" means Nomadix, Inc., a Delaware corporation.

"Nomadix Patents" means the "Licensed Patents" as that term is defined in that certain Patent License Deed between Nomadix, as Licensor, and NTT DOCOMO, INC., as Licensee, dated of even date with the Share Sale Agreement.

"Nomadix Transfer Date" has the meaning set forth in Section 1.5.

"Note" has the meaning set forth in Section 1.2.

"Note Discharge" has the meaning set forth in Article IV.

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM    INDEX NO. 650026/2018

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 01/03/2018

"Note Documents" means, collectively, (a) this Agreement, (b) the Note, (c) the Security Agreements, and (d) the Guaranties.

"Noteholder" has the meaning set forth in the preamble hereto.

"Obligations" means all advances, debts, liabilities, obligations, covenants and duties arising under any Note Documents owing by the Issuer to the Noteholder, whether direct or indirect (including those acquired by assignment), absolute or contingent, due or to become due, now existing or hereafter arising.

"Permitted Liens" means the liens permitted by Section 5.2.

"Person" means any individual, corporation, limited liability Issuer, partnership, association, trust or any other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

"Responsible Officer" means the chief executive officer, chief operating officer, chief financial officer, controller, vice president of finance, or other officer serving an equivalent function for Issuer.

"SEC" means the United States Securities and Exchange Commission.

"SEC Reports" means any reports, statements, releases or other documents required to be filed by the Issuer with the SEC under the Exchange Act.

"Securities Act" means the Securities Act of 1933, as amended, and any applicable rules and regulations thereunder, and any successor to such statute, rules or regulations. Any reference herein to a specific section, rule or regulation of the Securities Act shall be deemed to include any corresponding provisions of future law.

"Security Agreements" means i) upon execution and delivery thereof, the ST Stock Pledge, ii) that certain Pledge Agreement of even date herewith, by and between ST Holdings and Noteholder, iii) that certain Pledge Agreement, of even date herewith, by and between interTouch Topco, LLC and Noteholder and iv) that certain Patent Security Agreement, when executed and delivered pursuant to this Agreement, by and between Nomadix, Inc. and Noteholder, as such agreements may be supplemented, amended or otherwise modified from time to time in accordance with their terms.

"Seller" has the meaning set forth in the preamble hereto.

"Share Sale Agreement" means that certain Share Sale Agreement of even date herewith by and among the Seller, as seller, Issuer, as purchaser and ST Holdings, as guarantor, as such agreement may be supplemented, amended or otherwise modified from time to time in accordance with its terms.

-36-

WEIL:\96477\78\99445490003
3570134-v12\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

"Solvent" means mean, with respect to any Person on any date of determination, that on such date (a) the fair value of the property of such Person is greater than the total amount of liabilities, including contingent liabilities, of such Person, (b) the present fair salable value of the assets of such Person is not less than the amount that will be required to pay the probable liability of such Person on its debts as they become absolute and matured, (c) such Person does not intend to, and does not believe that it will, incur debts or liabilities beyond such Person's ability to pay such debts and liabilities as they mature, (d) such Person is not engaged in business or a transaction, and is not about to engage in business or a transaction, for which such Person's property would constitute an unreasonably small capital, and (e) such Person is able to pay its debts and liabilities, contingent obligations and other commitments as they mature in the ordinary course of business. The amount of contingent liabilities at any time shall be computed as the amount that, in the light of all the facts and circumstances existing at such time, represents the amount that can reasonably be expected to become an actual or matured liability.

"ST Holdings" means ST Holdings, LLC, a Florida limited liability company.

"ST Stock Pledge" has the meaning set forth in Section 1.5.

"Subsidiary" means any entity in which the Issuer owns securities having a majority of the voting power in the election of directors or persons serving equivalent functions. Unless the context otherwise clearly requires, references herein to a "Subsidiary" refer to a Subsidiary of the Issuer.

"Target" means DOCOMO interTouch Pte. Ltd.

"Topco" means interTouch Topco LLC, a Delaware limited liability company.

[SIGNATURE PAGES TO FOLLOW]

WEIL:\96547721\18\94340.0003
3579154-v12\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM          INDEX NO. 650026/2018
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 01/03/2018

IN WITNESS WHEREOF, the parties hereto have executed this Note Purchase Agreement as of the date first written above.

INTERTOUCH HOLDINGS LLC

By: _____
Name: Eric Morris
Title: CEO

NTT DOCOMO, INC.

By: _____
Name: KOICHI TAKAHARA
Title: MANAGING DIRECTOR

Signature Page to Note Purchase Agreement

WEIL:\95477791\6\44348.0003
3579134-v12\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

**EXHIBIT A**

**FORM OF NOTE**

See attached.

WEIL:\864777\1\86644948.0003
3579114-v12\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

INDEX NO. 650026/2018

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 01/03/2018

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

**EXECUTION VERSION**

THIS NOTE (AS DEFINED BELOW) HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (TOGETHER WITH ANY APPLICABLE RULES AND REGULATIONS THEREUNDER, AND ANY SUCCESSOR TO SUCH STATUTE, RULES OR REGULATIONS, THE "ACT") OR THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION AND MAY NOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED UNLESS THE SAME IS REGISTERED UNDER THE ACT AND APPLICABLE STATE AND OTHER LAWS OR UNLESS AN EXEMPTION FROM SUCH REGISTRATION IS AVAILABLE.

## PROMISSORY NOTE

$55,000,000.00                                    Dated: 29 September 2015

FOR VALUE RECEIVED, interTouch Holdings LLC, a Delaware limited liability company ("Issuer"), promises to pay, in lawful money of the United States of America, to NTT DOCOMO, INC. ("Holder"), a company incorporated under the laws of Japan having its registered office at 2-11-1, Nagata-cho, Chiyoda-ku, Tokyo 100-6150, Japan by wire transfer to an account designated by Holder, the principal sum of Fifty Five Million Dollars ($55,000,000.00) (the "Principal Amount"), or so much thereof as may be outstanding from time to time, plus interest at a per annum rate equal to 6.00% (the "Interest Rate") computed on a year of 365/366 days on the outstanding principal balance hereof from the date hereof until the payment thereof in full, payable on the terms set forth in this Promissory Note (this "Note") and the NPA referred to below.

This Note is issued pursuant to the terms of that certain Note Purchase Agreement (as the same may be amended, restated, supplemented or otherwise modified from time to time pursuant to the terms thereof, the "NPA") dated of even date herewith, and is subject to the terms and conditions set forth therein. Capitalized terms used but not otherwise defined herein shall have the respective meanings given to them in the NPA.

1.    Payments.

1.1    Payment of Note. Interest shall commence to accrue on the outstanding principal amount of this Note as of the day and year first above written, and all interest accrued hereunder shall be payable in arrears on the last day of each quarter, with the first quarterly payment due on December 31, 2015, and thereafter on each of March 31, June 30, September 30 and December 31 through March 31, 2017 (the "Maturity Date"). The principal amount hereof, together with all accrued and unpaid interest shall be payable in two installments, the first in the amount of Five Million Dollars ($5,000,000.00) payable on October 9, 2015, and the remaining principal balance payable on the Maturity Date.

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 2

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

Any payment falling due on a day that is not a Business Day shall be made on the next succeeding Business Day.

     1.2    **Prepayment.** This Note may be prepaid in whole or in part, at any time and from time to time without payment of any penalty or premium in accordance with Section 1.8(a) of the NPA.

     1.3    **Taxes.** Payments may be subject to deduction or withholding for Taxes as set forth in Article VII of the NPA.

2.    **Events of Default.** The occurrence and continuance of any of the following events or conditions shall, without notice or demand, constitute an "Event of Default" under this Note:

     2.1    an Event of Default (as defined in the NPA) has occurred under the NPA.

     Acceptance by Holder of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and Issuer's failure to pay the entire amount then due shall be and continue to be an Event of Default. Any such acceptance shall not be deemed a novation of this Note and Issuer hereby expressly waives the benefits of any statute or rule of law or equity which would produce a contrary result. On the occurrence and continuance of any Event of Default, neither the failure of Holder to promptly exercise its right to declare the outstanding Principal Amount and accrued and unpaid interest to be immediately due and payable, nor the failure of Holder to demand strict performance of any other obligation of Issuer under this Note, shall constitute a waiver of such rights in connection with any future default on the part of Issuer, except to the extent Holder makes any express waivers in writing.

     Upon the occurrence and during the continuance of an Event of Default, the Interest Rate shall automatically and immediately change from 6.00% per annum to 8.00% per annum.

3.    [Reserved].

4.    **Remedies.** No right or remedy conferred upon or reserved to Holder hereunder or now or hereafter existing at law or in equity is intended to be exclusive of any other right or remedy, and each and every such right or remedy shall be cumulative and concurrent, and in addition to every other such right or remedy, and may be pursued singly, concurrently, successively or otherwise, at the sole discretion of Holder, and shall not be exhausted by any one exercise thereof but may be exercised as often as occasion therefor shall occur.

5.    **Notices.** Any notice, request, instruction or other document to be given hereunder shall be in writing and shall be made in accordance with Section 10.4 of the NPA.

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM    INDEX NO. 650026/2018

NYSCEF DOC. NO. 2                                            RECEIVED NYSCEF: 01/03/2018

6.    **Security.** The full amount of this Note is secured by the Collateral (as defined in the NPA) identified and described as security therefor in the NPA executed and delivered by the Issuer to Holder.

7.    **Miscellaneous.**

7.1    **Successors and Assigns.** All rights of Issuer and Holder under this Note shall inure to the benefit of their respective successors, assigns, and legal representatives and this Note and all the provisions hereof shall be binding upon Issuer and Holder and their respective successors, assigns, and legal representatives and all other persons or entities claiming under or through them. The term "Issuer", when used in this Note, shall include all of Issuer's successors, assigns, and legal representatives. The term "Holder", when used in this Note, shall include Holder's successors and permitted assigns. Neither party hereto may sell, assign or transfer any of its rights and obligations under this Note except as permitted under the NPA.

7.2    **Amendments.** Neither this Note nor any provision hereof may be waived, amended or discharged orally, but may be waived, amended or discharged only by an agreement in writing signed by the party against whom enforcement of any waiver, amendment or discharge is sought.

7.3    **Governing Law.** This Note shall be governed by and construed in accordance with the substantive laws of the State of New York regardless of any principles of choice or conflict of laws that would otherwise provide for the application of the substantive laws of another jurisdiction.

7.4    **Headings.** The descriptive headings of the Sections of this Note are for convenience only and do not constitute a part of this Note.

7.5    **Severability.** If any provision of this Note shall be held to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall attach only to such provision and shall not in any manner affect or render illegal, invalid or unenforceable any other provision of this Note, and this Note shall be carried out as if any such illegal, invalid or unenforceable provision were not contained herein.

[Signature Page Follows]

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

IN WITNESS WHEREOF, this Note has been duly executed and delivered by Issuer on the date first above written.

ISSUER:

INTERTOUCH HOLDINGS LLC

By: _____
      Name:
      Title:

*Signature Page to the Note*

3581138-v4\
WEIL:\96477720\4\44240/0003

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

## EXHIBIT B

## FORM OF NOMADIX PATENT SECURITY AGREEMENT

See attached.

WEIL:\95477718\0\48649.0003
3579134.v12

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 2

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

## EXHIBIT B

### Form of Patent Security Agreement

## PATENT SECURITY AGREEMENT

THIS PATENT SECURITY AGREEMENT (the "Agreement") is made and entered into as of [ • ], 2015, by NOMADIX, INC., a company incorporated under the laws of Delaware ("Guarantor"), in favor of NTT DOCOMO, INC., a company incorporated under the laws of Japan ("Noteholder").

## WITNESSETH:

WHEREAS, pursuant to that certain Note Purchase Agreement dated September 29, 2015, by and between interTouch Holdings LLC ("Issuer") and Noteholder (as amended or otherwise modified from time to time, the "NPA", capitalized terms used but not otherwise defined herein having the respective meanings ascribed to them in the NPA), the Noteholder has accepted and holds that certain Promissory Note issued by the Issuer dated September 29, 2015 in an original principal amount of $55,000,000 (the "Note") for a portion of the purchase price under the Share Sale Agreement;

WHEREAS, Guarantor and Noteholder have entered into that certain Guaranty dated [ • ], 2015 (as amended or otherwise modified from time to time, the "Guaranty"), providing for, among other items, the guaranty by Guarantor of Issuer's obligations under the NPA; and

WHEREAS, Noteholder has required, as a condition to its receipt of the Note under the NPA, that Guarantor enter into this Agreement with Noteholder.

## AGREEMENT

NOW THEREFORE, in consideration of the premises and in order to induce Noteholder to accept and hold the Note, Guarantor hereby agrees with Noteholder as follows:

1. **Security Interest.** Guarantor hereby grants to Noteholder a security interest in and to all of its right, title and interest in and to the collateral described in Section 2 herein (the "Collateral") in order to secure the payment of all Obligations (as defined in the Guaranty) and the performance of all the obligations related thereto.

2. **Collateral; Financing Statement; Perfection.** The Collateral is: (a) all patents and patent applications owned by Guarantor including, without limitation, the patents and patent applications listed on Schedule A attached hereto and made a part hereof, together with all reissues, divisions, continuations, renewals, reexaminations, extensions and continuations-in-part of any of the foregoing (the "Patents"); (b) the inventions claimed in the Patents; (c) all income, royalties, damages and payments now and hereafter due or payable with respect to any of the

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 2

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

Patents, including, without limitation, payments under all licenses entered into with respect to the Patents and damages and payments for past or future infringements of the Patents; and (d) the right to sue for past, present and future infringements of the Patents. The Noteholder is expressly authorized to file financing statements in respect of the Collateral and to record this Agreement with the United States Patent and Trademark Office or other equivalent governmental body as necessary or desirable to perfect or give effect to the security interest created herein.

3. Restrictions on Future Agreements. Until the Note Discharge, Guarantor will not enter into any contractual obligation or, subject to Section 7, take or fail to take any action that would reasonably be expected to impede the exercise of Noteholder's rights to the Collateral upon the occurrence of a Specified Event of Default; provided that, subject to compliance with the mandatory prepayments provisions set forth in Section 1.8(b) of the NPA, nothing in this Agreement shall restrict Guarantor's right to license, sublicense, sell transfer or otherwise dispose of the Collateral.

4. New Patents. To Guarantor's knowledge, the Patents listed on Schedule A constitute all of the patents and patent applications which are, as of the date hereof, owned by or pending on behalf of Guarantor in the United States. If, prior to the Note Discharge, Guarantor obtains or applies for any additional patents in the United States, such additional patents shall automatically be included in the Collateral and the provisions of Section 1 shall automatically apply thereto. Within sixty (60) days after the end of each calendar quarter, Noteholder shall provide Guarantor notice of any such additional patents, and Guarantor hereby authorizes Noteholder to modify this Agreement by amending Schedule A to include such additional patents.

5. Additional Representations and Warranties. Guarantor hereby represents and warrants, as of the date hereof, that:

(a)    [Reserved];

(b)    it has the full right and power to enter into this Agreement and comply with the terms hereof.

(c)    The execution, delivery and performance by the Guarantor of this Agreement and compliance herewith will not result in any violation of, conflict with, result in a breach of any of the terms of, constitute a default of or accelerate or permit the acceleration of any rights or obligations under: (i) any applicable law; or (ii) the certificate of incorporation, as amended, or the by-laws, as amended, of the Guarantor.

6. Royalties Terms. Guarantor hereby agrees that the permitted use after foreclosure by Noteholder of all Patents (as set forth in Section 11) shall be worldwide without any liability for royalties or other license fees from Noteholder to Guarantor. The term of the security interest granted herein shall extend until the earlier of (i) the expiration of each of the respective Patents or (ii) the Note Discharge.

7. Duties of Guarantor.

WE1A654777657V41249.0003
55161363-VA

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

(a)    Until the Note Discharge, except to the extent permitted in Section 7(b) or to the extent an action or failure to act would not reasonably be expected to have a material adverse impact on the value of the Collateral taken as a whole, Guarantor shall use reasonable efforts to preserve and protect the Collateral at Guarantor's expense, including, without limitation: (i) prosecuting any patent application that is included in the Patents; (ii) submitting applications for unpatented but patentable inventions, as appropriate; (iii) preserving and maintaining all of Guarantor's rights in the Patents (including, without limitation, the payment of all maintenance fees); and (iv) not abandoning any Patent.

(b)    Notwithstanding anything set forth in Section 7(a) or elsewhere in this Agreement or otherwise, nothing in this Agreement shall prevent Guarantor from (i) abandoning or discontinuing the use, prosecution or maintenance of any of the Patents or (ii) failing to take any action to enforce any actions against infringers of the any of the Patents, in each case (i) and (ii), if Guarantor determines, in its reasonable business judgment, that such abandonment, discontinuance or failure to take action is desirable in the conduct of its business.

(c)    At the Noteholder's request, Guarantor shall use commercially reasonable efforts to take all action necessary to preserve and maintain the validity, perfection and first priority of Noteholder's interest granted herein in the Patents.

8.    Waivers. No course of dealing between Guarantor and Noteholder, nor any failure to exercise, nor any delay in exercising, on the part of Noteholder, any right, power or privilege hereunder or under the Guaranty or any other Note Document shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder or thereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

9.    Severability. The provisions of this Agreement are severable, and if any clause or provision shall be held invalid and unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall affect only such clause or provision, or part thereof, in such jurisdiction, and shall not in any manner affect such clause or provision in any other jurisdiction, or any other clause or provision of this Agreement in any jurisdiction. If any provision hereof shall render an otherwise valid Patent invalid or ineffective, then such provision shall be void ab initio to the extent that the validity or effectiveness of the Patent is thereby preserved and Guarantor shall make suitable other valid arrangements to provide Noteholder with equivalent protections to that intended hereby.

10.    Amendments. This Agreement or any provision thereof may be changed, waived, or terminated only (a) in the manner set forth in Section 4 or (b) pursuant to a written agreement executed by Guarantor and Noteholder.

11.    Remedies. If (a) the Note has been declared due and payable upon an Event of Default pursuant to Section 6.2 of the NPA or (b) an Event of Default has occurred and is continuing due to the Issuer's default in payment of principal of the Note upon the Maturity Date (each a "Specified Event of Default"), then Noteholder shall, upon five (5) days' prior written notice to the Guarantor, be entitled to exercise in respect of the Collateral, in addition to other

-3-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM    INDEX NO. 650026/2018

NYSCEF DOC. NO. 2                                             RECEIVED NYSCEF: 01/03/2018

rights and remedies provided for herein, in the Guaranty and other Note Documents or otherwise available to it, all of the rights and remedies of a secured party under the Uniform Commercial Code in effect in the State of New York (the "UCC") and also may: (i) require Guarantor, and Guarantor hereby agrees that it will, upon the request of Noteholder, forthwith, (A) execute and deliver an assignment, substantially in the form of Exhibit A hereto, of all right, title and interest in and to the Collateral to Noteholder and (B) take such other action as Noteholder may reasonably request to effectuate the outright assignment of such Collateral to Noteholder or to enable Noteholder to exercise, register or further perfect and protect its rights and remedies with respect to such assigned Collateral; and (ii) without notice except as specified in this Section 11, sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of Noteholder's offices or elsewhere, for cash, on credit or for future delivery, and upon such terms as Noteholder may deem commercially reasonable. Guarantor agrees that at least ten (10) days written notice to Guarantor, given by Noteholder in accordance with the terms of the Guaranty, of the time and place of any public sale or the time which any private sale is to be made shall constitute reasonable notification of the sale of such Collateral. Noteholder shall not be obligated to make any sale of the Collateral regardless of notice of sale having been given. Noteholder may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned. Noteholder may purchase all or any part of the Collateral at public or, if permitted by law, private sale and, in lieu of actual payment of such purchase price, may setoff the amount of such price against the Obligations. The proceeds realized from the sale of any Collateral shall be, applied first to the reasonable costs and expenses (including, without limitation, reasonable and documented out-of-pocket attorneys' fees and disbursements (which shall be limited to those of a single legal counsel each relevant jurisdiction)) incurred by Noteholder for collection and for acquisition, protection, and sale of the Collateral; second to interest due upon any of the Obligations; and third to the principal of the Obligations. If any deficiency shall arise, Guarantor shall remain liable to Noteholder therefor. The commencement of any action, legal or equitable, or the rendering of any judgment or decree for deficiency shall not affect Noteholder's security interest in the Collateral until the Note Discharge. Guarantor agrees that Noteholder has no obligation to preserve rights to Collateral against any other parties.

12. Cumulative Remedies; Power of Attorney; Effect on Guaranty. All of Noteholder's rights and remedies with respect to the Patents, whether established hereby, by the Guaranty, by any other Note Document, or by law shall be cumulative and may be exercised singularly or concurrently. Guarantor hereby authorizes Noteholder to make, constitute and appoint any officer or agent of Noteholder as Noteholder may select, in its sole discretion, as Guarantor's true and lawful attorney-in-fact, with power, upon the occurrence of a Specified Event of Default and solely during the continuance of such Specified Event of Default to (a) endorse Guarantor's name on all applications, documents, papers and instruments necessary or desirable for Noteholder in the use of the Patents, (b) take any other actions with respect to the Patents as Noteholder deems in the best interest of Noteholder, (c) grant or issue any exclusive or non-exclusive license under the Patents to anyone or (d) assign, pledge, convey or otherwise transfer title in or dispose of the Patents to anyone. Guarantor hereby ratifies all that such attorney shall lawfully do or cause to be done by virtue hereof. This power of attorney, being coupled with an interest, shall be irrevocable until the Note Discharge. Guarantor acknowledges and agrees that this Agreement is

-4-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 2

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

not intended to limit or restrict in any way the rights and remedies of Noteholder under the Guaranty and the other Note Documents but rather is intended to facilitate the exercise of such rights and remedies.

13. Notices. Any notice, approval, consent or other communication to any party hereunder shall be in the form and manner, and to the addresses as set forth in the Guaranty.

14. Binding Effect; Benefits of Agreement. This Agreement and all covenants and agreements of each party contained in this Agreement shall be binding upon and inure to the successors and assigns of such party. Noteholder may assign or otherwise transfer its rights under this Agreement to any assignee of the Note in connection with an assignment thereof made in accordance with the terms of the NPA.

15. Authority of Noteholder. Noteholder shall have and be entitled to exercise all powers hereunder which are specifically delegated to Noteholder by the terms hereof, together with such powers as are reasonably incident thereto. Noteholder may perform any of its duties hereunder or in connection with the Patents by or through agents or employees and shall be entitled to retain counsel and to act in reliance upon the advice of counsel concerning all such matters.

16. Interpretation of Agreement. All terms not defined herein shall have the meaning set forth in the Guaranty and in the UCC, except where the context otherwise requires. To the extent any term or provision of this Agreement conflicts with the Guaranty and is not dealt with more specifically herein, the Guaranty shall control with respect to such term or provision.

17. Waiver. To the fullest extent it may lawfully so agree, Guarantor agrees that it will not at any time insist upon, claim, plead, or take any benefit or advantage of any appraisement, valuation, stay, extension, moratorium, redemption or similar law now or hereafter in force in order to prevent, delay, or hinder the enforcement hereof or the absolute sale of any part of the Patents. Guarantor for itself and all who claim through it, so far as it or they now or hereafter lawfully may do so, hereby waives the benefit of all such laws, and all right to have the Patents marshalled upon any foreclosure hereof, and agrees that any court having jurisdiction to foreclose this Agreement may order the sale of the Patents as an entirety. Guarantor hereby waives and releases any and all right to require Noteholder to collect any of the Obligations from any specific item or items of the Patents or from any other party liable as guarantor or in any other manner in respect of any of the Obligations or from any collateral (other than the Patents) for any of the Obligations.

18. Reinstatement. This Agreement shall continue to be effective or be reinstated, as the case may be, if at any time any amount received by Noteholder in respect of the Obligations is rescinded or must otherwise be restored or returned by Noteholder upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Guarantor or upon the appointment of any intervenor or conservator of, or trustee or similar official for, Guarantor or any substantial part of its assets, or otherwise, all as though such payments had not been made.

19. Final Expression. This Agreement, together with the Guaranty and the other Note Documents to which Guarantor is a party, is intended by the parties as a final expression of their

-5-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

agreement and is intended as a complete and exclusive statement of the terms and conditions thereof. Acceptance of or acquiescence in a course of performance rendered under this Agreement shall not be relevant to determine the meaning of this Agreement even though the accepting or acquiescing party had knowledge of the nature of the performance and opportunity for objection.

20. Survival of Provisions. All representations, warranties and covenants of Guarantor contained herein shall survive the execution and delivery of this Agreement, and shall terminate only upon the full and final payment and performance by Guarantor of the Obligations and termination of the Guaranty and the other Note Documents.

21. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which shall together constitute one and the same agreement.

22. GOVERNING LAW; SUBMISSION TO JURISDICTION; WAIVER OF JURY TRIAL.

(a)    THIS AGREEMENT SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK, INCLUDING THE UCC.

(b)    GUARANTOR AND NOTEHOLDER ACKNOWLEDGE THAT THE RIGHT TO A TRIAL BY JURY IS A CONSTITUTIONAL RIGHT, BUT THAT THE RIGHT MAY BE WAIVED. BOTH GUARANTOR AND NOTEHOLDER EACH KNOWINGLY, VOLUNTARILY, IRREVOCABLY AND WITHOUT COERCION, WAIVE ALL RIGHTS TO TRIAL BY JURY OF ALL DISPUTES BETWEEN THEM. NEITHER NOTEHOLDER NOR GUARANTOR SHALL BE DEEMED TO HAVE GIVEN UP THIS WAIVER OF JURY TRIAL UNLESS THE PARTY CLAIMING THAT THIS WAIVER HAS BEEN RELINQUISHED HAS A WRITTEN INSTRUMENT SIGNED BY THE OTHER PARTY STATING THAT THIS WAIVER HAS BEEN GIVEN UP.

(c)    EACH PARTY HERETO AGREES THAT ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY MAY BE BROUGHT IN ANY COURT OF THE UNITED STATES OF AMERICA OR OF THE STATE OF NEW YORK, SITTING IN OR HAVING JURISDICTION OVER THE COUNTY OF NEW YORK, NEW YORK AND EACH PARTY HERETO HEREBY SUBMITS TO AND ACCEPTS GENERALLY AND UNCONDITIONALLY THE NON-EXCLUSIVE JURISDICTION OF THOSE COURTS WITH RESPECT TO ITS PERSON AND PROPERTY AND IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS IN CONNECTION WITH ANY SUCH ACTION OR PROCEEDING BY MAILING SUCH SERVICE OF PROCESS (CERTIFIED OR REGISTERED), IF CAPABLE OF CERTIFICATION OR REGISTRATION) TO SUCH PARTY AT ITS ADDRESS FOR NOTICES SET FORTH IN THE GUARANTY. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUCH SUIT OR PROCEEDING IN THE ABOVE-DESCRIBED COURTS. EACH PARTY HERETO IRREVOCABLY AND GENERALLY CONSENTS IN RESPECT OF ANY

-6-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 2

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

PROCEEDINGS TO THE GIVING OF ANY RELIEF OR THE ISSUE OF ANY PROCESS IN CONNECTION WITH THOSE PROCEEDINGS INCLUDING, WITHOUT LIMITATION THE MAKING, ENFORCEMENT OR EXECUTION AGAINST ANY ASSETS WHATSOEVER OF ANY ORDER OR JUDGMENT WHICH MAY BE MADE OR GIVEN IN THOSE PROCEEDINGS.

23. Termination of Agreement. This Agreement shall terminate upon the Note Discharge automatically and without the requirement for any further action by any party. At such time, Noteholder shall promptly (a) reassign and redeliver to Guarantor all of the Patents that have not been otherwise sold or disposed of by Noteholder in accordance with the terms hereof and (b) execute and deliver to Guarantor, at Guarantor's expense, all documents that Guarantor requests to evidence such termination and the release of Noteholder's security interest in and to the Collateral. In addition, the security interest created by this Agreement with respect to any Collateral shall automatically terminate without the requirement for any further action by any party upon any sale or disposition of such Collateral that is permitted by the Note Documents, subject to the mandatory prepayment provisions of the NPA.

[The rest of this page is intentionally left blank.]

WEIL:\98477755\14\49.0003
3580385-v5

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

IN WITNESS WHEREOF, Guarantor has duly executed and delivered this Agreement as of the day and year first above written.

NOMADIX, INC.,
a Delaware corporation

By: _____
        Its: _____

By acceptance hereof as of this _____ day of _____, 2015, Noteholder agrees to be bound by the provisions hereof.

NTT DOCOMO, INC.,
a Japanese corporation

By: _____
        Its: _____

*Signature Page to Patent Security Agreement*

WEIL:\95477755\7\44869.0005
3580385-v9A

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

SCHEDULE A

TO

PATENT SECURITY AGREEMENT

Dated as of September 29, 2015

Patents Owned By Nomadix, Inc.

| Title | Country | Application No. | Filing Date | Patent Number | Issue Date |
|---|---|---|---|---|---|
| NOMADIC TRANSLATOR OR ROUTER | US | 09/041,598 | 12-Mar-1998 | 6130892 | 10-Oct-2000 |
| SYSTEM AND METHOD FOR ESTABLISHING NETWORK CONNECTION WITH UNKNOWN NETWORK AND/OR USER DEVICE | US | 09/684,937 | 06-Oct-2000 | 7088727 | 08-Aug-2006 |
| SYSTEM AND METHOD FOR ESTABLISHING NETWORK CONNECTION WITH UNKNOWN NETWORK AND/OR USER DEVICE | US | 11/097,923 | 1-Apr-2005 | 7554995 | 30-Jun-2009 |
| SYSTEM AND METHOD FOR ESTABLISHING NETWORK CONNECTION | US | 12/240,127 | 29-Sep-2008 | 8027359 | 27-Sep-2011 |
| SYSTEM AND METHOD FOR ESTABLISHING NETWORK CONNECTION | US | 13/225,050 | 2-Sep-2011 | 8594107 | 26-Nov-2013 |
| REEXAM OF NOMADIC TRANSLATOR OR ROUTER | US | 90/007,423 | 15-Feb-2005 | 6130892 C1 | 01-Dec-2009 |

WEIL:\95477760\14\43408.0003
35803B5-v6\

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

| Title | Country | Application No. | Filing Date | Patent Number | Issue Date |
|---|---|---|---|---|---|
| SYSTEMS AND METHODS FOR REDIRECTING USERS HAVING TRANSPARENT COMPUTER ACCESS TO A NETWORK USING A GATEWAY DEVICE HAVING REDIRECTION CAPABILITY | US | 09/458,569 | 8-Dec-1999 | 6636894 | 21-Oct-2003 |
| SYSTEMS AND METHODS FOR AUTHORIZING, AUTHENTICATING AND ACCOUNTING USERS HAVING TRANSPARENT COMPUTER ACCESS TO A NETWORK USING A GATEWAY DEVICE | US | 09/458,602 | 8-Dec-1999 | 8713641 | 29-Apr-2014 |
| SYSTEM AND METHOD FOR AUTHORIZING A PORTABLE COMMUNICATION DEVICE | US | 13/271,099 | 11-Oct-2011 | 8613053 | 17-Dec-2013 |
| SYSTEMS AND METHODS FOR REDIRECTING USERS HAVING TRANSPARENT COMPUTER ACCESS TO A NETWORK USING A GATEWAY DEVICE HAVING REDIRECTION CAPABILITY | US | 90/007,220 | 24-Sep-2004 | 6636894 C1 | 28-Mar-2006 |
| SYSTEMS AND METHODS FOR PROVIDING DYNAMIC NETWORK AUTHORIZATION, AUTHENTICATION AND ACCOUNTING | US | 09/693,060 | 20-Oct-2000 | 7194554 | 28-Mar-2007 |
| SYSTEMS AND METHODS FOR PROVIDING DYNAMIC NETWORK AUTHORIZATION, AUTHENTICATION AND ACCOUNTING | US | 11/427,143 | 28-Jun-2006 | 7789716 | 30-Jun-2010 |
| SYSTEMS AND METHODS FOR PROVIDING DYNAMIC NETWORK AUTHORIZATION, AUTHENTICATION AND ACCOUNTING | US | 12/685,585 | 11-Jan-2010 | 8266269 | 11-Sep-2012 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 12/875,043 | 02-Sep-2010 | 8244886 | 14-Aug-2012 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 14/050,213 | 21-Oct-2013 | 8725888 | 13-May-2014 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 14/050,263 | 21-Oct-2013 | 8725899 | 13-May-2014 |

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

| Title | Country | Application No. | Filing Date | Patent Number | Issue Date |
|---|---|---|---|---|---|
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 13/244866 | 26-Sep-2011 | 8156246 | 10-Apr-2012 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 13/329867 | 19-Dec-2011 | 8266269 | 11-Sep-2012 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 13/566904 | 3-Aug-2012 | 8364806 | 29-Jan-2013 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 13/566961 | 3-Aug-2012 | 8370477 | 05-Feb-2013 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 13/659851 | 24-Oct-2012 | 8606917 | 10-Dec-2013 |
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 14/094712 | 2-Dec-2013 | 8788690 | 22-Jul-2014 |
| SYSTEMS AND METHODS FOR INJECTING CONTENT | US | 11/864319 | 28-Sep-2007 | 8868740 | 21-Oct-2014 |
| ZONE MIGRATION IN NETWORK ACCESS | US | 13/478458 | 22-May-2012 | 8565912 | 22-Oct-2013 |
| SYSTEMS AND METHODS FOR DYNAMIC BANDWIDTH MANAGEMENT ON A PER SUBSCRIBER BASIS IN A COMMUNICATIONS NETWORK | US | 14/057481 | 18-Oct-2013 | 9141773 | 22-Sep-2015 |
| | US | 09/693481 | 20-Oct-2000 | 7739383 | 15-Jun-2010 |
| SYSTEMS AND METHODS FOR DYNAMIC BANDWIDTH MANAGEMENT ON A PER SUBSCRIBER BASIS IN A COMMUNICATIONS NETWORK | US | 12/579820 | 15-Oct-2009 | 7698432 | 13-Apr-2010 |
| SYSTEMS AND METHODS FOR DYNAMIC DATA TRANSFER MANAGEMENT ON A PER SUBSCRIBER BASIS IN A COMMUNICATIONS NETWORK | US | 12/771915 | 30-Apr-2010 | 7953857 | 31-May-2011 |

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 2

| Title | Country | Application No. | Filing Date | Patent Number | Issue Date |
|---|---|---|---|---|---|
| SYSTEMS AND METHODS FOR DYNAMIC DATA TRANSFER MANAGEMENT ON A PER SUBSCRIBER BASIS IN A COMMUNICATIONS NETWORK | US | 13/094769 | 26-May-2011 | 8826922 | 07-Jan-2014 |
| INFORMATION AND CONTROL CONSOLE FOR USE WITH A NETWORK GATEWAY INTERFACE | US | 08/712502 | 11-Sep-1996 | 6795852 | 21-Sep-2004 |
| INFORMATION AND CONTROL CONSOLE FOR USE WITH A NETWORK GATEWAY INTERFACE | US | 09/541877 | 3-Apr-2000 | 6789110 | 07-Sep-2004 |
| SYSTEMS AND METHODS FOR INTEGRATING A NETWORK GATEWAY DEVICE WITH MANAGEMENT SYSTEMS | US | 09/693061 | 20-Oct-2000 | 6868399 | 15-Mar-2005 |
| METHOD AND APPARATUS FOR ESTABLISHING DYNAMIC TUNNEL ACCESS SESSIONS IN A COMMUNICATION NETWORK | US | 09/693569 | 20-Oct-2000 | 7117526 | 03-Oct-2006 |
| GATEWAY DEVICE HAVING AN XML INTERFACE AND ASSOCIATED METHOD | US | 09/693582 | 20-Oct-2000 | 8190708 | 29-May-2012 |
| SYSTEMS AND METHODS OF COMMUNICATING USING XML | US | 13/462583 | 2-May-2012 | 8516083 | 20-Aug-2013 |
| LOCATION-BASED IDENTIFICATION FOR USE IN A COMMUNICATIONS NETWORK | US | 09/693511 | 20-Oct-2000 | 7197556 | 27-Mar-2007 |
| METHODS AND SYSTEMS PROVIDING FAIR QUEUING AND PRIORITY SCHEDULING TO ENHANCE QUALITY OF SERVICE IN A NETWORK | US | 10/060273 | 30-Jan-2002 | 6810426 | 26-Oct-2004 |
| INTELLIGENT NETWORK ADDRESS TRANSLATOR AND METHODS FOR NETWORK ADDRESS TRANSLATION | US | 10/271640 | 15-Oct-2002 | 7752334 | 06-Jul-2010 |
| INTELLIGENT NETWORK ADDRESS TRANSLATOR AND METHODS FOR NETWORK ADDRESS TRANSLATION | US | 12/830264 | 2-Jul-2010 | 7822873 | 26-Oct-2010 |
| INTELLIGENT NETWORK ADDRESS TRANSLATOR AND METHODS FOR NETWORK ADDRESS TRANSLATION | US | 12/908341 | 20-Oct-2010 | 8051206 | 01-Nov-2011 |

WEIL:\96544775\04\36616.0003
36803865v85

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

| Title | Country | Application No. | Filing Date | Patent Number | Issue Date |
|---|---|---|---|---|---|
| INTELLIGENT NETWORK ADDRESS TRANSLATOR AND METHODS FOR NETWORK ADDRESS TRANSLATION | US | 11/521/5217 | 14-Oct-2011 | 8224409 | 31-Jul-2012 |
| SYSTEMS AND METHODS FOR NETWORK ADDRESS TRANSLATION | US | 13/550079 | 16-Jul-2012 | 8370524 | 05-Feb-2013 |
| SYSTEMS AND METHODS FOR NETWORK ADDRESS TRANSLATION | US | 13/756344 | 31-Jan-2013 | 8832315 | 09-Sep-2014 |
| SYSTEM AND METHOD FOR NETWORK ACCESS WITHOUT RECONFIGURATION | US | 09/694577 | 23-Oct-2000 | 6857009 | 15-Feb-2005 |
| MOBILE WEB | US | 08/839977 | 24-Apr-1997 | 6194992 | 27-Feb-2001 |
| SYSTEMS AND METHODS FOR GROUP BANDWIDTH MANAGEMENT IN A COMMUNICATION SYSTEMS NETWORK | US | 13/352255 | 17-Jan-2012 | 9118578 | 25-Aug-2015 |
| SYSTEM FOR PROVIDING INTERNET ACCESS FROM LOCATIONS DIFFERENT FROM THOSE FOR WHICH THE USER'S SOFTWARE WAS CONFIGURED | US | 09/097603 | 15-Jun-1998 | 6377990 | 23-Apr-2002 |
| SERIAL REDIRECTOR DEVICE AND ASSOCIATED METHODS | US | 13/481060 | 25-May-2012 | 8804717 | 12-Aug-2014 |
| CONVENTION ID BADGE SYSTEM | US | 08/962575 | 24-Nov-1995 | 5936542 | 10-Aug-1999 |
| NETWORK USAGE MONITORING DEVICE AND ASSOCIATED METHOD | US | 09/849551 | 4-May-2001 | 7020082 | 28-Mar-2006 |

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

## U.S. PENDING APPLICATIONS

| Title | Country | Application No. | Filing Date | Publication No. | Pub. Date |
|---|---|---|---|---|---|
| SYSTEMS AND METHODS FOR PROVIDING CONTENT AND SERVICES ON A NETWORK SYSTEM | US | 14/335587 | 18-Jul-2014 | 20160087110A1 | 26-Mar-2015 |
| SYSTEMS AND METHODS FOR CONTROLLING USER PERCEIVED CONNECTION SPEED | US | 14/675563 | 31-Mar-2015 | 2015/0256965A1 | 20-Aug-2015 |
| SYSTEMS AND METHODS FOR ROUTING CONTENT | US | 14/517066 | 17-Oct-2014 | 20150206186A1 | 23-Jul-2015 |
| SYSTEMS AND METHODS FOR DYNAMIC DATA TRANSFER MANAGEMENT ON A PER SUBSCRIBER BASIS IN A COMMUNICATIONS NETWORK | US | 14/146971 | 3-Jan-2014 | 2014/0215089A1 | 31-Jul-2014 |
| SYSTEMS AND METHODS FOR NETWORK ADDRESS TRANSLATION | US | 14/478429 | 5-Sep-2014 | 2015/0256225A1 | 10-Sep-2015 |
| SYSTEM AND METHOD FOR NETWORK REDIRECTION | US | 13/460997 | 1-May-2012 | 2012/0290124A1 | 15-Nov-2012 |
| SYSTEMS AND METHODS FOR GROUP BANDWIDTH MANAGEMENT IN A COMMUNICATIONS SYSTEMS NETWORK | US | 14/832945 | 21-Aug-2015 | | |
| HIERARCHICAL RULE-BASED ROUTING SYSTEM | US | 14/199944 | 6-Mar-2014 | 2014/0280910A1 | 18-Sep-2014 |
| TRAVELER TRACKING SYSTEM | US | 14/538830 | 11-Nov-2014 | 2015/0134455A1 | 14-May-2015 |
| CLASS BASED QUEUEING | US | 620/062765 | 10-Oct-2014 | | |
| CLASS BASED QUEUEING | US | 62/093894 | 19-Dec-2014 | | |
| ZONE MIGRATION IN NETWORK ACCESS | US | 12/534814 | 3-Aug-2009 | 2011/0030037A1 | 3-Feb-2011 |

1513447ed116f5ea0603
550035-v8.

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 2

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

WEIL:\96477755\7\44349.0003\
3580385-v9\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

Exhibit A to Patent
Security Agreement

## EXHIBIT A

### FORM OF ASSIGNMENT

### ASSIGNMENT OF PATENTS

THIS ASSIGNMENT OF PATENTS ("Assignment") is made as of _____, 20__ by and between Nomadix, Inc., a Delaware corporation, having an office at _____ ("Assignor"), in favor of NTT DOCOMO, INC., a company organized under the laws of Japan, having an office at 2-11-1, Nagata-Cho, Chiyoda-ku, Tokyo 100-6150, Japan ("Assignee").

### Recitals

WHEREAS, Assignor and Assignee are parties to that certain Patent Security Agreement dated as of _____, 2015 by and between Assignor to Assignee (the "Agreement") providing that, during a Specified Event of Default (as such term is defined in the Agreement), Assignor shall execute this Assignment; and

WHEREAS, a Specified Event of Default has occurred and is continuing;

NOW THEREFORE, Assignor hereby agrees as follows:

1.       Assignment of Patents. Assignor hereby grants, assigns and conveys to Assignee its entire right, title and interest in and to: (a) all patents and patent applications owned by Guarantor including, without limitation, the patents and patent applications listed on Schedule A attached hereto and made a part hereof, together with all reissues, divisions, continuations, renewals, reexaminations, extensions and continuations-in-part of any of the foregoing (the "Patents"); (b) the inventions claimed in the Patents; (c) all income, royalties, damages and payments now and hereafter due or payable with respect to any of the Patents, including, without limitation, payments under all licenses entered into with respect to the Patents and damages and payments for past or future infringements of the Patents; and (d) the right to sue for past, present and future infringements of the Patents.

2.       Representations and Warranties. Assignor represents and warrants that it has the full right and power to make the assignment of the Patents made hereby and that it has made no

WEIL:\96477766\14\34850903
3500385v91

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

previous assignment, transfer or agreement in conflict herewith, except as not prohibited pursuant to the terms of the Agreement.

3.     Modification.  This Assignment cannot be altered, amended or modified in any way, except by a writing signed by the parties hereto.

4.     Binding Effect. Governing Law.  This Assignment shall be binding upon Assignor and its successors and shall inure to the benefit of Assignee and its successors and assigns.  This Assignment shall, except to the extent that federal law or laws of another state apply to the Patents or any part thereof, be governed by and construed in accordance with the internal laws of the State of New York.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered as of the date first above written.

NOMADIX, INC.,
a Delaware Corporation

By: _____
    Its: _____

WEIL:\65177765\7\43349.0003
3580386-v0\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

SCHEDULE I

| PATENT | DATE OF REGISTRATION OR APPLICATION | REGISTRATION NUMBER |
|--------|-------------------------------------|---------------------|

WEIL:\954777561\4\4240.0003
3580385-v01

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

## EXHIBIT C

## FORM OF NOMADIX GUARANTY

See attached.

WEIL:\9154777\9\64348.0002
3579134v12)

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 2

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

# FORM OF

# GUARANTY

by

**NOMADIX, INC.,**
as Guarantor

in favor of

**NTT DOCOMO, INC.,**
as Noteholder,

dated as of

[●], 2015

1580584-v\1
WEIL:\96477724\8\44349.0003

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM    INDEX NO. 650026/2018

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 01/03/2018

## GUARANTY

This GUARANTY, dated as of [●], 2015 (as the same may be amended, supplemented or otherwise modified from time to time, the "Guaranty") is made by NOMADIX, INC., a corporation organized and existing under the laws of Delaware (the "Guarantor"), in favor of NTT DOCOMO, INC., a company organized and existing under the laws of Japan (the "Noteholder");

## RECITALS:

WHEREAS, the Noteholder has accepted and holds that certain Promissory Note issued by the Issuer (as hereinafter defined) dated September 29, 2015 in an original principal amount of $55,000,000 (the "Note");

WHEREAS, the Guarantor receives direct and indirect benefits by reason of the Noteholder's accepting and holding the Note;

NOW THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Guarantor hereby guarantees, promises and undertakes as follows:

SECTION 1. Definitions. The following terms used in this Guaranty shall have the following meanings (such meanings to be applicable, except to the extent otherwise indicated in a definition of a particular term, both to the singular and the plural forms of the terms defined):

"Agreement" shall mean the Note Purchase Agreement, of even date herewith, by and between the Noteholder and interTouch Holdings LLC, a company organized and existing under the laws of the State of Delaware (the "Issuer"), as the same may be amended, extended, modified, substituted, exchanged or replaced from time to time.

"Issuer" has the meaning set forth in the definition of Agreement.

"Note Documents" has the meaning set forth in the Agreement.

"Obligations" shall have the meaning ascribed to such term in Section 2 hereof.

"Person" has the meaning set forth in the Agreement.

"Specified Event of Default" shall mean either (a) the Note has been declared due and payable upon an Event of Default pursuant to Section 6.2 of the NPA or (b) an Event of Default has occurred and is continuing due to the Issuer's default in payment of principal of the Note upon the Maturity Date.

"Taxes" shall have the meaning ascribed to such term in Section 16 hereof.

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

(b) Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Agreement.

SECTION 2. Guaranty. The Guarantor unconditionally, absolutely and irrevocably guarantees to pay to the Noteholder, on demand, any and all present or future indebtedness, and to perform any and all present or future liabilities or obligations, of the Issuer of every kind or nature, howsoever evidenced, owing to the Noteholder, whether direct or indirect, primary or secondary, absolute or contingent, liquidated or unliquidated, matured or unmatured, arising out of or in connection with or with respect to the Agreement, any other Note Document, or any other instrument or agreement from time to time between the Issuer and the Noteholder, as any of the foregoing may be amended, modified or otherwise supplemented from time to time (all of the foregoing referred to as the "Obligations"), together with any and all reasonable and documented costs and expenses (including, without limitation, reasonable and documented out-of-pocket attorneys' fees and disbursements) incurred by the Noteholder in preserving, protecting or defending the enforceability of, or enforcing, this Guaranty or the Noteholder's rights hereunder. This Guaranty is a guaranty of payment and not of collectibility.

If for any reason whatsoever the Issuer shall fail or be unable duly, punctually and fully to pay or perform the Obligations or any part thereof as and when the same shall become payable or performable in accordance with the terms of the Agreement or otherwise, (i) the Noteholder may proceed directly and at once, without notice, against the Guarantor to obtain performance of and to collect and recover the full amount, or any portion, of the Obligations that are due and payable at or during such time without (a) first proceeding against the Issuer or any other Person, or (b) proceeding against any other security or collateral for the Obligations (including, without limitation, proceeding under any Guaranty), and (ii) the Guarantor shall pay or cause to be paid to the Noteholder, on demand, the full amount of the Obligations pursuant to the terms of the Agreement or otherwise that are due and payable at or during such time. All such payments by the Guarantor to the Noteholder shall be made without set-off or counterclaim, and the Guarantor hereby waives all set-offs and counterclaims.

Notwithstanding the foregoing, in any action or proceeding involving any state corporate law or any state or Federal bankruptcy, insolvency, reorganization, fraudulent conveyance, or other law affecting the rights of creditors generally, if the obligations of the Guarantor would otherwise be held or determined to be void, invalid or unenforceable on account of the amount of its liability hereunder, then notwithstanding any other provision hereof to the contrary, the amount of such liability shall, without any further action by the Guarantor or any other person, be automatically limited and reduced to the highest amount which is valid and enforceable as determined in such action or proceeding. Guarantor agrees that the Obligations may at any time and from time to time exceed Guarantor's maximum liability without impairing this Guaranty or affecting the Noteholder's rights and remedies hereunder.

Notwithstanding the foregoing or any other provision of any Loan Document, the Noteholder shall be permitted to seek recovery from the Guarantor under this Guaranty only after five (5) days prior written notice and only to the extent that a Specified Event of Default has occurred and is continuing.

3580384-v1
WEIL:\96477724\9\41349.0003

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

**SECTION 3. Obligations Unconditional.** The Guarantor hereby agrees that its obligations under this Guaranty shall be unconditional and binding upon it irrespective of:

(a) the validity or enforceability, avoidance or subordination of the Obligations or the Agreement, any other Note Document or any other instrument or agreement evidencing the Obligations;

(b) the absence of any attempt to collect the Obligations from or proceed against the Issuer or any other Guarantor any collateral security, or other action to enforce the same;

(c) any action taken by the Noteholder, from time to time, to (i) renew, refinance, refund, extend, accelerate or otherwise change the time for payment of, or other terms relating to, any or all of the Obligations, increase or modify the amount of the Obligations or otherwise consent, waive, modify, amend or change the terms of the Agreement, any other Note Document or any other instrument or agreement evidencing the Obligations; (ii) accept partial payments on all or any part of the Obligations; (iii) take and hold security or collateral (either directly or indirectly) for the payment of any or all of the Obligations, or for the payment of this Guaranty, or for the payment of any other guaranties of the Obligations; (iv) substitute, exchange, enforce, waive and release any such security or collateral, or direct any other Person to do any of the foregoing; and (v) settle, release, compromise, collect or otherwise liquidate any or all of the Obligations and exchange, enforce, fail to protect, perfect or continue perfected, release or waive any security or collateral for the Obligations, in any manner, without affecting or impairing the obligations of the Guarantor hereunder, and (vi) settle, release, compromise or collect on any Guaranty;

(d) any insolvency, bankruptcy, assignment for the benefit of creditors or other similar events or proceedings affecting the Guarantor or the Issuer, or any of their respective assets or of any other Guarantor, or any action taken by any trustee or receiver or by any court in any such proceeding, or any allegation of invalidity of this Guaranty in any such proceeding;

(e) any release or discharge by operation of law of the Issuer, the Guarantor or of any other guarantor, or any other Person from the performance or observance of any obligation, covenant or agreement contained in the Agreement, any other Note Document, this Guaranty or any other instrument or agreement evidencing the Obligations;

(f) any merger or consolidation of the Issuer into or with any other Person or any sale, lease or transfer of any of the assets of the Issuer to any other Person; or

(g) any other occurrence or circumstance whatsoever, whether similar or dissimilar to the foregoing, and any other circumstance that might otherwise constitute a legal or equitable defense or discharge of the liabilities of a guarantor or surety or that might otherwise limit recourse against the Guarantor other than a defense of payment or the Note Discharge.

8580384.v4
WEIL:\95477724\16\44369.0003

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM    INDEX NO. 650026/2018

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 01/03/2018

SECTION 4. Waivers, etc.   The Guarantor hereby waives any requirement of promptness, diligence, presentment, acceptance, notice of acceptance, demand of payment or performance, notice of non-performance, filing of claims with a court in the event of receivership or bankruptcy of the Issuer, protest or notice with respect to the Obligations, the benefit of any statutes of limitation, all demands whatsoever, all notices and demands that may be required by law, now or hereafter in effect, to preserve intact any rights against the Guarantor, and any other circumstance whatsoever that might otherwise constitute a legal or equitable discharge, release or defense of a guarantor or that may otherwise limit recourse against the Guarantor. The Guarantor further waives notices of any and all proceedings to collect from any other guarantor or surety of all or any part of the Obligations or any collateral or security with respect thereto, or from anyone else, and notices of exchange, sale, surrender or other handling of any collateral or security given to the Noteholder (whether directly or indirectly) to secure payment of the Obligations.

SECTION 5. Effect of Bankruptcy Proceedings, etc.   If payments and credits, if any, from the Issuer or from any other Person on account of the Obligations that have been made to the Noteholder as provided herein, or any part thereof, are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to the Guarantor or any other Person under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the Obligations or part thereof that has been paid, reduced or satisfied by such amount shall be reinstated and such Obligations and this Guaranty shall continue in full force and effect as of the time immediately preceding the time such initial payment, credit, reduction or satisfaction occurred. The Guarantor agrees that, notwithstanding the foregoing and without limiting the generality of the foregoing if, after the occurrence of an Event of Default (as such term is defined in this Guaranty), the Noteholder is prevented by applicable law from exercising its right to accelerate the maturity of the Obligations, to collect interest on the Obligations or to enforce or exercise any other right or remedy with respect to the Obligations, the Guarantor shall pay to the Noteholder, upon demand therefor, the amount that otherwise would have been due and payable had such rights and remedies been permitted to be exercised by the Noteholder.

At any time when a Specified Event of Default has occurred and is continuing until the Note Discharge the Noteholder may, in its sole discretion, without notice to the Guarantor and regardless of the acceptance of any security or collateral for the payment hereof (either directly or indirectly), appropriate and apply toward the payment of the Obligations then due and payable (i) any indebtedness due or to become due from the Noteholder to the Guarantor, and (ii) any monies, credits or other property belonging to the Guarantor, at any time held by or coming into possession of the Noteholder or any other Person.

SECTION 6. Subrogation.   Until the Note Discharge, the Guarantor (i) shall have no right of subrogation and hereby irrevocably agrees not to exercise any rights that it may have or acquire by way of subrogation under this Guaranty, by any payment made hereunder or otherwise, and any right of reimbursement, contribution, exoneration, salvage, or similar right against the Issuer therefor and (ii) agrees not to enforce any and all claims the Guarantor may have against the Issuer for any of the Obligations.

-4-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

SECTION 7. Information; Marshalling.

(a)    The Guarantor hereby assumes responsibility for keeping itself informed of the financial condition of the Issuers and of any other guarantors or sureties of all or any part of the Obligations, and of all other circumstances bearing upon the risk of nonpayment of the Obligations or any part thereof. The Guarantor hereby agrees that the Noteholder shall have no duty to advise the Guarantor of information known to the Noteholder regarding such condition or any such circumstances. In the event the Noteholder in its sole discretion undertakes at any time or from time to time to provide any such information to the Guarantor, the Noteholder shall be under no obligation (i) to undertake any investigation not a part of its regular business routine, (ii) to disclose any information which, pursuant to accepted or reasonable commercial practices, the Noteholder wishes to maintain confidential or (iii) to make any other or future disclosures of such information or any other information to the Guarantor.

(b)    The Guarantor consents and agrees that the Noteholder shall be under no obligation to marshal any assets in favor of the Guarantor or against or in payment of any or all of the Obligations.

SECTION 8. Representations and Warranties.

The Guarantor represents and warrants as of the date hereof:

(a)    Due Authorization, Non-Contravention, etc. The execution, delivery and performance by the Guarantor of this Guaranty and each other Note Document executed or to be executed by it are within the Guarantor's powers, have been duly authorized by all necessary corporate action of the Guarantor, and do not contravene the Guarantor's certificate of incorporation or bylaws.

SECTION 9. Rights are Cumulative; No Waiver. The rights and remedies of the Noteholder under this Guaranty are cumulative and not exclusive of any rights or remedies that the Noteholder would otherwise have under the Agreement, any other Note Document (including, without limitation, under any Guaranty) or any other instrument or agreement evidencing the Obligations. No failure or delay on the part of the Noteholder in the exercise of any right, power, privilege or remedy arising under this Guaranty, the Agreement, any other Note Document or any other instrument or agreement evidencing the Obligations shall operate as a waiver thereof, and no single or partial exercise by the Noteholder of any such right, power, privilege or remedy shall preclude any further exercise thereof.

SECTION 10. Amendment. No amendment, modification or waiver of, or consent with respect to, any provision of this Guaranty shall in any event be effective unless the same shall be in writing and signed and delivered by the Guarantor and the Noteholder, and then any such amendment, modification, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

SECTION 11. Term of Agreement. The Guarantor agrees that this Guaranty and all agreements of the Guarantor contained herein shall continue in full force and effect and may not

-5-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

be discharged, terminated or otherwise revoked until the Note Discharge, at which time this Guaranty shall automatically terminate without further action by the Guarantor, subject to the terms and provisions of Section 5 hereof.

SECTION 12. Successors and Assigns. This Guaranty shall be binding upon the Guarantor and upon the successors and permitted assigns of the Guarantor and shall inure to the benefit of and be enforceable by the Noteholder and its successors and assigns. The Noteholder may assign or otherwise transfer its rights under this Guaranty to any assignee of the Note in connection with an assignment thereof made in accordance with the terms of the Agreement.

SECTION 13. Governing Law; Jury Trial; Severability. This Guaranty shall be a contract made under and governed by the laws of the State of New York. Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING (i) TO ENFORCE OR DEFEND ANY RIGHTS UNDER OR IN CONNECTION WITH THIS GUARANTY OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR (ii) ARISING FROM ANY DISPUTE OR CONTROVERSY IN CONNECTION WITH OR RELATED TO THIS GUARANTY OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT, AND AGREES THAT ANY SUCH ACTION OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

EACH OF THE PARTIES HERETO IRREVOCABLY AGREES THAT ANY ACTION OR PROCEEDING IN ANY WAY, MANNER OR RESPECT ARISING OUT OF THIS GUARANTY OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR ARISING FROM ANY DISPUTE OR CONTROVERSY ARISING IN CONNECTION WITH OR RELATED TO THIS GUARANTY OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT SHALL BE LITIGATED IN THE COURTS HAVING SITUS WITHIN THE CITY OF NEW YORK, THE STATE OF NEW YORK, AND EACH PARTY HERETO HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN SUCH CITY AND STATE. EACH PARTY HERETO HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT IN ACCORDANCE WITH THIS SECTION 14.

SECTION 14. Entire Agreement. This Guaranty and the other Note Documents, constitutes the entire agreement of the Guarantor with respect to the subject matter hereof and supersedes all prior negotiations, agreements, discussions, correspondence, memoranda and understandings (whether written or oral) of the Guarantor and the Noteholder concerning or

-6-

35RL384-VA
WEIL\96477724\6\44348.0005

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

relating to the subject matter of this Guaranty.

SECTION 15. **Payments.** Any and all amounts required to be paid by the Guarantor hereunder shall be paid in the lawful currency of the United States of America in immediately available funds, subject to deduction for withholdings as set forth in Article VII of the Agreement.

SECTION 16. **Notices.** All notices and other communications provided to any party hereto under this Guaranty shall be in writing, Telex or by facsimile and addressed, delivered or transmitted to such party at its address, Telex or facsimile number set forth beneath the signature below or at such other address, Telex or facsimile number as may be designated by such party in a notice to the other parties. Any notice, if mailed and properly addressed with postage prepaid or if properly addressed and sent by pre-paid courier service, shall be deemed given when received; any notice, if transmitted by Telex or facsimile, shall be deemed given when transmitted (answerback confirmation in the case of Telexes).

SECTION 17. **Captions and References.** The recitals to this Guaranty (except for definitions) and the section captions used in this Guaranty are for convenience only, and shall not affect the construction of this Guaranty.

[The rest of this page is intentionally left blank.]

3580384.1
WDL 48347772480/4349.0003

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM    INDEX NO. 650026/2018

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 01/03/2018

IN WITNESS WHEREOF, this Guaranty has been duly executed as of the day and year first above written.

NOMADIX, INC.

By: _____

Its: _____

Address:  c/o Exceptional Innovation
480 Olde Worthington Road, Suite 350
Westerville, OH 43082
USA

Facsimile No.: +1 (614) 890-6091

Attention:  Seale A. Moorer, Jr.

with a copy to (which shall not constitute notice):

Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065 USA
Attention: Gabriel Gregson
Facsimile:  1 (650) 802-3100

NTT DOCOMO, INC.

Sanno Park Tower 41st F
2-11-1 Nagata-cho, Chiyoda-ku
Tokyo 100-6150 Japan
Attention: Managing Director of the
Global Business Division
Facsimile: +81 3 5156 0203

*Signature Page to Nomadix Guaranty*

3580384-v4\
WEIL\95477724\1\41340.0003

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 2

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 3

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

# EXHIBIT B

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 3

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

COPY

**EXECUTION VERSION**

THIS NOTE (AS DEFINED BELOW) HAS NOT BEEN REGISTERED UNDER
THE SECURITIES ACT OF 1933, AS AMENDED (TOGETHER WITH ANY
APPLICABLE RULES AND REGULATIONS THEREUNDER, AND ANY
SUCCESSOR TO SUCH STATUTE, RULES OR REGULATIONS, THE "ACT")
OR THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION
AND MAY NOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED
UNLESS THE SAME IS REGISTERED UNDER THE ACT AND APPLICABLE
STATE AND OTHER LAWS OR UNLESS AN EXEMPTION FROM SUCH
REGISTRATION IS AVAILABLE.

## PROMISSORY NOTE

**$55,000,000.00**                                    **Dated: 29 September 2015**

FOR VALUE RECEIVED, interTouch Holdings LLC, a Delaware limited
liability company ("Issuer"), promises to pay, in lawful money of the United States of
America, to NTT DOCOMO, INC. ("Holder"), a company incorporated under the laws of
Japan having its registered office at 2-11-1, Nagata-cho, Chiyoda-ku, Tokyo 100-6150,
Japan by wire transfer to an account designated by Holder, the principal sum of Fifty Five
Million Dollars ($55,000,000.00) (the "Principal Amount"), or so much thereof as may
be outstanding from time to time, plus interest at a per annum rate equal to 6.00% (the
"Interest Rate") computed on a year of 365/366 days on the outstanding principal balance
hereof from the date hereof until the payment thereof in full, payable on the terms set
forth in this Promissory Note (this "Note") and the NPA referred to below.

This Note is issued pursuant to the terms of that certain Note Purchase Agreement
(as the same may be amended, restated, supplemented or otherwise modified from time to
time pursuant to the terms thereof, the "NPA") dated of even date herewith, and is subject
to the terms and conditions set forth therein. Capitalized terms used but not otherwise
defined herein shall have the respective meanings given to them in the NPA.

1.      **Payments.**

1.1     **Payment of Note.** Interest shall commence to accrue on the outstanding
principal amount of this Note as of the day and year first above written, and all interest
accrued hereunder shall be payable in arrears on the last day of each quarter, with the first
quarterly payment due on December 31, 2015, and thereafter on each of March 31, June
30, September 30 and December 31 through March 31, 2017 (the "Maturity Date"). The
principal amount hereof, together with all accrued and unpaid interest shall be payable in
two installments, the first in the amount of Five Million Dollars ($5,000,000.00) payable
on October 9, 2015, and the remaining principal balance payable on the Maturity Date.

3581138-v4\
WEIL:\95477720\14\44849.0003

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 3

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

COPY

Any payment falling due on a day that is not a Business Day shall be made on the next succeeding Business Day.

    1.2    **Prepayment.** This Note may be prepaid in whole or in part, at any time and from time-to-time without payment of any penalty or premium in accordance with Section 1.8(a) of the NPA.

    1.3    **Taxes.** Payments may be subject to deduction or withholding for Taxes as set forth in Article VII of the NPA.

2.    **Events of Default.** The occurrence and continuance of any of the following events or conditions shall, without notice or demand, constitute an "Event of Default" under this Note:

    2.1    an Event of Default (as defined in the NPA) has occurred under the NPA.

    Acceptance by Holder of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and Issuer's failure to pay the entire amount then due shall be and continue to be an Event of Default. Any such acceptance shall not be deemed a novation of this Note and Issuer hereby expressly waives the benefits of any statute or rule of law or equity which would produce a contrary result. On the occurrence and continuance of any Event of Default, neither the failure of Holder to promptly exercise its right to declare the outstanding Principal Amount and accrued and unpaid interest to be immediately due and payable, nor the failure of Holder to demand strict performance of any other obligation of Issuer under this Note, shall constitute a waiver of such rights in connection with any future default on the part of Issuer, except to the extent Holder makes any express waivers in writing.

    Upon the occurrence and during the continuance of an Event of Default, the Interest Rate shall automatically and immediately change from 6.00% per annum to 8.00% per annum.

3.    [Reserved].

4.    **Remedies.** No right or remedy conferred upon or reserved to Holder hereunder or now or hereafter existing at law or in equity is intended to be exclusive of any other right or remedy, and each and every such right or remedy shall be cumulative and concurrent, and in addition to every other such right or remedy, and may be pursued singly, concurrently, successively or otherwise, at the sole discretion of Holder, and shall not be exhausted by any one exercise thereof but may be exercised as often as occasion therefor shall occur.

5.    **Notices.** Any notice, request, instruction or other document to be given hereunder shall be in writing and shall be made in accordance with Section 10.4 of the NPA.

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM   INDEX NO. 650026/2018
NYSCEF DOC. NO. 3   RECEIVED NYSCEF: 01/03/2018

COPY

6.    **Security.** The full amount of this Note is secured by the Collateral (as defined in the NPA) identified and described as security therefor in the NPA executed and delivered by the Issuer to Holder.

7.    **Miscellaneous.**

7.1    **Successors and Assigns.** All rights of Issuer and Holder under this Note shall inure to the benefit of their respective successors, assigns, and legal representatives and this Note and all the provisions hereof shall be binding upon Issuer and Holder and their respective successors, assigns, and legal representatives and all other persons or entities claiming under or through them. The term "Issuer", when used in this Note, shall include all of Issuer's successors, assigns, and legal representatives. The term "Holder", when used in this Note, shall include Holder's successors and permitted assigns. Neither party hereto may sell, assign or transfer any of its rights and obligations under this Note except as permitted under the NPA.

7.2    **Amendments.** Neither this Note nor any provision hereof may be waived, amended or discharged orally, but may be waived, amended or discharged only by an agreement in writing signed by the party against whom enforcement of any waiver, amendment or discharge is sought.

7.3    **Governing Law.** This Note shall be governed by and construed in accordance with the substantive laws of the State of New York regardless of any principles of choice or conflict of laws that would otherwise provide for the application of the substantive laws of another jurisdiction.

7.4    **Headings.** The descriptive headings of the Sections of this Note are for convenience only and do not constitute a part of this Note.

7.5    **Severability.** If any provision of this Note shall be held to be illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall attach only to such provision and shall not in any manner affect or render illegal, invalid or unenforceable any other provision of this Note, and this Note shall be carried out as if any such illegal, invalid or unenforceable provision were not contained herein.

[Signature Page Follows]

-3-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 3

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

COPY

IN WITNESS WHEREOF, this Note has been duly executed and delivered by Issuer on the date first above written.

ISSUER:

INTERTOUCH HOLDINGS LLC

By: _____
Name: ZANE MOORE
Title: CEO

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 4

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

# EXHIBIT C

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 4

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

EXECUTION VERSION

# GUARANTY

by

**ST HOLDINGS LLC,**
as Guarantor,

in favor of

**NTT DOCOMO, INC.,**
as Noteholder,

dated as of

September 29, 2015

WEIL:\954777280\344349.0003
3581175-v6\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

INDEX NO. 650026/2018

NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 01/03/2018

## GUARANTY

This GUARANTY, dated as of September 29, 2015 (as the same may be amended, supplemented or otherwise modified from time to time, the "Guaranty") is made by ST HOLDINGS LLC, a limited liability company organized and existing under the laws of Florida (the "Guarantor"), in favor of NTT DOCOMO, INC., a company organized and existing under the laws of Japan (the "Noteholder").

## RECITALS:

WHEREAS, the Noteholder has accepted and holds that certain Promissory Note issued by the Issuer (as hereinafter defined) dated September 29, 2015 in an original principal amount of $55,000,000 (the "Note");

WHEREAS, the Guarantor receives direct and indirect benefits by reason of the Noteholder's accepting and holding the Note;

NOW THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Guarantor hereby guarantees, promises and undertakes as follows:

SECTION 1.  Definitions.  The following terms used in this Guaranty shall have the following meanings (such meanings to be applicable, except to the extent otherwise indicated in a definition of a particular term, both to the singular and the plural forms of the terms defined):

"Agreement" shall mean the Note Purchase Agreement, of even date herewith, by and between the Noteholder and interTouch Holdings LLC, a company organized and existing under the laws of the State of Delaware (the "Issuer"), as the same may be amended, extended, modified, substituted, exchanged or replaced from time to time.

"Issuer" has the meaning set forth in the definition of Agreement.

"Note Documents" has the meaning set forth in the Agreement.

"Obligations" shall have the meaning ascribed to such term in Section 2 hereof.

"Person" has the meaning set forth in the Agreement.

"Specified Event of Default" shall mean either (a) the Note has been declared due and payable upon an Event of Default pursuant to Section 6.2 of the NPA or (b) an Event of Default has occurred and is continuing due to the Issuer's default in payment of principal of the Note upon the Maturity Date.

"Taxes" shall have the meaning ascribed to such term in Section 16 hereof.

-1-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 4

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

(b) Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Agreement.

SECTION 2. Guaranty. The Guarantor unconditionally, absolutely and irrevocably guarantees to pay to the Noteholder, on demand, any and all present or future indebtedness, and to perform any and all present or future liabilities or obligations, of the Issuer of every kind or nature, howsoever evidenced, owing to the Noteholder, whether direct or indirect, primary or secondary, absolute or contingent, liquidated or unliquidated, matured or unmatured, arising out of or in connection with or with respect to the Agreement, any other Note Document, or any other instrument or agreement from time to time between the Issuer and the Noteholder, as any of the foregoing may be amended, modified or otherwise supplemented from time to time (all of the foregoing referred to as the "Obligations"), together with any and all reasonable and documented costs and expenses (including, without limitation, reasonable and documented out-of-pocket attorneys' fees and disbursements) incurred by the Noteholder in preserving, protecting or defending the enforceability of, or enforcing, this Guaranty or the Noteholder's rights hereunder. This Guaranty is a guaranty of payment and not of collectibility.

Following the Conversion Date, the liability of the Guarantor to the Noteholder under this Guaranty shall be modified and limited as specified in Section 1.5 of the Agreement.

If for any reason whatsoever the Issuer shall fail or be unable duly, punctually and fully to pay or perform the Obligations or any part thereof as and when the same shall become payable or performable in accordance with the terms of the Agreement or otherwise, (i) the Noteholder may proceed directly and at once, without notice, against the Guarantor to obtain performance of and to collect and recover the full amount, or any portion, of the Obligations that are due and payable at or during such time without (a) first proceeding against the Issuer or any other Person, or (b) proceeding against any other security or collateral for the Obligations (including, without limitation, proceeding under any Guaranty), and (ii) the Guarantor shall pay or cause to be paid to the Noteholder, on demand, the full amount of the Obligations pursuant to the terms of the Agreement or otherwise that are due and payable at or during such time. All such payments by the Guarantor to the Noteholder shall be made without set-off or counterclaim, and the Guarantor hereby waives all set-offs and counterclaims.

Notwithstanding the foregoing, in any action or proceeding involving any state corporate law or any state or Federal bankruptcy, insolvency, reorganization, fraudulent conveyance, or other law affecting the rights of creditors generally, if the obligations of the Guarantor would otherwise be held or determined to be void, invalid or unenforceable on account of the amount of its liability hereunder, then notwithstanding any other provision hereof to the contrary, the amount of such liability shall, without any further action by the Guarantor or any other person, be automatically limited and reduced to the highest amount which is valid and enforceable as determined in such action or proceeding. Guarantor agrees that the Obligations may at any time and from time to time exceed Guarantor's maximum liability without impairing this Guaranty or affecting the Noteholder's rights and remedies hereunder.

Notwithstanding the foregoing or any other provision of any Loan Document, the Noteholder shall be permitted to seek recovery from the Guarantor under this Guaranty only after

WEIL:\95477728\7\44349.0003
3581175-v6\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM    INDEX NO. 650026/2018
NYSCEF DOC. NO. 4                                       RECEIVED NYSCEF: 01/03/2018

five (5) days prior written notice and only to the extent that a Specified Event of Default has occurred and is continuing.

SECTION 3. **Obligations Unconditional.** The Guarantor hereby agrees that its obligations under this Guaranty shall be unconditional and binding upon it irrespective of:

(a)    the validity or enforceability, avoidance or subordination of the Obligations or the Agreement, any other Note Document or any other instrument or agreement evidencing the Obligations;

(b)    the absence of any attempt to collect the Obligations from or proceed against the Issuer or any other Guarantor any collateral security, or other action to enforce the same;

(c)    any action taken by the Noteholder, from time to time, to (i) renew, refinance, refund, extend, accelerate or otherwise change the time for payment of, or other terms relating to, any or all of the Obligations, increase or modify the amount of the Obligations or otherwise consent, waive, modify, amend or change the terms of the Agreement, any other Note Document or any other instrument or agreement evidencing the Obligations; (ii) accept partial payments on all or any part of the Obligations; (iii) take and hold security or collateral (either directly or indirectly) for the payment of any or all of the Obligations, or for the payment of this Guaranty, or for the payment of any other guaranties of the Obligations; (iv) substitute, exchange, enforce, waive and release any such security or collateral, or direct any other Person to do any of the foregoing; and (v) settle, release, compromise, collect or otherwise liquidate any or all of the Obligations and exchange, enforce, fail to protect, perfect or continue perfected, release or waive any security or collateral for the Obligations, in any manner, without affecting or impairing the obligations of the Guarantor hereunder, and (vi) settle, release, compromise or collect on any Guaranty;

(d)    any insolvency, bankruptcy, assignment for the benefit of creditors or other similar events or proceedings affecting the Guarantor or the Issuer, or any of their respective assets or of any other Guarantor, or any action taken by any trustee or receiver or by any court in any such proceeding, or any allegation of invalidity of this Guaranty in any such proceeding;

(e)    any release or discharge by operation of law of the Issuer, the Guarantor or of any other guarantor, or any other Person from the performance or observance of any obligation, covenant or agreement contained in the Agreement, any other Note Document, this Guaranty or any other instrument or agreement evidencing the Obligations;

(f)    any merger or consolidation of the Issuer into or with any other Person or any sale, lease or transfer of any of the assets of the Issuer to any other Person; or

(g)    any other occurrence or circumstance whatsoever, whether similar or dissimilar to the foregoing, and any other circumstances that might otherwise constitute a legal or equitable defense or discharge of the liabilities of a guarantor or surety or that might otherwise

-3-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 4

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

limit recourse against the Guarantor other than a defense of payment or the Note Discharge.

SECTION 4. Waivers, etc.   The Guarantor hereby waives any requirement of promptness, diligence, presentment, acceptance, notice of acceptance, demand of payment or performance, notice of non-performance, filing of claims with a court in the event of receivership or bankruptcy of the Issuer, protest or notice with respect to the Obligations, the benefit of any statutes of limitation, all demands whatsoever, all notices and demands that may be required by law, now or hereafter in effect, to preserve intact any rights against the Guarantor, and any other circumstance whatsoever that might otherwise constitute a legal or equitable discharge, release or defense of a guarantor or that may otherwise limit recourse against the Guarantor. The Guarantor further waives notices of any and all proceedings to collect from any other guarantor or surety of all or any part of the Obligations or any collateral or security with respect thereto, or from anyone else, and notices of exchange, sale, surrender or other handling of any collateral or security given to the Noteholder (whether directly or indirectly) to secure payment of the Obligations.

SECTION 5. Effect of Bankruptcy Proceedings, etc.   If payments and credits, if any, from the Guarantor, the Issuer or from any other Person on account of the Obligations that have been made to the Noteholder as provided herein, or any part thereof, are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to the Guarantor or any other Person under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the Obligations or part thereof that has been paid, reduced or satisfied by such amount shall be reinstated and such Obligations and this Guaranty shall continue in full force and effect as of the time immediately preceding the time such initial payment, credit, reduction or satisfaction occurred. The Guarantor agrees that, notwithstanding the foregoing and without limiting the generality of the foregoing if, after the occurrence of an Event of Default (as such term is defined in this Guaranty), the Noteholder is prevented by applicable law from exercising its right to accelerate the maturity of the Obligations, to collect interest on the Obligations or to enforce or exercise any other right or remedy with respect to the Obligations, the Guarantor shall pay to the Noteholder, upon demand therefor, the amount that otherwise would have been due and payable had such rights and remedies been permitted to be exercised by the Noteholder.

At any time when a Specified Event of Default has occurred and is continuing until the Note Discharge, the Noteholder may, in its sole discretion, without notice to the Guarantor and regardless of the acceptance of any security or collateral for the payment hereof (either directly or indirectly), appropriate and apply toward the payment of the Obligations then due and payable (i) any indebtedness due or to become due from the Noteholder to the Guarantor, and (ii) any monies, credits or other property belonging to the Guarantor, at any time held by or coming into possession of the Noteholder or any other Person.

SECTION 6. Subrogation.   Until the Note Discharge, the Guarantor (i) shall have no right of subrogation and hereby irrevocably agrees not to exercise any rights that it may have or acquire by way of subrogation under this Guaranty, by any payment made hereunder or otherwise, and any right of reimbursement, contribution, exoneration, salvage, or similar right against the Issuer therefor and (ii) agrees not to enforce any and all claims the Guarantor may

-4-

WEIL:95477720\44349.0003
3581175.v6\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 4

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

have against the Issuer for any of the Obligations.

### SECTION 7. Information; Marshalling.

(a)     The Guarantor hereby assumes responsibility for keeping itself informed of the financial condition of the Issuers and of any other guarantors or sureties of all or any part of the Obligations, and of all other circumstances bearing upon the risk of nonpayment of the Obligations or any part thereof. The Guarantor hereby agrees that the Noteholder shall have no duty to advise the Guarantor of information known to the Noteholder regarding such condition or any such circumstances. In the event the Noteholder in its sole discretion undertakes at any time or from time to time to provide any such information to the Guarantor, the Noteholder shall be under no obligation (i) to undertake any investigation not a part of its regular business routine, (ii) to disclose any information which, pursuant to accepted or reasonable commercial practices, the Noteholder wishes to maintain confidential or (iii) to make any other or future disclosures of such information or any other information to the Guarantor.

(b)     The Guarantor consents and agrees that the Noteholder shall be under no obligation to marshal any assets in favor of the Guarantor or against or in payment of any or all of the Obligations.

### SECTION 8. Representations and Warranties.

The Guarantor represents and warrants as of the date hereof:

(a)     Organization, etc.  The Guarantor is validly organized and existing and in good standing under the laws of the State of its organization, is duly qualified to do business and is in good standing in each jurisdiction where the nature of its business requires such qualification, and has full power and authority and holds all requisite governmental licenses, permits and other approvals to enter into and perform its Obligations under this Guaranty and each other Note Document to which it is a party and to own and hold under lease its property and to conduct its business substantially as currently conducted by it, except, in each case, as would not reasonably be expected to have a Material Adverse Effect.

(b)     Due Authorization, Non-Contravention, etc.  The execution, delivery and performance by the Guarantor of this Guaranty and each other Note Document executed or to be executed by it are within the Guarantor's powers, have been duly authorized by all necessary action, and do not contravene the Guarantor's certificate of incorporation, bylaws, limited partnership agreement, limited liability company agreement, operating agreement, certificate of formation, trust agreement or other organic or constitutive documents or any shareholders agreement, voting trust or similar document binding on or applicable to it; breach or contravene any provision of any loan, indenture, lease, mortgage, guaranty, security agreement or any contractual restriction, law or governmental regulation or court decree or order binding on or affecting the Guarantor; or result in, or require the creation or imposition of, any lien on any of the Guarantor's properties, except, in each case, as would not reasonably be expected to have a Material Adverse Effect.

WEIL:\96477726\7\44349.0003
3581175-v6\