FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 4

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

(c)     Government Approval, Regulation, etc.  No authorization, registration or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body or other Person is required for the due execution, delivery or performance by the Guarantor of this Guaranty or any other Loan Document to which it is a party except for those with respect to which the failure to obtain or make would not reasonably be expected to have a Material Adverse Effect. The Guarantor is not an "investment company" within the meaning of the Investment Company Act of 1940, as amended, or a "holding company", or a "subsidiary company" of a "holding company", or an "affiliate" of a "holding company" or of a "subsidiary company" of a "holding company", within the meaning of the Public Utility Holding Company Act of 1935, as amended.

(d)     Validity.  This Guaranty constitutes, and each other Note Document executed by the Guarantor will, on the due execution and delivery thereof, constitute, the legal, valid and binding obligations of the Guarantor enforceable in accordance with their respective terms.

(e)     Litigation.   There are no actions, suits or proceedings (including governmental or administrative proceedings), investigations, third-party subpoenas or inquiries by any regulatory agency, body or other governmental authority, to which the Guarantor is a party or is subject, or to which any of their authorizations, consents and approvals or other properties or assets, is subject, which is pending, or, to the best knowledge of the Guarantor, threatened or contemplated against the Guarantor, or any of such property or assets, that, individually or in the aggregate, would reasonably be expected to have a Material Adverse Effect. The Guarantor is not subject to any actions, suits or proceedings (including governmental or administrative proceedings), investigation, third-party subpoenas or inquiries by any regulatory agency, body or other governmental authority or any third Person regarding its accounting practices or policies.

(f)     Taxes.  The Guarantor has (i) filed all necessary income, franchise and other material tax returns, domestic and foreign, (ii) paid all taxes shown as due thereunder to the extent such taxes would be overdue if not so paid as of the date hereof and (iii) withheld and paid to the appropriate tax authorities all amounts required to be withheld from wages, salaries and other remuneration to employees to the extent such payments are required to be made as of the date hereof, except, in the case of the foregoing (i), (ii) and (iii), to the extent the failure to making such filing, withholding or payment would not reasonably be expect to have a Material Adverse Effect. The Guarantor has no knowledge, nor has it received notice, of any tax deficiency which would reasonably be expected to be assessed against the Guarantor which, if so assessed, would reasonably be expected to have a Material Adverse Effect.

SECTION 9.  Rights are Cumulative; No Waiver.  The rights and remedies of the Noteholder under this Guaranty are cumulative and not exclusive of any rights or remedies that the Noteholder would otherwise have under the Agreement, any other Note Document (including, without limitation, under any Guaranty) or any other instrument or agreement evidencing the Obligations. No failure or delay on the part of the Noteholder in the exercise of any right, power, privilege or remedy arising under this Guaranty, the Agreement, any other Note Document or any other instrument or agreement evidencing the Obligations shall operate as a waiver thereof,

-5-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM    INDEX NO. 650026/2018
NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 01/03/2018

and no single or partial exercise by the Noteholder of any such right, power, privilege or remedy shall preclude any further exercise thereof.

SECTION 10. <u>Amendment</u>. No amendment, modification or waiver of, or consent with respect to, any provision of this Guaranty shall in any event be effective unless the same shall be in writing and signed and delivered by the Guarantor and the Noteholder, and then any such amendment, modification, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

SECTION 11. <u>Term of Agreement</u>. The Guarantor agrees that this Guaranty and all agreements of the Guarantor contained herein shall continue in full force and effect and may not be discharged, terminated or otherwise revoked until the Note Discharge, at which time this Guaranty shall automatically terminate without further action by the Guarantor, subject to the terms and provisions of <u>Section 5</u> hereof.

SECTION 12. <u>Successors and Assigns</u>. This Guaranty shall be binding upon the Guarantor and upon the successors and permitted assigns of the Guarantor and shall inure to the benefit of and be enforceable by the Noteholder and its successors and assigns. The Noteholder may assign or otherwise transfer its rights under this Guaranty to any assignee of the Note in connection with an assignment thereof made in accordance with the terms of the Agreement.

SECTION 13. <u>Governing Law; Jury Trial; Severability</u>. This Guaranty shall be a contract made under and governed by the laws of the State of New York. Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING (i) TO ENFORCE OR DEFEND ANY RIGHTS UNDER OR IN CONNECTION WITH THIS GUARANTY OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR (ii) ARISING FROM ANY DISPUTE OR CONTROVERSY IN CONNECTION WITH OR RELATED TO THIS GUARANTY OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT, AND AGREES THAT ANY SUCH ACTION OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

EACH OF THE PARTIES HERETO IRREVOCABLY AGREES THAT ANY ACTION OR PROCEEDING IN ANY WAY, MANNER OR RESPECT ARISING OUT OF THIS GUARANTY OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR ARISING FROM ANY DISPUTE OR CONTROVERSY ARISING IN CONNECTION WITH OR RELATED TO THIS GUARANTY OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT SHALL BE LITIGATED

WEIL:\95477726\7\44348.0003
3581175-v6\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 4

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

IN THE COURTS HAVING SITUS WITHIN THE CITY OF NEW YORK, THE STATE OF NEW YORK, AND EACH OF THE PARTIES HERETO HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN SUCH CITY AND STATE. EACH OF THE PARTIES HERETO HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT IN ACCORDANCE WITH THIS SECTION 14.

SECTION 14. Entire Agreement. This Guaranty and the other Note Documents constitute the entire agreement of the Guarantor with respect to the subject matter hereof and supersedes all prior negotiations, agreements, discussions, correspondence, memoranda and understandings (whether written or oral) of the Guarantor and the Noteholder concerning or relating to the subject matter of this Guaranty.

SECTION 15. Payments. Any and all amounts required to be paid by the Guarantor hereunder shall be paid in the lawful currency of the United States of America ("USD") in immediately available funds, subject to deduction for withholdings as set forth in Article VII of the Agreement.

SECTION 16. Notices. All notices and other communications provided to any party hereto under this Guaranty shall be in writing, Telex or by facsimile and addressed, delivered or transmitted to such party at its address, Telex or facsimile number set forth beneath the signature below or at such other address, Telex or facsimile number as may be designated by such party in a notice to the other parties. Any notice, if mailed and properly addressed with postage prepaid or if properly addressed and sent by pre-paid courier service, shall be deemed given when received; any notice, if transmitted by Telex or facsimile, shall be deemed given when transmitted (answerback confirmation in the case of Telexes).

SECTION 17. Captions and References. The recitals to this Guaranty (except for definitions) and the section captions used in this Guaranty are for convenience only, and shall not affect the construction of this Guaranty.

[SIGNATURE PAGES TO FOLLOW]

WEIL:\96477728\V14\4349.0003
3581175-v6\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM    INDEX NO. 650026/2018
NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 01/03/2018

IN WITNESS WHEREOF, this Guaranty has been duly executed as of the day and year first above written.

ST HOLDINGS LLC

By: _____

Its: _____

Address:    c/o Exceptional Innovation
480 Olde Worthington Road, Suite 350
Westerville, OH 43082
USA

Facsimile No.: +1 (614) 890-6091

Attention: Seale A. Moorer, Jr.

with a copy to (which shall not constitute notice):

Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065 USA
Attention: Gabriel Gregson
Facsimile: 1 (650) 802-3100

NTT DOCOMO, INC.

Sanno Park Tower 41st F
2-11-1 Nagata-cho, Chiyoda-ku
Tokyo 100-6150 Japan
Attention: Managing Director of the
Global Business Division
Facsimile: +81 3 5156 0203

*Signature Page to ST Holdings Guaranty*

WEIL:\96477726\7\44348.0003
3581175-v6\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 5

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

# EXHIBIT D

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 5

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

EXECUTION VERSION

## MEMBERSHIP INTEREST PLEDGE AGREEMENT

MEMBERSHIP INTEREST PLEDGE AGREEMENT, dated as of September 29, 2015, made by INTERTOUCH TOPCO LLC, a Delaware limited liability company (the "Pledgor") in favor of NTT DOCOMO INC., a corporation organized under the laws of Japan (together with its successors and assigns, the "Secured Party").

### RECITALS:

WHEREAS, the Noteholder has accepted and holds that certain Promissory Note issued by the Issuer (as hereinafter defined) dated September 29, 2015 in an original principal amount of $55,000,000 (the "Note");

WHEREAS, the Guarantor receives direct and indirect benefits by reason of the Noteholder's accepting and holding the Note;

WHEREAS, the Pledgor receives direct and indirect benefit from the extension of credit effectuated pursuant to the Note Purchase Agreement, and by virtue of such benefit shall, in its capacity as Guarantor thereunder, extend the guaranties, promises and undertakings set forth in that certain Guaranty of even date herewith in favor of the Secured Party (the "Guaranty");

WHEREAS, the Pledgor is the legal and beneficial owner of the shares of Pledged Stock (as hereinafter defined) issued by the Issuer (as hereinafter defined); and

WHEREAS, it is a condition precedent to the execution of the Note Purchase Agreement that the Pledgor shall have executed and delivered this Membership Interest Pledge Agreement to the Secured Party.

NOW, THEREFORE, in consideration of the premises and to induce the Secured Party to enter into the Note Purchase Agreement, the Pledgor hereby agrees with the Secured Party as follows:

SECTION 1. DEFINED TERMS. Unless otherwise defined herein, terms defined in the Guaranty and used herein shall have the meanings given to them in the Guaranty. The following terms shall have the following meanings:

"Agreement" shall mean this Membership Interest Pledge Agreement, as the same may be amended, modified or otherwise supplemented from time to time.

"Code" shall mean the Uniform Commercial Code from time to time in effect in New York.

"Collateral" shall mean the Pledged Stock, together with all Proceeds thereof.

"Issuer" shall mean interTouch Holdings LLC, a Delaware limited liability company.

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 5

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

"Note Purchase Agreement" shall mean the Note Purchase Agreement, of even date herewith, by and between the Noteholder and interTouch Holdings LLC, a Delaware limited liability company, as the same may be amended, extended, modified, substituted, exchanged or replaced from time to time.

"Obligations" shall mean:

  (a)  All "Obligations" as defined in the Guaranty; and

  (b)  Any and all liabilities of the Pledgor incurred under this Agreement.

"Pledged Stock" shall mean the membership interest units of the Issuer owned by Pledgor, as such amount may be adjusted from time to time by the Issuer, pursuant to splits, together with all certificates, options, or rights of any nature whatsoever that may be issued or granted in such membership interest units by the Issuer to the Pledgor while this Agreement is in effect.

"Proceeds" shall mean all "proceeds" as such term is defined in the Code on the date hereof and, in any event, shall include, without limitation, all dividends, cash, securities, instruments, warrants, options, splits and other property or income from the Pledged Stock, collections thereon or distributions with respect thereto.

"Securities Act" shall mean the Securities Act of 1933, as amended.

"Specified Event of Default" shall mean either (a) the Note has been declared due and payable upon an Event of Default pursuant to Section 6.2 of the NPA or (b) an Event of Default has occurred and is continuing due to a default in payment of principal of the Note upon the Maturity Date.

The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and section and paragraph references are to this Agreement unless otherwise specified. The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.

SECTION 2.  PLEDGE; GRANT OF SECURITY INTEREST.  The Pledgor hereby grants to the Secured Party a first priority (subject to Permitted Liens) security interest in all of Pledgor's right, title and interest in and to the Collateral, as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the Obligations.

SECTION 3.  REPRESENTATIONS AND WARRANTIES.  The Pledgor represents and warrants, as of the date hereof, that:

  (a) The Pledged Stock.  The Pledgor is the legal and beneficial owner of the Pledged Stock.  The Pledged Stock has been duly authorized and is validly issued, fully paid and non-assessable.  There are no existing options, warrants, calls, commitments or other agreements

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 5

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

of any character relating to the Pledged Stock except for the pledge and security interest to be created by this Agreement.

(b) Owner of Membership Interest Units. The Pledgor is the legal and beneficial owner of the Pledged Stock free and clear of any security interest, lien, pledge, set-off right, charge, claim or encumbrance of any kind except for (i) the pledge and security interest created in favor of the Secured Party and (ii) any Permitted Liens.

(c) Restricted Securities.    The Pledge Stock does not constitute "restricted securities" as defined in Rule 144(a) under the Securities Act and that the Pledged Stock may be sold, transferred, pledged and otherwise disposed of without requiring registration under the Securities Act and all applicable state securities laws.

(d) Power to Pledge. The Pledgor has full power, authority and legal right to sell the Pledged Collateral and to pledge and grant the security interest in the Pledged Collateral in the manner and on the terms contemplated in this Agreement.

(e) Validity of Agreement. This Agreement has been duly executed and delivered by the Pledgor and constitutes the legal, valid and binding obligation of the Pledgor enforceable in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, or other similar laws affecting the rights of creditors generally or by the application of general equity principles.

(f) Governmental and Creditor Approval. No consent, authorization, or approval of, or other action by, and no notice to or filing with any Person (including, without limitation, creditors of the Pledgor and any governmental authority) is required either (i) for the pledge by the Pledgor of the Pledged Stock or the creation of the security interest pursuant to this Agreement or for the execution, delivery or performance of this Agreement by the Pledgor or (ii) for the exercise by the Secured Party of the rights or remedies provided for in this Agreement in respect of the Pledged Stock pursuant to this Agreement, except as may be required by Section 6 or in connection with the disposition of the Pledged Stock by laws affecting the offering and sale of securities generally.

(g)    First Priority Security Interest. Upon the execution and delivery of this Agreement, the pledge of the Pledged Stock in accordance with the terms of this Agreement shall create a valid and perfected first priority (subject to Permitted Liens that have priority by operation of law) security interest in the Pledged Stock, securing payment and satisfaction of the Obligations.

SECTION 4. COVENANTS. The Pledgor covenants and agrees with the Secured Party that, from and after the date of this Agreement and until this Agreement is terminated and the security interests created hereby are released:

(a)    The Pledgor has delivered to the Secured Party a true, complete and genuine certificate for its ownership interest in the Pledged Stock, which represents 100% of the issued and outstanding equity of the Issuer and such certificate has been accompanied by a membership interest power signed in blank by the Pledgor. If the Pledgor shall, as a result of its ownership of the Pledged Stock, become entitled to receive or shall receive any stock certificate

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 5

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

(including, without limitation, any certificate representing a dividend or a distribution owing on account of any portion of the Pledged Stock in connection with any reclassification, increase or reduction of capital or any certificate issued in connection with any reorganization), whether in addition to, in substitution of, as a conversion of, or in exchange for any membership interest units comprising the Pledged Stock, or otherwise in respect thereof, the Pledgor shall accept the same as the agent of the Secured Party, hold the same in trust for the Secured Party and deliver the same forthwith to the Secured Party in the exact form received, together with an undated membership interest power covering such certificate duly executed in blank by the Pledgor, to be held by the Secured Party, subject to the terms hereof, as additional collateral security for the Obligations. Any sums paid upon or in respect of the Pledged Stock upon the liquidation or dissolution of the Issuer shall be paid over to the Secured Party to be held by it hereunder as additional collateral security for the Obligations, and in case any distribution of capital shall be made on or in respect of the Pledged Stock or any property shall be distributed upon or with respect to the Pledged Stock pursuant to the reorganization thereof, the property so distributed shall be delivered to the Secured Party to be held by it hereunder as additional collateral security for the Obligations. If any sums of money or property so paid or distributed in respect of the Pledged Stock shall be received by the Pledgor, the Pledgor shall, until such money or property is paid or delivered to the Secured Party, hold such money or property in trust for the Secured Party, segregated from other funds of the Pledgor, as additional collateral security for the Obligations.

(b)    Without the prior written consent of the Secured Party, the Pledgor shall not (1) sell, assign, transfer, exchange, or otherwise dispose of, or grant any option with respect to, the Collateral, (2) create, incur or permit to exist any Lien or option in favor of, or any claim of any Person with respect to, any of the Collateral, or any interest therein, except for Permitted Liens and for the Lien in favor of the Secured Party or (3) enter into any agreement or undertaking restricting the right or ability of the Pledgor or the Secured Party to sell, assign or transfer any of the Collateral.

(c)    The Pledgor shall maintain the security interest created by this Agreement as a first-priority (subject to Permitted Liens), perfected security interest and shall use commercially reasonable efforts defend such security interest against claims and demands of all Persons whomsoever. At any time and from time to time, upon the written request of the Secured Party, and at the sole expense of the Pledgor, the Pledgor will promptly and duly execute and deliver such further instruments and documents and take such further actions as the Secured Party may reasonably request for the purposes of obtaining or preserving the full benefits of this Agreement and of the rights and powers herein granted. If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any promissory note, other instrument or chattel paper, such note, instrument or chattel paper shall, to the extent necessary for the Secured Party to perfect its security interest in Proceeds of the Collateral, be immediately delivered to the Secured Party, duly endorsed in a manner satisfactory to the Secured Party, to be held as Collateral pursuant to this Agreement.

(d)    The Pledgor shall pay, and save the Secured Party harmless from, any and all liabilities with respect to, or resulting from any delay in paying, any and all stamp, excise, sales or other taxes which may be payable or determined to be payable with respect to any of the Collateral or in connection with any of the transactions contemplated by this Agreement.

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 5

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

(e)     The Pledged Stock is and shall continue to be free and clear of any security interest, lien, pledge, set-off right, charge, claim or encumbrance of any kind except for the Lien in favor of Secured Party and Permitted Liens imposed as a matter of law.

SECTION 5.   CASH DIVIDENDS; VOTING RIGHTS.   Unless a Specified Event of Default shall have occurred and be continuing and the Secured Party shall have given five (5) days written notice to the Pledgor of the Secured Party's intent to exercise its rights pursuant to Section 6 below, the Pledgor shall be permitted to receive all cash dividends paid in the normal course of business of the Issuer and consistent with past practice, to the extent permitted under the Note Documents, in respect of the Pledged Stock and to exercise all voting and corporate rights with respect to the Pledged Stock; provided, however, that no vote shall be cast or corporate right exercised or other action taken in violation of any Note Document.

SECTION 6.   RIGHTS OF THE SECURED PARTY.

(a)     All Proceeds included in the Collateral received by the Secured Party hereunder shall be held by the Secured Party for its benefit.

(b)     If a Specified Event of Default shall occur and be continuing and the Secured Party shall have given five (5) days prior written notice of its intent to exercise such rights to the Pledgor, (1) the Secured Party shall have the right to receive any and all cash dividends paid in respect of the Pledged Stock and make application thereof to the Obligations in such order as the Secured Party may determine, and (2) all membership interest units comprising the Pledged Stock shall be registered in the name of the Secured Party or its nominee, and the Secured Party or its nominee may thereafter exercise (A) all voting, corporate and other rights pertaining to such membership interest units of the Pledged Stock at any meeting of the members or managers, as applicable, of the Issuer or otherwise and (B) any and all rights of conversion, exchange, subscription and any other rights, privileges or options pertaining to such membership interest units of the Pledged Stock as if it were the absolute owner thereof (including, without limitation, the right to exchange at its discretion any and all of the Pledged Stock upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the organizational structure of the Issuer, or upon the exercise by the Pledgor or the Secured Party of any right, privilege or option pertaining to such membership interest units of the Pledged Stock, and in connection therewith, the right to deposit and deliver any and all of the Pledged Stock with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as the Secured Party may reasonably determine), all without liability except to account for property actually received by it, but the Secured Party shall have no duty to the Pledgor to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing.

SECTION 7.   REMEDIES.

(a)     If a Specified Event of Default shall have occurred and be continuing, at any time at the Secured Party's election and upon notice to the Pledgor pursuant to Section 6, the Secured Party may apply all or any part of Proceeds of the Collateral in payment of the Obligations in such order as the Secured Party may elect.

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 5

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

(b)    If a Specified Event of Default shall have occurred and be continuing, the Secured Party, may, upon five (5) days prior written notice to the Pledgor, exercise, in addition to all other rights and remedies granted in this Agreement and in any other instrument or agreement securing, evidencing or relating to the Obligations, all rights and remedies of a secured party under the Code. Without limiting the generality of the foregoing, the Secured Party, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law referred to below or otherwise required by this Agreement) to or upon the Pledgor or any other Person (all and each of which demands, defenses, advertisements and notices are hereby waived), may in such circumstances forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, assign, give option or options to purchase or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale, in the over-the-counter market, at any exchange, broker's board or office of the Secured Party or elsewhere upon such terms and conditions as it may deem advisable and at such prices as it may deem best, for cash or on credit or for future delivery without assumption of any credit risk. The Secured Party shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption in the Pledgor, which right or equity is hereby waived or released. The Secured Party shall apply any Proceeds included in the Collateral from time to time held by it and the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale, after deducting all reasonable and documented costs and expenses incurred in respect thereof or incidental to the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of the Secured Party hereunder, including, without limitation, reasonable and documented out-of-pocket attorneys' fees and disbursements of counsel, to the payment in whole or in part of the Obligations, in such order as the Secured Party may elect, and only after such application and after the payment by the Secured Party of any other amount required by any provision of law, need the Secured Party account for the surplus, if any, to the Pledgor. To the extent permitted by applicable law, the Pledgor waives all claims, damages and demands it may acquire against the Secured Party arising out of the exercise by them of any rights hereunder. If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least ten (10) days before such sale or other disposition. The Pledgor shall remain liable for any deficiency if the proceeds of any sale or other disposition of Collateral are insufficient to pay the Obligations and the fees and disbursements of any attorneys employed by the Secured Party to collect such deficiency.

SECTION 8.   PRIVATE SALES.

(a)    The Pledgor recognizes that the Secured Party may be unable to effect a public sale of any or all the Pledged Stock, by reason of certain prohibitions contained in the Securities Act and applicable state securities laws or otherwise, and may be compelled to resort to one or more private sales thereof to a restricted group of purchasers which will be obliged to agree, among other things, to acquire such securities for their own account for investment and not with a view to the distribution or resale thereof. The Pledgor acknowledges and agrees that any such private sale may result in prices and other terms less favorable than if same were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall be deemed to have been made in a commercially reasonable manner. The Secured Party shall be

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 5

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

under no obligation to delay a sale of any of the Pledged Stock for the period of time necessary to permit the Issuer thereof to register such securities for public sale under the Securities Act, or under applicable state securities laws, even if the Issuer would agree to do so.

(b)    The Pledgor further agrees to use its best efforts to do or cause to be done all such other acts as may be necessary to make such sale or sales of all or any portion of the Pledged Stock pursuant to this Section valid and binding and in compliance with any and all applicable law.  The Pledgor further agrees that a breach of any of the covenants contained in this Section will cause irreparable injury to the Secured Party, that the Secured Party have no adequate remedy at law in respect of such breach and, as a consequence, that each and every covenant contained in this Section shall be specifically enforceable against the Pledgor, and the Pledgor hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants except for a defense of payment or that no Specified Event of Default has occurred or that the Note Discharge has occurred.

SECTION 9.   IRREVOCABLE AUTHORIZATION AND INSTRUCTION TO ISSUER.  The Pledgor hereby authorizes and instructs the Issuer to comply with any instruction received by it from the Secured Party in writing that (a) states that a Specified Event of Default has occurred and (b) is otherwise in accordance with the terms of this Agreement, without any other or further instructions from the Pledgor, and the Pledgor agrees that the Issuer shall be fully protected in so complying.

SECTION 10. SECURED  PARTY'S  APPOINTMENT  AS  ATTORNEY-IN-FACT.   The Pledgor hereby irrevocably constitutes and appoints the Secured Party and any officer or agent of the Secured Party, upon the occurrence and during the continuation of a Specified Event of Default, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of the Pledgor and in the name of the Pledgor or in the Secured Party's own name, from time to time in the Secured Party's discretion, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Agreement.  This power being coupled with an interest is irrevocable.

SECTION 11. DUTY OF SECURED PARTY.  The Secured Party's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession shall be to deal with it in the same manner as the Secured Party deals with similar securities and property for its own account, except that the Secured Party shall have no obligation to invest funds held by it. Neither the Secured Party, nor any of its respective directors, officers, employees or agents shall be liable for failure to demand, collect or realize upon any of the Collateral or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of the Pledgor or any other Person or to take any other action whatsoever with regard to the Collateral or any part thereof.

SECTION 12. EXECUTION OF FINANCING STATEMENTS.  The Pledgor authorizes the Secured Party to file financing statements with respect to the Collateral without the signature of the Pledgor in such form and in such filing offices as the Secured Party reasonably determines appropriate to perfect the security interests of the Secured Party under this Agreement.

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 5

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

SECTION 13. AUTHORITY OF SECURED PARTY. The Pledgor acknowledges that the rights and responsibilities of the Secured Party under this Agreement with respect to any action taken by the Secured Party or the exercise or non-exercise by the Secured Party of any option, voting right, request, judgment or other right or remedy provided for herein or resulting or arising out of this Agreement shall, as between the Pledgor and the Secured Party, be governed by the Guaranty and by such other agreements with respect thereto as may exist from time to time among them.

SECTION 14. NOTICES. All notices, requests and other communications to any party hereto shall be given to such party, at the address set forth on the signature page hereof, in the manner specified in Section 10.4 of the Note Purchase Agreement, or such other address or as such party may hereafter specify for the purpose of notice to the other party.

SECTION 15. SEVERABILITY. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

SECTION 16. AMENDMENTS IN WRITING; NO WAIVER; CUMULATIVE REMEDIES.

(a)     None of the terms or provisions of this Agreement may be waived, amended, supplemented or otherwise modified except by a written instrument executed by the Pledgor and the Secured Party.

(b)     Secured Party shall not by any act (except by a written instrument pursuant to paragraph (a) hereof), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Default or Event of Default or in any breach of any of the terms and conditions hereof. No failure to exercise, nor any delay in exercising, on the part of the Secured Party, any right, power or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. A waiver by the Secured Party of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which the Secured Party would otherwise have on any future occasion.

(c)     The rights and remedies herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any other rights or remedies provided by law.

SECTION 17. SECTION HEADINGS. This Agreement shall be binding upon the successors and assigns of the Pledgor and shall inure to the benefit of the Secured Party and its successors and permitted assigns. The Secured Party may not assign or otherwise transfer any of its rights under this Agreement to any other person or entity without the prior written consent of the Pledgor.

SECTION 18. SUCCESSORS AND ASSIGNS. This Agreement shall be binding upon the successors and assigns of the Pledgor and shall inure to the benefit of the Secured Party and its successors and assigns. The Secured Party may assign or otherwise transfer its rights under this

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 5

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

Agreement to any assignee of the Note in connection with an assignment thereof made in accordance with the terms of the Note Purchase Agreement.

SECTION 19. GOVERNING LAW; JURISDICTION; JURY TRIAL.

(a)  THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS (BUT OTHERWISE WITHOUT REGARD TO THE CONFLICT OF LAWS PROVISIONS) OF THE STATE OF NEW YORK (EXCEPT TO THE EXTENT THAT THE UCC PROVIDES FOR THE APPLICATION OF LAWS OF ANOTHER STATE).

(b)  EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF ANY UNITED STATES FEDERAL OR NEW YORK STATE COURT SITTING IN NEW YORK, NEW YORK IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT AND EACH PARTY HERETO HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN ANY SUCH COURT AND IRREVOCABLY WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE AS TO THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN SUCH A COURT OR THAT SUCH COURT IS AN INCONVENIENT FORUM. NOTHING HEREIN SHALL LIMIT THE RIGHT OF THE SECURED PARTY, TO BRING PROCEEDINGS AGAINST THE PLEDGOR IN THE COURTS OF ANY OTHER JURISDICTION WHERE THE COLLATERAL IS LOCATED TO THE EXTENT NECESSARY TO EXERCISE ITS REMEDIES HEREUNDER IN RESPECT THEREOF. ANY JUDICIAL PROCEEDING BY ANY PARTY HERETO AGAINST ANY OTHER PARTY HERETO OR ANY OF THEIR RESPECTIVE AFFILIATES INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH THIS AGREEMENT SHALL BE BROUGHT ONLY IN A COURT IN NEW YORK, NEW YORK.

(c)  THE PLEDGOR AND THE SECURED PARTY HEREBY WAIVE TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER (WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE) IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH THIS AGREEMENT OR THE RELATIONSHIP ESTABLISHED HEREUNDER.

[The rest of this page is intentionally left blank.]

3581645-v6\
WEIL:\95477738\714434B.0003

9

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 5

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed and delivered as of the date first above written.

Secured Party:

NTT DOCOMO INC.

By: KOICHI TAKAHARA
Its: MANAGING DIRECTOR

Notice Address:
Sanno Park Tower 41st F
2-11-1 Nagata-cho, Chiyoda-ku
Tokyo 100-6150 Japan
Attention: Managing Director of the Global Business Division
Facsimile: +81 3 5156 0203

Pledgor:

INTERTOUCH TOPCO LLC

By: Seale Moorer
Its: CEO

Notice Address:
c/o Exceptional Innovation
480 Olde Worthington Road, Suite 350
Westerville, OH 43082 USA
Attention: Seale Moorer
Facsimile: 1 (614) 890-6091

with a copy to (which shall not constitute notice):

Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065 USA
Attention: Gabriel Gregson
Facsimile: 1 (650) 802-3100

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 6

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

# EXHIBIT E

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 6

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

**STATE OF FLORIDA UNIFORM COMMERICAL CODE FINANCING STATEMENT FORM**

**Florida Secured Transaction Registry**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
CREIGHTON MELAND; 3128618000
Email CREIGHTON.MELAND@BAKERMCKENZIE.COM

B. SEND ACKNOWLEDGEMENT TO:
Name BAKER & MCKENZIE LLP
Address 300 EAST RANDOLPH DRIVE
Address SUITE 5000
City/State/Zip CHICAGO, IL 60601

# FILED

2015 Sep 30 05:55 PM

****** 201505180072 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| ST HOLDINGS LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS Line One | | | |
| 480 WORTHINGTON ROAD, | | This space not available. | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| SUITE 350 | WESTERVILLE | OH | 43082 | US |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS Line One | | | |
| | | This space not available. | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME OF TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| NTT DOCOMO, INC. | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS Line One | | | |
| 2-11-1, NAGATA-CHO, CHIYODA-KU | | This space not available. | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| | TOKYO, JAPAN | | 100-6150 | |

**4. This FINANCING STATEMENT covers the following collateral:**

All of the membership interest units of interTouch Topco, LLC, a Delaware limited liability company, now owned or hereinafter acquired by the Debtor, and all of the Proceeds (as such term is defined in the Uniform Commercial Code) thereof, including, without limitation, all dividends, cash, securities, instruments, warrants, options, splits and other property or income from any such membership interest units, collections thereon or distributions with respect thereto.

**5. ALTERNATE DESIGNATION (If applicable)**
☐ LESSEE/LESSOR    ☐ CONSIGNEE/CONSIGNOR    ☐ BAILEE/BAILOR
☐ AG LIEN    ☐ NON-UCC FILING    ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX
☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☑ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**    Florida Department of State

STANDARD FORM - FORM UCC-1 (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 7

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

# EXHIBIT F

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 7

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

EXECUTION VERSION

# GUARANTY

by

### INTERTOUCH TOPCO LLC,
as Guarantor,

in favor of

### NTT DOCOMO, INC.,
as Noteholder,

dated as of

September 29, 2015

WEIL:\95477725\3\44349.0003
35811177.y3\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM   INDEX NO. 650026/2018
NYSCEF DOC. NO. 7                                    RECEIVED NYSCEF: 01/03/2018

## GUARANTY

This GUARANTY, dated as of September 29, 2015 (as the same may be amended, supplemented or otherwise modified from time to time, the "Guaranty") is made by INTERTOUCH TOPCO LLC, a limited liability company organized and existing under the laws of Delaware (the "Guarantor"), in favor of NTT DOCOMO, INC., a company organized and existing under the laws of Japan (the "Noteholder").

## RECITALS:

WHEREAS, the Noteholder has accepted and holds that certain Promissory Note issued by the Issuer (as hereinafter defined) dated September 29, 2015 in an original principal amount of $55,000,000 (the "Note");

WHEREAS, the Guarantor receives direct and indirect benefits by reason of the Noteholder's accepting and holding the Note;

NOW THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Guarantor hereby guarantees, promises and undertakes as follows:

SECTION 1. **Definitions**. The following terms used in this Guaranty shall have the following meanings (such meanings to be applicable, except to the extent otherwise indicated in a definition of a particular term, both to the singular and the plural forms of the terms defined):

"Agreement" shall mean the Note Purchase Agreement, of even date herewith, by and between the Noteholder and interTouch Holdings LLC, a company organized and existing under the laws of the State of Delaware (the "Issuer"), as the same may be amended, extended, modified, substituted, exchanged or replaced from time to time.

"Issuer" has the meaning set forth in the definition of Agreement.

"Note Documents" has the meaning set forth in the Agreement.

"Obligations" shall have the meaning ascribed to such term in Section 2 hereof.

"Person" has the meaning set forth in the Agreement.

"Specified Event of Default" shall mean either (a) the Note has been declared due and payable upon an Event of Default pursuant to Section 6.2 of the NPA or (b) an Event of Default has occurred and is continuing due to the Issuer's default in payment of principal of the Note upon the Maturity Date.

"Taxes" shall have the meaning ascribed to such term in Section 16 hereof.

-1-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 7

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

(b) Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Agreement.

SECTION 2. Guaranty. The Guarantor unconditionally, absolutely and irrevocably guarantees to pay to the Noteholder, on demand, any and all present or future indebtedness, and to perform any and all present or future liabilities or obligations, of the Issuer of every kind or nature, howsoever evidenced, owing to the Noteholder, whether direct or indirect, primary or secondary, absolute or contingent, liquidated or unliquidated, matured or unmatured, arising out of or in connection with or with respect to the Agreement, any other Note Document, or any other instrument or agreement from time to time between the Issuer and the Noteholder, as any of the foregoing may be amended, modified or otherwise supplemented from time to time (all of the foregoing referred to as the "Obligations"), together with any and all reasonable and documented costs and expenses (including, without limitation, reasonable and documented out-of-pocket attorneys' fees and disbursements) incurred by the Noteholder in preserving, protecting or defending the enforceability of, or enforcing, this Guaranty or the Noteholder's rights hereunder. This Guaranty is a guaranty of payment and not of collectibility.

If for any reason whatsoever the Issuer shall fail or be unable duly, punctually and fully to pay or perform the Obligations or any part thereof as and when the same shall become payable or performable in accordance with the terms of the Agreement or otherwise, (i) the Noteholder may proceed directly and at once, without notice, against the Guarantor to obtain performance of and to collect and recover the full amount, or any portion, of the Obligations that are due and payable at or during such time without (a) first proceeding against the Issuer or any other Person, or (b) proceeding against any other security or collateral for the Obligations (including, without limitation, proceeding under any Guaranty), and (ii) the Guarantor shall pay or cause to be paid to the Noteholder, on demand, the full amount of the Obligations pursuant to the terms of the Agreement or otherwise that are due and payable at or during such time. All such payments by the Guarantor to the Noteholder shall be made without set-off or counterclaim, and the Guarantor hereby waives all set-offs and counterclaims.

Notwithstanding the foregoing, in any action or proceeding involving any state corporate law or any state or Federal bankruptcy, insolvency, reorganization, fraudulent conveyance, or other law affecting the rights of creditors generally, if the obligations of the Guarantor would otherwise be held or determined to be void, invalid or unenforceable on account of the amount of its liability hereunder, then notwithstanding any other provision hereof to the contrary, the amount of such liability shall, without any further action by the Guarantor or any other person, be automatically limited and reduced to the highest amount which is valid and enforceable as determined in such action or proceeding. Guarantor agrees that the Obligations may at any time and from time to time exceed Guarantor's maximum liability without impairing this Guaranty or affecting the Noteholder's rights and remedies hereunder.

Notwithstanding the foregoing or any other provision of any Loan Document, the Noteholder shall be permitted to seek recovery from the Guarantor under this Guaranty only after five (5) days prior written notice and only to the extent that a Specified Event of Default has occurred and is continuing.

WEIL:\96477725\3\14349.0003
3581177-v3\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM    INDEX NO. 650026/2018

NYSCEF DOC. NO. 7                                                    RECEIVED NYSCEF: 01/03/2018

SECTION 3. **Obligations Unconditional.** The Guarantor hereby agrees that its obligations under this Guaranty shall be unconditional and binding upon it irrespective of:

(a)    the validity or enforceability, avoidance or subordination of the Obligations or the Agreement, any other Note Document or any other instrument or agreement evidencing the Obligations;

(b)    the absence of any attempt to collect the Obligations from or proceed against the Issuer or any other Guarantor any collateral security, or other action to enforce the same;

(c)    any action taken by the Noteholder, from time to time, to (i) renew, refinance, refund, extend, accelerate or otherwise change the time for payment of, or other terms relating to, any or all of the Obligations, increase or modify the amount of the Obligations or otherwise consent, waive, modify, amend or change the terms of the Agreement, any other Note Document or any other instrument or agreement evidencing the Obligations; (ii) accept partial payments on all or any part of the Obligations; (iii) take and hold security or collateral (either directly or indirectly) for the payment of any or all of the Obligations, or for the payment of this Guaranty, or for the payment of any other guaranties of the Obligations; (iv) substitute, exchange, enforce, waive and release any such security or collateral, or direct any other Person to do any of the foregoing; and (v) settle, release, compromise, collect or otherwise liquidate any or all of the Obligations and exchange, enforce, fail to protect, perfect or continue perfected, release or waive any security or collateral for the Obligations, in any manner, without affecting or impairing the obligations of the Guarantor hereunder; and (vi) settle, release, compromise or collect on any Guaranty;

(d)    any insolvency, bankruptcy, assignment for the benefit of creditors or other similar events or proceedings affecting the Guarantor or the Issuer, or any of their respective assets or of any other Guarantor, or any action taken by any trustee or receiver or by any court in any such proceeding, or any allegation of invalidity of this Guaranty in any such proceeding;

(e)    any release or discharge by operation of law of the Issuer, the Guarantor or of any other guarantor, or any other Person from the performance or observance of any obligation, covenant or agreement contained in the Agreement, any other Note Document, this Guaranty or any other instrument or agreement evidencing the Obligations;

(f)    any merger or consolidation of the Issuer into or with any other Person or any sale, lease or transfer of any of the assets of the Issuer to any other Person; or

(g)    any other occurrence or circumstance whatsoever, whether similar or dissimilar to the foregoing, and any other circumstances that might otherwise constitute a legal or equitable defense or discharge of the liabilities of a guarantor or surety or that might otherwise limit recourse against the Guarantor other than a defense of payment or the Note Discharge.

SECTION 4. **Waivers, etc.** The Guarantor hereby waives any requirement of

-3-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 7

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

promptness, diligence, presentment, acceptance, notice of acceptance, demand of payment or performance, notice of non-performance, filing of claims with a court in the event of receivership or bankruptcy of the Issuer, protest or notice with respect to the Obligations, the benefit of any statutes of limitation, all demands whatsoever, all notices and demands that may be required by law, now or hereafter in effect, to preserve intact any rights against the Guarantor, and any other circumstance whatsoever that might otherwise constitute a legal or equitable discharge, release or defense of a guarantor or that may otherwise limit recourse against the Guarantor. The Guarantor further waives notices of any and all proceedings to collect from any other guarantor or surety of all or any part of the Obligations or any collateral or security with respect thereto, or from anyone else, and notices of exchange, sale, surrender or other handling of any collateral or security given to the Noteholder (whether directly or indirectly) to secure payment of the Obligations.

SECTION 5. Effect of Bankruptcy Proceedings, etc. If payments and credits, if any, from the Guarantor, the Issuer or from any other Person on account of the Obligations that have been made to the Noteholder as provided herein, or any part thereof, are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to the Guarantor or any other Person under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the Obligations or part thereof that has been paid, reduced or satisfied by such amount shall be reinstated and such Obligations and this Guaranty shall continue in full force and effect as of the time immediately preceding the time such initial payment, credit, reduction or satisfaction occurred. The Guarantor agrees that, notwithstanding the foregoing and without limiting the generality of the foregoing if, after the occurrence of an Event of Default (as such term is defined in this Guaranty), the Noteholder is prevented by applicable law from exercising its right to accelerate the maturity of the Obligations, to collect interest on the Obligations or to enforce or exercise any other right or remedy with respect to the Obligations, the Guarantor shall pay to the Noteholder, upon demand therefor, the amount that otherwise would have been due and payable had such rights and remedies been permitted to be exercised by the Noteholder.

At any time when a Specified Event of Default has occurred and is continuing until the Note Discharge, the Noteholder may, in its sole discretion, without notice to the Guarantor and regardless of the acceptance of any security or collateral for the payment hereof (either directly or indirectly), appropriate and apply toward the payment of the Obligations then due and payable (i) any indebtedness due or to become due from the Noteholder to the Guarantor, and (ii) any monies, credits or other property belonging to the Guarantor, at any time held by or coming into possession of the Noteholder or any other Person.

SECTION 6. Subrogation. Until the Note Discharge, the Guarantor (i) shall have no right of subrogation and hereby irrevocably agrees not to exercise any rights that it may have or acquire by way of subrogation under this Guaranty, by any payment made hereunder or otherwise, and any right of reimbursement, contribution, exoneration, salvage, or similar right against the Issuer therefor and (ii) agrees not to enforce any and all claims the Guarantor may have against the Issuer for any of the Obligations.

SECTION 7. Information; Marshalling.

-4-

WEIL:\96477725\3\46349.0003
3581177-v3\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 7

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

(a)    The Guarantor hereby assumes responsibility for keeping itself informed of the financial condition of the Issuers and of any other guarantors or sureties of all or any part of the Obligations, and of all other circumstances bearing upon the risk of nonpayment of the Obligations or any part thereof. The Guarantor hereby agrees that the Noteholder shall have no duty to advise the Guarantor of information known to the Noteholder regarding such condition or any such circumstances. In the event the Noteholder in its sole discretion undertakes at any time or from time to time to provide any such information to the Guarantor, the Noteholder shall be under no obligation (i) to undertake any investigation not a part of its regular business routine, (ii) to disclose any information which, pursuant to accepted or reasonable commercial practices, the Noteholder wishes to maintain confidential or (iii) to make any other or future disclosures of such information or any other information to the Guarantor.

(b)    The Guarantor consents and agrees that the Noteholder shall be under no obligation to marshal any assets in favor of the Guarantor or against or in payment of any or all of the Obligations.

SECTION 8. Representations and Warranties.

The Guarantor represents and warrants that as of the date hereof:

(a)    Organization, etc. The Guarantor is validly organized and existing and in good standing under the laws of the State of its organization, is duly qualified to do business and is in good standing in each jurisdiction where the nature of its business requires such qualification, and has full power and authority and holds all requisite governmental licenses, permits and other approvals to enter into and perform its Obligations under this Guaranty and each other Note Document to which it is a party and to own and hold under lease its property and to conduct its business substantially as currently conducted by it, except, in each case, as would not reasonably be expected to have a Material Adverse Effect.

(b)    Due Authorization, Non-Contravention, etc. The execution, delivery and performance by the Guarantor of this Guaranty and each other Note Document executed or to be executed by it are within the Guarantor's powers, have been duly authorized by all necessary action, and do not contravene the Guarantor's certificate of incorporation, bylaws, limited partnership agreement, limited liability company agreement, operating agreement, certificate of formation, trust agreement or other organic or constitutive documents or any shareholders agreement, voting trust or similar document binding on or applicable to it; breach or contravene any provision of any loan, indenture, lease, mortgage, guaranty, security agreement or any contractual restriction, law or governmental regulation or court decree or order binding on or affecting the Guarantor or result in, or require the creation or imposition of, any lien on any of the Guarantor's properties, except, in each case, as would not reasonably be expected to have a Material Adverse Effect.

(c)    Government Approval, Regulation, etc. No authorization, registration or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body or other Person is required for the due execution, delivery or performance by the Guarantor of this Guaranty or any other Loan Document to which it is a party except for those

-5-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 7

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

with respect to which the failure to obtain or make would not reasonably be expected to have a Material Adverse Effect. The Guarantor is not an "investment company" within the meaning of the Investment Company Act of 1940, as amended, or a "holding company", or a "subsidiary company" of a "holding company", or an "affiliate" of a "holding company" or of a "subsidiary company" of a "holding company", within the meaning of the Public Utility Holding Company Act of 1935, as amended.

(d)    Validity.    This Guaranty constitutes, and each other Note Document executed by the Guarantor will, on the due execution and delivery thereof, constitute, the legal, valid and binding obligations of the Guarantor enforceable in accordance with their respective terms.

(e)    Litigation.    There are no actions, suits or proceedings (including governmental or administrative proceedings), investigations, third-party subpoenas or inquiries by any regulatory agency, body or other governmental authority, to which the Guarantor is a party or is subject, or to which any of their authorizations, consents and approvals or other properties or assets, is subject, which is pending, or, to the best knowledge of the Guarantor, threatened or contemplated against the Guarantor, or any of such property or assets, that, individually or in the aggregate, would reasonably be expected to have a Material Adverse Effect. The Guarantor is not subject to any actions, suits or proceedings (including governmental or administrative proceedings), investigation, third-party subpoenas or inquiries by any regulatory agency, body or other governmental authority or any third Person regarding its accounting practices or policies.

(f)    Taxes.    The Guarantor has (i) filed all necessary income, franchise and other material tax returns, domestic and foreign, (ii) paid all taxes shown as due thereunder to the extent such taxes would be overdue if not so paid as of the date hereof and (iii) withheld and paid to the appropriate tax authorities all amounts required to be withheld from wages, salaries and other remuneration to employees to the extent such payments are required to be made as of the date hereof, except, in the case of the foregoing (i), (ii) and (iii), to the extent the failure to making such filing, withholding or payment would not reasonably be expect to have a Material Adverse Effect. The Guarantor has no knowledge, nor has it received notice, of any tax deficiency which would reasonably be expected to be assessed against the Guarantor which, if so assessed, would reasonably be expected to have a Material Adverse Effect.

SECTION 9.    Rights are Cumulative; No Waiver.    The rights and remedies of the Noteholder under this Guaranty are cumulative and not exclusive of any rights or remedies that the Noteholder would otherwise have under the Agreement, any other Note Document (including, without limitation, under any Guaranty) or any other instrument or agreement evidencing the Obligations. No failure or delay on the part of the Noteholder in the exercise of any right, power, privilege or remedy arising under this Guaranty, the Agreement, any other Note Document or any other instrument or agreement evidencing the Obligations shall operate as a waiver thereof, and no single or partial exercise by the Noteholder of any such right, power, privilege or remedy shall preclude any further exercise thereof.

SECTION 10.    Amendment.    No amendment, modification or waiver of, or consent

-6-

WEIL:\95477726\9\43349.0003
358J177.v3\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 7

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

with respect to, any provision of this Guaranty shall in any event be effective unless the same shall be in writing and signed and delivered by the Guarantor and the Noteholder, and then any such amendment, modification, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

SECTION 11. Term of Agreement. The Guarantor agrees that this Guaranty and all agreements of the Guarantor contained herein shall continue in full force and effect and may not be discharged, terminated or otherwise revoked until the Note Discharge, at which time this Guaranty shall automatically terminate without further action by the Guarantor, subject to the terms and provisions of Section 5 hereof.

SECTION 12. Successors and Assigns. This Guaranty shall be binding upon the Guarantor and upon the successors and permitted assigns of the Guarantor and shall inure to the benefit of and be enforceable by the Noteholder and its successors and assigns. The Noteholder may assign or otherwise transfer its rights under this Guaranty to any assignee of the Note in connection with an assignment thereof made in accordance with the terms of the Agreement.

SECTION 13. Governing Law; Jury Trial; Severability. This Guaranty shall be a contract made under and governed by the laws of the State of New York. Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING (i) TO ENFORCE OR DEFEND ANY RIGHTS UNDER OR IN CONNECTION WITH THIS GUARANTY OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR (ii) ARISING FROM ANY DISPUTE OR CONTROVERSY IN CONNECTION WITH OR RELATED TO THIS GUARANTY OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT, AND AGREES THAT ANY SUCH ACTION OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

EACH OF THE PARTIES HERETO IRREVOCABLY AGREES THAT ANY ACTION OR PROCEEDING IN ANY WAY, MANNER OR RESPECT ARISING OUT OF THIS GUARANTY OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR ARISING FROM ANY DISPUTE OR CONTROVERSY ARISING IN CONNECTION WITH OR RELATED TO THIS GUARANTY OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT SHALL BE LITIGATED IN THE COURTS HAVING SITUS WITHIN THE CITY OF NEW YORK, THE STATE OF NEW YORK, AND EACH OF THE PARTIES HERETO HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN SUCH CITY AND STATE. EACH OF THE PARTIES HERETO

WEIL:\96477725\3\44349.0003
3581177-v3\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 7

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT IN ACCORDANCE WITH THIS SECTION 14.

SECTION 14. Entire Agreement. This Guaranty and the other Note Documents constitute the entire agreement of the Guarantor with respect to the subject matter hereof and supersedes all prior negotiations, agreements, discussions, correspondence, memoranda and understandings (whether written or oral) of the Guarantor and the Noteholder concerning or relating to the subject matter of this Guaranty.

SECTION 15. Payments. Any and all amounts required to be paid by the Guarantor hereunder shall be paid in the lawful currency of the United States of America ("USD") in immediately available funds, subject to deduction for withholdings as set forth in Article VII of the Agreement.

SECTION 16. Notices. All notices and other communications provided to any party hereto under this Guaranty shall be in writing, Telex or by facsimile and addressed, delivered or transmitted to such party at its address, Telex or facsimile number set forth beneath the signature below or at such other address, Telex or facsimile number as may be designated by such party in a notice to the other parties. Any notice, if mailed and properly addressed with postage prepaid or if properly addressed and sent by pre-paid courier service, shall be deemed given when received; any notice, if transmitted by Telex or facsimile, shall be deemed given when transmitted (answerback confirmation in the case of Telexes).

SECTION 17. Captions and References. The recitals to this Guaranty (except for definitions) and the section captions used in this Guaranty are for convenience only, and shall not affect the construction of this Guaranty.

[SIGNATURE PAGES TO FOLLOW]

WEIL:\95477728\3\44349.0003
3581177-v3\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 7

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

IN WITNESS WHEREOF, this Guaranty has been duly executed as of the day and year first above written.

INTERTOUCH TOPCO LLC

By: _Seale Moore_

Its: _CEO_

Address:   c/o Exceptional Innovation
              480 Olde Worthington Road, Suite 350
              Westerville, OH 43082
              USA

Facsimile No.: +1 (614) 890-6091

Attention: Seale A. Moorer, Jr.

with a copy to (which shall not constitute notice):

        Weil, Gotshal & Manges LLP
        201 Redwood Shores Parkway
        Redwood Shores, CA 94065 USA
        Attention: Gabriel Gregson
        Facsimile:  1 (650) 802-3100

NTT DOCOMO, INC.

        Sanno Park Tower 41st F
        2-11-1 Nagata-cho, Chiyoda-ku
        Tokyo 100-6150 Japan
        Attention: Managing Director of the
        Global Business Division
        Facsimile: +81 3 5156 0203

WEIL:\95477726\3\44349.0003
3581177-v3\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 8

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

# EXHIBIT G

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 8

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

EXECUTION VERSION

## MEMBERSHIP INTEREST PLEDGE AGREEMENT

MEMBERSHIP INTEREST PLEDGE AGREEMENT, dated as of September 29, 2015, made by ST HOLDINGS LLC, a Florida limited liability company (the "Pledgor") in favor of NTT DOCOMO INC., a corporation organized under the laws of Japan (together with its successors and assigns, the "Secured Party").

### RECITALS:

WHEREAS, the Noteholder has accepted and holds that certain Promissory Note issued by the Issuer (as hereinafter defined) dated September 29, 2015 in an original principal amount of $55,000,000 (the "Note");

WHEREAS, the Guarantor receives direct and indirect benefits by reason of the Noteholder's accepting and holding the Note;

WHEREAS, the Pledgor receives direct and indirect benefit from the extension of credit effectuated pursuant to the Note Purchase Agreement, and by virtue of such benefit shall extend, in its capacity as Guarantor thereunder, the guaranties, promises and undertakings set forth in that certain Guaranty of even date herewith in favor of the Secured Party (the "Guaranty");

WHEREAS, the Pledgor is the legal and beneficial owner of the shares of Pledged Stock (as hereinafter defined) issued by the Issuer (as hereinafter defined); and

WHEREAS, it is a condition precedent to the execution of the Note Purchase Agreement that the Pledgor shall have executed and delivered this Membership Interest Pledge Agreement to the Secured Party.

NOW, THEREFORE, in consideration of the premises and to induce the Secured Party to enter into the Note Purchase Agreement, the Pledgor hereby agrees with the Secured Party as follows:

SECTION 1. DEFINED TERMS. Unless otherwise defined herein, terms defined in the Guaranty and used herein shall have the meanings given to them in the Guaranty. The following terms shall have the following meanings:

"Agreement" shall mean this Membership Interest Pledge Agreement, as the same may be amended, modified or otherwise supplemented from time to time.

"Code" shall mean the Uniform Commercial Code from time to time in effect in New York.

"Collateral" shall mean the Pledged Stock, together with all Proceeds thereof.

"Issuer" shall mean interTouch Topco, LLC, a Delaware limited liability company.

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM    INDEX NO. 650026/2018
NYSCEF DOC. NO. 8    RECEIVED NYSCEF: 01/03/2018

"Note Purchase Agreement" shall mean the Note Purchase Agreement, of even date herewith, by and between the Noteholder and interTouch Holdings LLC, a Delaware limited liability company, as the same may be amended, extended, modified, substituted, exchanged or replaced from time to time.

"Obligations" shall mean:

    (a)    All "Obligations" as defined in the Guaranty; and

    (b)    Any and all liabilities of the Pledgor incurred under this Agreement.

"Pledged Stock" shall mean the membership interest units of the Issuer owned by Pledgor, as such amount may be adjusted from time to time by the Issuer, pursuant to splits, together with all certificates, options, or rights of any nature whatsoever that may be issued or granted in such membership interest units by the Issuer to the Pledgor while this Agreement is in effect.

"Proceeds" shall mean all "proceeds" as such term is defined in the Code on the date hereof and, in any event, shall include, without limitation, all dividends, cash, securities, instruments, warrants, options, splits and other property or income from the Pledged Stock, collections thereon or distributions with respect thereto.

"Securities Act" shall mean the Securities Act of 1933, as amended.

"Specified Event of Default" shall mean either (a) the Note has been declared due and payable upon an Event of Default pursuant to Section 6.2 of the NPA or (b) an Event of Default has occurred and is continuing due to a default in payment of principal of the Note upon the Maturity Date.

The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and section and paragraph references are to this Agreement unless otherwise specified. The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.

SECTION 2.  PLEDGE; GRANT OF SECURITY INTEREST. The Pledgor hereby grants to the Secured Party a first priority (subject to Permitted Liens) security interest in all of Pledgor's right, title and interest in and to the Collateral, as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the Obligations.

SECTION 3.  REPRESENTATIONS AND WARRANTIES.   The Pledgor represents and warrants, as of the date hereof, that:

    (a) The Pledged Stock.  The Pledgor is the legal and beneficial owner of the Pledged Stock. The Pledged Stock has been duly authorized and is validly issued, fully paid and non-assessable. There are no existing options, warrants, calls, commitments or other agreements of any character relating to the Pledged Stock except for the pledge and security interest to be created by this Agreement.

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM          INDEX NO. 650026/2018

NYSCEF DOC. NO. 8                                                  RECEIVED NYSCEF: 01/03/2018

(b) <u>Owner of Membership Interest Units</u>. The Pledgor is the legal and beneficial owner of the Pledged Stock free and clear of any security interest, lien, pledge, set-off right, charge, claim or encumbrance of any kind except for (i) the pledge and security interest created in favor of the Secured Party and (ii) any Permitted Lien.

(c) <u>Restricted Securities</u>.    The Pledge Stock does not constitute "restricted securities" as defined in Rule 144(a) under the Securities Act and that the Pledged Stock may be sold, transferred, pledged and otherwise disposed of without requiring registration under the Securities Act and all applicable state securities laws.

(d) <u>Power to Pledge</u>. The Pledgor has full power, authority and legal right to sell the Pledged Collateral and to pledge and grant the security interest in the Pledged Collateral in the manner and on the terms contemplated in this Agreement.

(e) <u>Validity of Agreement</u>. This Agreement has been duly executed and delivered by the Pledgor and constitutes the legal, valid and binding obligation of the Pledgor enforceable in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, or other similar laws affecting the rights of creditors generally or by the application of general equity principles.

(f) <u>Governmental and Creditor Approval</u>. No consent, authorization, or approval of, or other action by, and no notice to or filing with any Person (including, without limitation, creditors of the Pledgor and any governmental authority) is required either (i) for the pledge by the Pledgor of the Pledged Stock or the creation of the security interest pursuant to this Agreement or for the execution, delivery or performance of this Agreement by the Pledgor or (ii) for the exercise by the Secured Party of the rights or remedies provided for in this Agreement in respect of the Pledged Stock pursuant to this Agreement, except as may be required by Section 6 or in connection with the disposition of the Pledged Stock by laws affecting the offering and sale of securities generally.

(g)     <u>First Priority Security Interest</u>. Upon the execution and delivery of this Agreement, the pledge of the Pledged Stock in accordance with the terms of this Agreement shall create a valid and perfected first priority (subject to Permitted Liens that have priority by operation of law) security interest in the Pledged Stock, securing payment and satisfaction of the Obligations.

SECTION 4.    COVENANTS. The Pledgor covenants and agrees with the Secured Party that, from and after the date of this Agreement and until this Agreement is terminated and the security interests created hereby are released:

(a)     The Pledgor has delivered to the Secured Party a true, complete and genuine certificate for its ownership interest in the Pledged Stock, which represents 100% of the issued and outstanding equity of the Issuer and such certificate has been accompanied by a membership interest power signed in blank by the Pledgor. If the Pledgor shall, as a result of its ownership of the Pledged Stock, become entitled to receive or shall receive any stock certificate (including, without limitation, any certificate representing a dividend or a distribution owing on account of any portion of the Pledged Stock in connection with any reclassification, increase or

3581541-v7\
WEIL:\95477739\8\44349.0003

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 8

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

reduction of capital or any certificate issued in connection with any reorganization), whether in addition to, in substitution of, as a conversion of, or in exchange for any membership interest units comprising the Pledged Stock, or otherwise in respect thereof, the Pledgor shall accept the same as the agent of the Secured Party, hold the same in trust for the Secured Party and deliver the same forthwith to the Secured Party in the exact form received, together with an undated membership interest power covering such certificate duly executed in blank by the Pledgor to be held by the Secured Party, subject to the terms hereof, as additional collateral security for the Obligations. Any sums paid upon or in respect of the Pledged Stock upon the liquidation or dissolution of the Issuer shall be paid over to the Secured Party to be held by it hereunder as additional collateral security for the Obligations, and in case any distribution of capital shall be made on or in respect of the Pledged Stock or any property shall be distributed upon or with respect to the Pledged Stock pursuant to the reorganization thereof, the property so distributed shall be delivered to the Secured Party to be held by it hereunder as additional collateral security for the Obligations. If any sums of money or property so paid or distributed in respect of the Pledged Stock shall be received by the Pledgor, the Pledgor shall, until such money or property is paid or delivered to the Secured Party, hold such money or property in trust for the Secured Party, segregated from other funds of the Pledgor, as additional collateral security for the Obligations.

(b)     Without the prior written consent of the Secured Party, the Pledgor shall not (1) sell, assign, transfer, exchange, or otherwise dispose of, or grant any option with respect to, the Collateral, (2) create, incur or permit to exist any Lien or option in favor of, or any claim of any Person with respect to, any of the Collateral, or any interest therein, except for Permitted Liens and for the Lien in favor of the Secured Party or (3) enter into any agreement or undertaking restricting the right or ability of the Pledgor or the Secured Party to sell, assign or transfer any of the Collateral.

(c)     The Pledgor shall maintain the security interest created by this Agreement as a first-priority (subject to Permitted Liens), perfected security interest and shall use commercially reasonable efforts defend such security interest against claims and demands of all Persons whomsoever. At any time and from time to time, upon the written request of the Secured Party, and at the sole expense of the Pledgor, the Pledgor will promptly and duly execute and deliver such further instruments and documents and take such further actions as the Secured Party may reasonably request for the purposes of obtaining or preserving the full benefits of this Agreement and of the rights and powers herein granted. If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any promissory note, other instrument or chattel paper, such note, instrument or chattel paper shall, to the extent necessary for the Secured Party to perfect its security interest in Proceeds of the Collateral, be immediately delivered to the Secured Party, duly endorsed in a manner satisfactory to the Secured Party, to be held as Collateral pursuant to this Agreement.

(d)     The Pledgor shall pay, and save the Secured Party harmless from, any and all liabilities with respect to, or resulting from any delay in paying, any and all stamp, excise, sales or other taxes which may be payable or determined to be payable with respect to any of the Collateral or in connection with any of the transactions contemplated by this Agreement.

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 8

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

(e)    The Pledged Stock is and shall continue to be free and clear of any security interest, lien, pledge, set-off right, charge, claim or encumbrance of any kind except for the Lien in favor of Secured Party and Permitted Liens imposed as a matter of law.

SECTION 5.   CASH DIVIDENDS; VOTING RIGHTS.  Unless a Specified Event of Default shall have occurred and be continuing and the Secured Party shall have given five (5) days written notice to the Pledgor of the Secured Party's intent to exercise its rights pursuant to Section 6 below, the Pledgor shall be permitted to receive all cash dividends paid in the normal course of business of the Issuer and consistent with past practice, to the extent permitted under the Note Documents, in respect of the Pledged Stock and to exercise all voting and corporate rights with respect to the Pledged Stock; provided, however, that no vote shall be cast or corporate right exercised or other action taken in violation of any Note Document.

SECTION 6.   RIGHTS OF THE SECURED PARTY.

(a)    All Proceeds included in the Collateral received by the Secured Party hereunder shall be held by the Secured Party for its benefit.

(b)    If a Specified Event of Default shall occur and be continuing and the Secured Party shall have given five (5) days prior written notice of its intent to exercise such rights to the Pledgor, (1) the Secured Party shall have the right to receive any and all cash dividends paid in respect of the Pledged Stock and make application thereof to the Obligations in such order as the Secured Party may determine, and (2) all membership interest units comprising the Pledged Stock shall be registered in the name of the Secured Party or its nominee, and the Secured Party or its nominee may thereafter exercise (A) all voting, corporate and other rights pertaining to such membership interest units of the Pledged Stock at any meeting of the members or managers, as applicable, of the Issuer or otherwise and (B) any and all rights of conversion, exchange, subscription and any other rights, privileges or options pertaining to such membership interest units of the Pledged Stock as if it were the absolute owner thereof (including, without limitation, the right to exchange at its discretion any and all of the Pledged Stock upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the organizational structure of the Issuer, or upon the exercise by the Pledgor or the Secured Party of any right, privilege or option pertaining to such membership interest units of the Pledged Stock, and in connection therewith, the right to deposit and deliver any and all of the Pledged Stock with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as the Secured Party may reasonably determine), all without liability except to account for property actually received by it, but the Secured Party shall have no duty to the Pledgor to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing.

SECTION 7.   REMEDIES.

(a)    If a Specified Event of Default shall have occurred and be continuing, at any time at the Secured Party's election and upon notice to the Pledgor pursuant to Section 6, the Secured Party may apply all or any part of Proceeds of the Collateral in payment of the Obligations in such order as the Secured Party may elect.

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 8

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

(b)    If a Specified Event of Default shall have occurred and be continuing, the Secured Party, may, upon five (5) days prior written notice to the Pledgor, exercise, in addition to all other rights and remedies granted in this Agreement and in any other instrument or agreement securing, evidencing or relating to the Obligations, all rights and remedies of a secured party under the Code. Without limiting the generality of the foregoing, the Secured Party, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law referred to below or otherwise required by this Agreement) to or upon the Pledgor or any other Person (all and each of which demands, defenses, advertisements and notices are hereby waived), may in such circumstances forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, assign, give option or options to purchase or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales, in the over-the-counter market, at any exchange, broker's board or office of the Secured Party or elsewhere upon such terms and conditions as it may deem advisable and at such prices as it may deem best, for cash or on credit or for future delivery without assumption of any credit risk. The Secured Party shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption in the Pledgor, which right or equity is hereby waived or released. The Secured Party shall apply any Proceeds included in the Collateral from time to time held by it and the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale, after deducting all reasonable and documented costs and expenses incurred in respect thereof or incidental to the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of the Secured Party hereunder, including, without limitation, reasonable and documented out-of-pocket attorneys' fees and disbursements of counsel, to the payment in whole or in part of the Obligations, in such order as the Secured Party may elect, and only after such application and after the payment by the Secured Party of any other amount required by any provision of law, need the Secured Party account for the surplus, if any, to the Pledgor. To the extent permitted by applicable law, the Pledgor waives all claims, damages and demands it may acquire against the Secured Party arising out of the exercise by them of any rights hereunder. If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least ten (10) days before such sale or other disposition. The Pledgor shall remain liable for any deficiency if the proceeds of any sale or other disposition of Collateral are insufficient to pay the Obligations and the fees and disbursements of any attorneys employed by the Secured Party to collect such deficiency.

SECTION 8.  PRIVATE SALES.

(a)    The Pledgor recognizes that the Secured Party may be unable to effect a public sale of any or all the Pledged Stock, by reason of certain prohibitions contained in the Securities Act and applicable state securities laws or otherwise, and may be compelled to resort to one or more private sales thereof to a restricted group of purchasers which will be obliged to agree, among other things, to acquire such securities for their own account for investment and not with a view to the distribution or resale thereof. The Pledgor acknowledges and agrees that any such private sale may result in prices and other terms less favorable than if such sale were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall be deemed to have been made in a commercially reasonable manner. The Secured Party shall be

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 8

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

under no obligation to delay a sale of any of the Pledged Stock for the period of time necessary to permit the Issuer thereof to register such securities for public sale under the Securities Act, or under applicable state securities laws, even if the Issuer would agree to do so.

(b)     The Pledgor further agrees to use its best efforts to do or cause to be done all such other acts as may be necessary to make such sale or sales of all or any portion of the Pledged Stock pursuant to this Section valid and binding and in compliance with any and all applicable law. The Pledgor further agrees that a breach of any of the covenants contained in this Section will cause irreparable injury to the Secured Party, that the Secured Party has no adequate remedy at law in respect of such breach and, as a consequence, that each and every covenant contained in this Section shall be specifically enforceable against the Pledgor, and the Pledgor hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants except for a defense of payment or that no Specified Event of Default has occurred or that the Note Discharge has occurred.

SECTION 9.  IRREVOCABLE AUTHORIZATION AND INSTRUCTION TO ISSUER. The Pledgor hereby authorizes and instructs the Issuer to comply with any instruction received by it from the Secured Party in writing that (a) states that a Specified Event of Default has occurred and (b) is otherwise in accordance with the terms of this Agreement, without any other or further instructions from the Pledgor, and the Pledgor agrees that the Issuer shall be fully protected in so complying.

SECTION 10. SECURED PARTY'S APPOINTMENT AS ATTORNEY-IN-FACT.     The Pledgor hereby irrevocably constitutes and appoints the Secured Party and any officer or agent of the Secured Party, upon the occurrence and during the continuation of a Specified Event of Default, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of the Pledgor and in the name of the Pledgor or in the Secured Party's own name, from time to time in the Secured Party's discretion, for the purpose of carrying out the terms of this Agreement, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Agreement.   This power being coupled with an interest is irrevocable.

SECTION 11. DUTY OF SECURED PARTY. The Secured Party's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession shall be to deal with it in the same manner as the Secured Party deals with similar securities and property for its own account, except that the Secured Party shall have no obligation to invest funds held by it. Neither the Secured Party, nor any of its respective directors, officers, employees or agents shall be liable for failure to demand, collect or realize upon any of the Collateral or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of the Pledgor or any other Person or to take any other action whatsoever with regard to the Collateral or any part thereof.

SECTION 12. EXECUTION OF FINANCING STATEMENTS. The Pledgor authorizes the Secured Party to file financing statements with respect to the Collateral without the signature of the Pledgor in such form and in such filing offices as the Secured Party reasonably determines appropriate to perfect the security interests of the Secured Party under this Agreement.

7

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM   INDEX NO. 650026/2018

NYSCEF DOC. NO. 8   RECEIVED NYSCEF: 01/03/2018

SECTION 13. NOTICES. All notices, requests and other communications to any party hereto shall be given to such party, at the address set forth on the signature page hereof, in the manner specified in Section 10.4 of the Note Purchase Agreement, or such other address or as such party may hereafter specify for the purpose of notice to the other party.

SECTION 14. SEVERABILITY. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

SECTION 15. AMENDMENTS IN WRITING; NO WAIVER; CUMULATIVE REMEDIES.

(a)     None of the terms or provisions of this Agreement may be waived, amended, supplemented or otherwise modified except by a written instrument executed by the Pledgor and the Secured Party.

(b)     Secured Party shall not by any act (except by a written instrument pursuant to paragraph (a) hereof), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Default or Event of Default or in any breach of any of the terms and conditions hereof. No failure to exercise, nor any delay in exercising, on the part of the Secured Party, any right, power or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. A waiver by the Secured Party of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which the Secured Party would otherwise have on any future occasion.

(c)     The rights and remedies herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any other rights or remedies provided by law.

SECTION 16. SECTION HEADINGS. The section headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

SECTION 17. SUCCESSORS AND ASSIGNS. This Agreement shall be binding upon the successors and assigns of the Pledgor and shall inure to the benefit of the Secured Party and its successors and permitted assigns. The Secured Party may assign or otherwise transfer its rights under this Agreement to any assignee of the Note in connection with an assignment thereof made in accordance with the terms of the Note Purchase Agreement.

SECTION 18. GOVERNING LAW; JURISDICTION; JURY TRIAL.

(a)     THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS (BUT OTHERWISE WITHOUT REGARD TO THE CONFLICT OF LAWS PROVISIONS) OF THE STATE OF NEW YORK (EXCEPT TO THE EXTENT THAT THE UCC PROVIDES FOR THE APPLICATION OF LAWS OF ANOTHER STATE).

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 8

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

(b)    EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY SUBMITS TO THE NON-EXCLUSIVE JURISDICTION OF ANY UNITED STATES FEDERAL OR NEW YORK STATE COURT SITTING IN NEW YORK, NEW YORK IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT AND EACH PARTY HERETO HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS IN RESPECT OF SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN ANY SUCH COURT AND IRREVOCABLY WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE AS TO THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN SUCH A COURT OR THAT SUCH COURT IS AN INCONVENIENT FORUM. NOTHING HEREIN SHALL LIMIT THE RIGHT OF THE SECURED PARTY TO BRING PROCEEDINGS AGAINST THE PLEDGOR IN THE COURTS OF ANY OTHER JURISDICTION WHERE THE COLLATERAL IS LOCATED TO THE EXTENT NECESSARY TO EXERCISE ITS REMEDIES HEREUNDER IN RESPECT THEREOF. ANY JUDICIAL PROCEEDING BY ANY PARTY HERETO AGAINST ANY OTHER PARTY HERETO OR ANY OF THEIR RESPECTIVE AFFILIATES INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH THIS AGREEMENT SHALL BE BROUGHT ONLY IN A COURT IN NEW YORK, NEW YORK.

(c)    THE PLEDGOR AND THE SECURED PARTY HEREBY WAIVE TRIAL BY JURY IN ANY JUDICIAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER (WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE) IN ANY WAY ARISING OUT OF, RELATED TO, OR CONNECTED WITH THIS AGREEMENT OR THE RELATIONSHIP ESTABLISHED HEREUNDER.

[The rest of this page is intentionally left blank.]

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 8

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be duly executed and delivered as of the date first above written.

Secured Party:

NTT DOCOMO INC.

By: KOICHI TAKAHARA
Its: MANAGING DIRECTOR

Notice Address:
Sanno Park Tower 41st F
2-11-1 Nagata-cho, Chiyoda-ku
Tokyo 100-6150 Japan
Attention: Managing Director of the Global
Business Division
Facsimile: +81 3 5156 0203

Pledgor:

ST HOLDINGS LLC

By: Seale Moore
Its: MANAGER

Notice Address:
c/o Exceptional Innovation
480 Olde Worthington Road, Suite 350
Westerville, OH 43082 USA
Attention: Seale Moorer
Facsimile: 1 (614) 890-6091

with a copy to (which shall not constitute notice):

Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065 USA
Attention: Gabriel Gregson
Facsimile:  1 (650) 802-3100

*Signature Page to ST Holdings LLC Membership Interest Pledge Agreement*

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 9

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

# EXHIBIT H

**FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM**    INDEX NO. 650026/2018

NYSCEF DOC. NO. 9    RECEIVED NYSCEF: 01/03/2018

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Creighton Meland

**B. E-MAIL CONTACT AT FILER (optional)**
creighton.meland@bakermckenzie.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

Creighton Meland
Baker & McKenzie LLP
300 East Randolph Drive
Suit 5000
Chicago, Illinois 60601

Delaware Department of State
U.C.C. Filing Section
Filed: 04:15 PM 09/30/2015
U.C.C. Initial Filing No: 2015 4412879

Service Request No: 20150329966

| Print | Reset |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only _one_ Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| interTouch Topco LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 480 Olde Worthington Rd., Suite 350 | Westerville | OH | 43082 | USA |

**2. DEBTOR'S NAME:** Provide only _one_ Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only _one_ Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| NTT Docomo, Inc. | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| | | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2-11-1, Nagata-cho, Chiyoda-ku | Tokyo | | 100-6150 | JPN |

**4. COLLATERAL:** This financing statement covers the following collateral:

All of the membership interest units of InterTouch Holdings, LLC, a Delaware limited liability company, now owned or hereinafter acquired by the Debtor, and all of the Proceeds (as such term is defined in the Uniform Commercial Code) thereof, including, without limitation, all dividends, cash, securities, instruments, warrants, options, splits and other property or income from any such membership interest units, collections thereon or distributions with respect thereto.

**5.** Check _only_ if applicable and check _only_ one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check _only_ if applicable and check _only_ one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check _only_ if applicable and check _only_ one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
Delaware Secretary of State

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)    International Association of Commercial Administrators (IACA)

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 10

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

# EXHIBIT I

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 10

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

EXECUTION VERSION

# GUARANTY

by

NOMADIX, INC.,
as Guarantor,

in favor of

NTT DOCOMO, INC.,
as Noteholder,

dated as of

September 29, 2015

3580384-v4\
WEIL:\05477724\6\44349.0003

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 10

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

## GUARANTY

This GUARANTY, dated as of September 29, 2015 (as the same may be amended, supplemented or otherwise modified from time to time, the "Guaranty") is made by NOMADIX, INC., a corporation organized and existing under the laws of Delaware (the "Guarantor"), in favor of NTT DOCOMO, INC., a company organized and existing under the laws of Japan (the "Noteholder").

## RECITALS:

WHEREAS, the Noteholder has accepted and holds that certain Promissory Note issued by the Issuer (as hereinafter defined) dated September 29, 2015 in an original principal amount of $55,000,000 (the "Note");

WHEREAS, the Guarantor receives direct and indirect benefits by reason of the Noteholder's accepting and holding the Note;

NOW THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Guarantor hereby guarantees, promises and undertakes as follows:

SECTION 1. **Definitions.** The following terms used in this Guaranty shall have the following meanings (such meanings to be applicable, except to the extent otherwise indicated in a definition of a particular term, both to the singular and the plural forms of the terms defined):

"Agreement" shall mean the Note Purchase Agreement, of even date herewith, by and between the Noteholder and interTouch Holdings LLC, a company organized and existing under the laws of the State of Delaware (the "Issuer"), as the same may be amended, extended, modified, substituted, exchanged or replaced from time to time.

"Issuer" has the meaning set forth in the definition of Agreement.

"Note Documents" has the meaning set forth in the Agreement.

"Obligations" shall have the meaning ascribed to such term in Section 2 hereof.

"Person" has the meaning set forth in the Agreement.

"Specified Event of Default" shall mean either (a) the Note has been declared due and payable upon an Event of Default pursuant to Section 6.2 of the NPA or (b) an Event of Default has occurred and is continuing due to the Issuer's default in payment of principal of the Note upon the Maturity Date.

"Taxes" shall have the meaning ascribed to such term in Section 16 hereof.

3580384-v4\
WEIL:\95477724\6\44349.0003

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 10

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

(b) Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Agreement.

SECTION 2. **Guaranty**. The Guarantor unconditionally, absolutely and irrevocably guarantees to pay to the Noteholder, on demand, any and all present or future indebtedness, and to perform any and all present or future liabilities or obligations, of the Issuer of every kind or nature, howsoever evidenced, owing to the Noteholder, whether direct or indirect, primary or secondary, absolute or contingent, liquidated or unliquidated, matured or unmatured, arising out of or in connection with or with respect to the Agreement, any other Note Document, or any other instrument or agreement from time to time between the Issuer and the Noteholder, as any of the foregoing may be amended, modified or otherwise supplemented from time to time (all of the foregoing referred to as the "Obligations"), together with any and all reasonable and documented costs and expenses (including, without limitation, reasonable and documented out-of-pocket attorneys' fees and disbursements) incurred by the Noteholder in preserving, protecting or defending the enforceability of, or enforcing, this Guaranty or the Noteholder's rights hereunder. This Guaranty is a guaranty of payment and not of collectibility.

If for any reason whatsoever the Issuer shall fail or be unable duly, punctually and fully to pay or perform the Obligations or any part thereof as and when the same shall become payable or performable in accordance with the terms of the Agreement or otherwise, (i) the Noteholder may proceed directly and at once, without notice, against the Guarantor to obtain performance of and to collect and recover the full amount, or any portion, of the Obligations that are due and payable at or during such time without (a) first proceeding against the Issuer or any other Person, or (b) proceeding against any other security or collateral for the Obligations (including, without limitation, proceeding under any Guaranty), and (ii) the Guarantor shall pay or cause to be paid to the Noteholder, on demand, the full amount of the Obligations pursuant to the terms of the Agreement or otherwise that are due and payable at or during such time. All such payments by the Guarantor to the Noteholder shall be made without set-off or counterclaim, and the Guarantor hereby waives all set-offs and counterclaims.

Notwithstanding the foregoing, in any action or proceeding involving any state corporate law or any state or Federal bankruptcy, insolvency, reorganization, fraudulent conveyance, or other law affecting the rights of creditors generally, if the obligations of the Guarantor would otherwise be held or determined to be void, invalid or unenforceable on account of the amount of its liability hereunder, then notwithstanding any other provision hereof to the contrary, the amount of such liability shall, without any further action by the Guarantor or any other person, be automatically limited and reduced to the highest amount which is valid and enforceable as determined in such action or proceeding. Guarantor agrees that the Obligations may at any time and from time to time exceed Guarantor's maximum liability without impairing this Guaranty or affecting the Noteholder's rights and remedies hereunder.

Notwithstanding the foregoing or any other provision of any Loan Document, the Noteholder shall be permitted to seek recovery from the Guarantor under this Guaranty only after five (5) days prior written notice and only to the extent that a Specified Event of Default has occurred and is continuing.

-2-

3580384-v4\
WEIL:\95477724\6\64348.0003

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM    INDEX NO. 650026/2018

NYSCEF DOC. NO. 10    RECEIVED NYSCEF: 01/03/2018

SECTION 3. Obligations Unconditional. The Guarantor hereby agrees that its obligations under this Guaranty shall be unconditional and binding upon it irrespective of:

(a) the validity or enforceability, avoidance or subordination of the Obligations or the Agreement, any other Note Document or any other instrument or agreement evidencing the Obligations;

(b) the absence of any attempt to collect the Obligations from or proceed against the Issuer or any other Guarantor any collateral security, or other action to enforce the same;

(c) any action taken by the Noteholder, from time to time, to (i) renew, refinance, refund, extend, accelerate or otherwise change the time for payment of, or other terms relating to, any or all of the Obligations, increase or modify the amount of the Obligations or otherwise consent, waive, modify, amend or change the terms of the Agreement, any other Note Document or any other instrument or agreement evidencing the Obligations; (ii) accept partial payments on all or any part of the Obligations; (iii) take and hold security or collateral (either directly or indirectly) for the payment of any or all of the Obligations, or for the payment of this Guaranty, or for the payment of any other guaranties of the Obligations; (iv) substitute, exchange, enforce, waive and release any such security or collateral, or direct any other Person to do any of the foregoing; and (v) settle, release, compromise, collect or otherwise liquidate any or all of the Obligations and exchange, enforce, fail to protect, perfect or continue perfected, release or waive any security or collateral for the Obligations, in any manner, without affecting or impairing the obligations of the Guarantor hereunder, and (vi) settle, release, compromise or collect on any Guaranty;

(d) any insolvency, bankruptcy, assignment for the benefit of creditors or other similar events or proceedings affecting the Guarantor or the Issuer, or any of their respective assets or of any other Guarantor, or any action taken by any trustee or receiver or by any court in any such proceeding, or any allegation of invalidity of this Guaranty in any such proceeding;

(e) any release or discharge by operation of law of the Issuer, the Guarantor or of any other guarantor, or any other Person from the performance or observance of any obligation, covenant or agreement contained in the Agreement, any other Note Document, this Guaranty or any other instrument or agreement evidencing the Obligations;

(f) any merger or consolidation of the Issuer into or with any other Person or any sale, lease or transfer of any of the assets of the Issuer to any other Person; or

(g) any other occurrence or circumstance whatsoever, whether similar or dissimilar to the foregoing, and any other circumstances that might otherwise constitute a legal or equitable defense or discharge of the liabilities of a guarantor or surety or that might otherwise limit recourse against the Guarantor other than a defense of payment or the Note Discharge.

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 10

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

SECTION 4. Waivers, etc.    The Guarantor hereby waives any requirement of promptness, diligence, presentment, acceptance, notice of acceptance, demand of payment or performance, notice of non-performance, filing of claims with a court in the event of receivership or bankruptcy of the Issuer, protest or notice with respect to the Obligations, the benefit of any statutes of limitation, all demands whatsoever, all notices and demands that may be required by law, now or hereafter in effect, to preserve intact any rights against the Guarantor, and any other circumstance whatsoever that might otherwise constitute a legal or equitable discharge, release or defense of a guarantor or that may otherwise limit recourse against the Guarantor. The Guarantor further waives notices of any and all proceedings to collect from any other guarantor or surety of all or any part of the Obligations or any collateral or security with respect thereto, or from anyone else; and notices of exchange, sale, surrender or other handling of any collateral or security given to the Noteholder (whether directly or indirectly) to secure payment of the Obligations.

SECTION 5. Effect of Bankruptcy Proceedings, etc.    If payments and credits, if any, from the Guarantor, the Issuer or from any other Person on account of the Obligations that have been made to the Noteholder as provided herein, or any part thereof, are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to the Guarantor or any other Person under any bankruptcy law, state or federal law, common law or equitable cause, then to the extent of such payment or repayment, the Obligations or part thereof that has been paid, reduced or satisfied by such amount shall be reinstated and such Obligations and this Guaranty shall continue in full force and effect as of the time immediately preceding the time such initial payment, credit, reduction or satisfaction occurred. The Guarantor agrees that, notwithstanding the foregoing and without limiting the generality of the foregoing if, after the occurrence of an Event of Default (as such term is defined in this Guaranty), the Noteholder is prevented by applicable law from exercising its right to accelerate the maturity of the Obligations, to collect interest on the Obligations or to enforce or exercise any other right or remedy with respect to the Obligations, the Guarantor shall pay to the Noteholder, upon demand therefor, the amount that otherwise would have been due and payable had such rights and remedies been permitted to be exercised by the Noteholder.

At any time when a Specified Event of Default has occurred and is continuing until the Note Discharge the Noteholder may, in its sole discretion, without notice to the Guarantor and regardless of the acceptance of any security or collateral for the payment hereof (either directly or indirectly), appropriate and apply toward the payment of the Obligations then due and payable (i) any indebtedness due or to become due from the Noteholder to the Guarantor, and (ii) any monies, credits or other property belonging to the Guarantor, at any time held by or coming into possession of the Noteholder or any other Person.

SECTION 6. Subrogation.    Until the Note Discharge, the Guarantor (i) shall have no right of subrogation and hereby irrevocably agrees not to exercise any rights that it may have or acquire by way of subrogation under this Guaranty, by any payment made hereunder or otherwise, and any right of reimbursement, contribution, exoneration, salvage, or similar right against the Issuer therefor and (ii) agrees not to enforce any and all claims the Guarantor may have against the Issuer for any of the Obligations.

-4-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM    INDEX NO. 650026/2018

NYSCEF DOC. NO. 10    RECEIVED NYSCEF: 01/03/2018

SECTION 7. Information; Marshalling.

(a)    The Guarantor hereby assumes responsibility for keeping itself informed of the financial condition of the Issuers and of any other guarantors or sureties of all or any part of the Obligations, and of all other circumstances bearing upon the risk of nonpayment of the Obligations or any part thereof. The Guarantor hereby agrees that the Noteholder shall have no duty to advise the Guarantor of information known to the Noteholder regarding such condition or any such circumstances. In the event the Noteholder in its sole discretion undertakes at any time or from time to time to provide any such information to the Guarantor, the Noteholder shall be under no obligation (i) to undertake any investigation not a part of its regular business routine, (ii) to disclose any information which, pursuant to accepted or reasonable commercial practices, the Noteholder wishes to maintain confidential or (iii) to make any other or future disclosures of such information or any other information to the Guarantor.

(b)    The Guarantor consents and agrees that the Noteholder shall be under no obligation to marshal any assets in favor of the Guarantor or against or in payment of any or all of the Obligations.

SECTION 8. Representations and Warranties.

The Guarantor represents and warrants as of the date hereof:

(a)    Due Authorization, Non-Contravention, etc. The execution, delivery and performance by the Guarantor of this Guaranty and each other Note Document executed or to be executed by it are within the Guarantor's powers, have been duly authorized by all necessary corporate action of the Guarantor, and do not contravene the Guarantor's certificate of incorporation or bylaws.

SECTION 9. Rights are Cumulative; No Waiver. The rights and remedies of the Noteholder under this Guaranty are cumulative and not exclusive of any rights or remedies that the Noteholder would otherwise have under the Agreement, any other Note Document (including, without limitation, under any Guaranty) or any other instrument or agreement evidencing the Obligations. No failure or delay on the part of the Noteholder in the exercise of any right, power, privilege or remedy arising under this Guaranty, the Agreement, any other Note Document or any other instrument or agreement evidencing the Obligations shall operate as a waiver thereof, and no single or partial exercise by the Noteholder of any such right, power, privilege or remedy shall preclude any further exercise thereof.

SECTION 10. Amendment. No amendment, modification or waiver of, or consent with respect to, any provision of this Guaranty shall in any event be effective unless the same shall be in writing and signed and delivered by the Guarantor and the Noteholder, and then any such amendment, modification, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

SECTION 11. Term of Agreement. The Guarantor agrees that this Guaranty and all agreements of the Guarantor contained herein shall continue in full force and effect and may not

-5-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 10

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

be discharged, terminated or otherwise revoked until the Note Discharge, at which time this Guaranty shall automatically terminate without further action by the Guarantor, subject to the terms and provisions of Section 5 hereof.

SECTION 12. Successors and Assigns. This Guaranty shall be binding upon the Guarantor and upon the successors and permitted assigns of the Guarantor and shall inure to the benefit of and be enforceable by the Noteholder and its successors and assigns. The Noteholder may assign or otherwise transfer its rights under this Guaranty to any assignee of the Note in connection with an assignment thereof made in accordance with the terms of the Agreement.

SECTION 13. Governing Law; Jury Trial; Severability. This Guaranty shall be a contract made under and governed by the laws of the State of New York. Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty.

EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING (i) TO ENFORCE OR DEFEND ANY RIGHTS UNDER OR IN CONNECTION WITH THIS GUARANTY OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR (ii) ARISING FROM ANY DISPUTE OR CONTROVERSY IN CONNECTION WITH OR RELATED TO THIS GUARANTY OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT, AND AGREES THAT ANY SUCH ACTION OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

EACH OF THE PARTIES HERETO IRREVOCABLY AGREES THAT ANY ACTION OR PROCEEDING IN ANY WAY, MANNER OR RESPECT ARISING OUT OF THIS GUARANTY OR ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR ARISING FROM ANY DISPUTE OR CONTROVERSY ARISING IN CONNECTION WITH OR RELATED TO THIS GUARANTY OR ANY SUCH AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT SHALL BE LITIGATED IN THE COURTS HAVING SITUS WITHIN THE CITY OF NEW YORK, THE STATE OF NEW YORK, AND EACH PARTY HERETO HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN SUCH CITY AND STATE, EACH PARTY HERETO HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRANSFER OR CHANGE THE VENUE OF ANY LITIGATION BROUGHT IN ACCORDANCE WITH THIS SECTION 14.

SECTION 14. Entire Agreement. This Guaranty and the other Note Documents constitutes the entire agreement of the Guarantor with respect to the subject matter hereof and supersedes all prior negotiations, agreements, discussions, correspondence, memoranda and understandings (whether written or oral) of the Guarantor and the Noteholder concerning or

3580384-v4\
WEIL:\95477724\6\44349.0003

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 10

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

relating to the subject matter of this Guaranty.

SECTION 15. Payments. Any and all amounts required to be paid by the Guarantor hereunder shall be paid in the lawful currency of the United States of America in immediately available funds, subject to deduction for withholdings as set forth in Article VII of the Agreement.

SECTION 16. Notices. All notices and other communications provided to any party hereto under this Guaranty shall be in writing, Telex or by facsimile and addressed, delivered or transmitted to such party at its address, Telex or facsimile number set forth beneath the signature below or at such other address, Telex or facsimile number as may be designated by such party in a notice to the other parties. Any notice, if mailed and properly addressed with postage prepaid or if properly addressed and sent by pre-paid courier service, shall be deemed given when received; any notice, if transmitted by Telex or facsimile, shall be deemed given when transmitted (answerback confirmation in the case of Telexes).

SECTION 17. Captions and References. The recitals to this Guaranty (except for definitions) and the section captions used in this Guaranty are for convenience only, and shall not affect the construction of this Guaranty.

[The rest of this page is intentionally left blank.]

-7-

3580384-v4\
WEIL:\95477724\6\44340.0003

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 10

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

IN WITNESS WHEREOF, this Guaranty has been duly executed as of the day and year first above written.

NOMADIX, INC.

By: _____

Its: _____

Address:  c/o Exceptional Innovation
480 Olde Worthington Road, Suite 350
Westerville, OH 43082
USA

Facsimile No.: +1 (614) 890-6091

Attention:  Seale A. Moorer, Jr.

with a copy to (which shall not constitute notice):

Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065 USA
Attention:  Gabriel Gregson
Facsimile:  1 (650) 802-3100

NTT DOCOMO, INC.

Sanno Park Tower 41st F
2-11-1 Nagata-cho, Chiyoda-ku
Tokyo 100-6150 Japan
Attention: Managing Director of the
Global Business Division
Facsimile: +81 3 5156 0203

*Signature Page to Nomadix Guaranty*

3580384-v4\
WEIL:\95477724\6\44349.0003

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 11

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

# EXHIBIT J

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 11

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

EXECUTION VERSION

## PATENT SECURITY AGREEMENT

THIS PATENT SECURITY AGREEMENT (the "Agreement") is made and entered into as of September 29, 2015, by NOMADIX, INC., a company incorporated under the laws of Delaware ("Guarantor"), in favor of NTT DOCOMO, INC., a company incorporated under the laws of Japan ("Noteholder").

### WITNESSETH:

WHEREAS, pursuant to that certain Note Purchase Agreement dated September 29, 2015, by and between interTouch Holdings LLC ("Issuer") and Noteholder (as amended or otherwise modified from time to time, the "NPA"; capitalized terms used but not otherwise defined herein having the respective meanings ascribed to them in the NPA), the Noteholder has accepted and holds that certain Promissory Note issued by the Issuer dated September 29, 2015 in an original principal amount of $55,000,000 (the "Note") for a portion of the purchase price under the Share Sale Agreement;

WHEREAS, Guarantor and Noteholder have entered into that certain Guaranty dated September 29, 2015 (as amended or otherwise modified from time to time, the "Guaranty"), providing for, among other items, the guaranty by Guarantor of Issuer's obligations under the NPA; and

WHEREAS, Noteholder has required, as a condition to its receipt of the Note under the NPA, that Guarantor enter into this Agreement with Noteholder.

### AGREEMENT

NOW THEREFORE, in consideration of the premises and in order to induce Noteholder to accept and hold the Note, Guarantor hereby agrees with Noteholder as follows:

1. Security Interest. Guarantor hereby grants to Noteholder a security interest in and to all of its right, title and interest in and to the collateral described in Section 2 herein (the "Collateral") in order to secure the payment of all Obligations (as defined in the Guaranty) and the performance of all the obligations related thereto.

2. Collateral; Financing Statement; Perfection. The Collateral is: (a) all patents and patent applications owned by Guarantor including, without limitation, the patents and patent applications listed on Schedule A attached hereto and made a part hereof, together with all reissues, divisions, continuations, renewals, reexaminations, extensions and continuations-in-part of any of the foregoing (the "Patents"); (b) the inventions claimed in the Patents; (c) all income, royalties, damages and payments now and hereafter due or payable with respect to any of the Patents, including, without limitation, payments under all licenses entered into with respect to the Patents and damages and payments for past or future infringements of the Patents; and (d) the right to sue for past, present and future infringements of the Patents. The Noteholder is expressly authorized to file financing statements in respect of the Collateral and to record this Agreement

WEIL:\95477760\14\34910.0003
3583093-v2\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 11

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

with the United States Patent and Trademark Office or other equivalent governmental body as necessary or desirable to perfect or give effect to the security interest created herein.

3. <u>Restrictions on Future Agreements</u>. Until the Note Discharge, Guarantor will not enter into any contractual obligation or, subject to Section 7, take or fail to take any action that would reasonably be expected to impede the exercise of Noteholder's rights to the Collateral upon the occurrence of a Specified Event of Default; provided that, subject to compliance with the mandatory prepayments provisions set forth in Section 1.8(b) of the NPA, nothing in this Agreement shall restrict Guarantor's right to license, sublicense, sell transfer or otherwise dispose of the Collateral. .

4. <u>New Patents</u>. To Guarantor's knowledge, the Patents listed on Schedule A constitute all of the patents and patent applications which are, as of the date hereof, owned by or pending on behalf of Guarantor in the United States. If, prior to the Note Discharge, Guarantor obtains or applies for any additional patents in the United States, such additional patents shall automatically be included in the Collateral and the provisions of Section 1 shall automatically apply thereto. Within sixty (60) days after the end of each calendar quarter, Noteholder shall provide Guarantor notice of any such additional patents, and Guarantor hereby authorizes Noteholder to modify this Agreement by amending Schedule A to include such additional patents.

5. <u>Additional Representations and Warranties</u>. Guarantor hereby represents and warrants, as of the date hereof, that:

   (a) [Reserved].

   (b) It has the full right and power to enter into this Agreement and comply with the terms hereof.

   (c) The execution, delivery and performance by the Guarantor of this Agreement and compliance herewith will not result in any violation of, conflict with, result in a breach of any of the terms of, constitute a default of or accelerate or permit the acceleration of any rights or obligations under: (i) any applicable law; or (ii) the certificate of incorporation, as amended, or the by-laws, as amended, of the Guarantor.

6. <u>Royalties, Terms</u>. Guarantor hereby agrees that the permitted use after foreclosure by Noteholder of all Patents (as set forth in Section 11) shall be worldwide without any liability for royalties or other license fees from Noteholder to Guarantor. The term of the security interest granted herein shall extend until the earlier of (i) the expiration of each of the respective Patents or (ii) the Note Discharge.

7. <u>Duties of Guarantor</u>.

   (a) Until the Note Discharge, except to the extent permitted in Section 7(b) or to the extent an action or failure to act would not reasonably be expected to have a material adverse impact on the value of the Collateral taken as a whole, Guarantor shall use reasonable efforts to preserve and protect the Collateral at Guarantor's expense, including, without limitation: (i) prosecuting any patent application that is included in the Patents; (ii) submitting

WEIL:\96477755\14\49349.0003
3583093-v2\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM          INDEX NO. 650026/2018

NYSCEF DOC. NO. 11                                                          RECEIVED NYSCEF: 01/03/2018

applications for unpatented but patentable inventions, as appropriate; (iii) preserving and maintaining all of Guarantor's rights in the Patents (including, without limitation, the payment of all maintenance fees); and (iv) not abandoning any Patent.

(b)    Notwithstanding anything set forth in Section 7(a) or elsewhere in this Agreement or otherwise, nothing in this Agreement shall prevent Guarantor from (i) abandoning or discontinuing the use, prosecution or maintenance of any of the Patents or (ii) failing to take any action to enforce any actions against infringers of the any of the Patents, in each case (i) and (ii), if Guarantor determines, in its reasonable business judgment, that such abandonment, discontinuance or failure to take action is desirable in the conduct of its business.

(c)    At the Noteholder's request, Guarantor shall use commercially reasonable efforts to take all action necessary to preserve and maintain the validity, perfection and first priority of Noteholder's interest granted herein in the Patents.

8.  Waivers.  No course of dealing between Guarantor and Noteholder, nor any failure to exercise, nor any delay in exercising, on the part of Noteholder, any right, power or privilege hereunder or under the Guaranty or any other Note Document shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder or thereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

9.  Severability.  The provisions of this Agreement are severable, and if any clause or provision shall be held invalid and unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability shall affect only such clause or provision, or part thereof, in such jurisdiction, and shall not in any manner affect such clause or provision in any other jurisdiction, or any other clause or provision of this Agreement in any jurisdiction.  If any provision hereof shall render an otherwise valid Patent invalid or ineffective, then such provision shall be void ab initio to the extent that the validity or effectiveness of the Patent is thereby preserved and Guarantor shall make suitable other valid arrangements to provide Noteholder with equivalent protections to that intended hereby.

10.  Amendments.  This Agreement or any provision thereof may be changed, waived, or terminated only (a) in the manner set forth in Section 4 or (b) pursuant to a written agreement executed by Guarantor and Noteholder.

11.  Remedies.  If (a) the Note has been declared due and payable upon an Event of Default pursuant to Section 6.2 of the NPA or (b) an Event of Default has occurred and is continuing due to the Issuer's default in payment of principal of the Note upon the Maturity Date (each a "Specified Event of Default"), then Noteholder shall, upon five (5) days prior written notice to the Guarantor, be entitled to exercise in respect of the Collateral, in addition to other rights and remedies provided for herein, in the Guaranty and other Note Documents or otherwise available to it, all of the rights and remedies of a secured party under the Uniform Commercial Code in effect in the State of New York (the "UCC") and also may: (i) require Guarantor, and Guarantor hereby agrees that it will, upon the request of Noteholder, forthwith, (A) execute and deliver an assignment, substantially in the form of Exhibit A hereto, of all right, title and interest

-3-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM   INDEX NO. 650026/2018
NYSCEF DOC. NO. 11                                   RECEIVED NYSCEF: 01/03/2018

in and to the Collateral to Noteholder and (B) take such other action as Noteholder may reasonably request to effectuate the outright assignment of such Collateral to Noteholder or to enable Noteholder to exercise, register or further perfect and protect its rights and remedies with respect to such assigned Collateral; and (ii) without notice except as specified in this Section 11, sell the Collateral or any part thereof in one or more parcels at public or private sale, at any of Noteholder's offices or elsewhere, for cash, on credit or for future delivery, and upon such terms as Noteholder may deem commercially reasonable. Guarantor agrees that at least ten (10) days written notice to Guarantor, given by Noteholder in accordance with the terms of the Guaranty, of the time and place of any public sale or the time which any private sale is to be made shall constitute reasonable notification of the sale of such Collateral. Noteholder shall not be obligated to make any sale of the Collateral regardless of notice of sale having been given. Noteholder may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned. Noteholder may purchase all or any part of the Collateral at public or, if permitted by law, private sale and, in lieu of actual payment of such purchase price, may setoff the amount of such price against the Obligations. The proceeds realized from the sale of any Collateral shall be, applied first to the reasonable costs and expenses (including, without limitation, reasonable and documented out-of-pocket attorneys' fees and disbursements (which shall be limited to those of a single legal counsel each relevant jurisdiction)) incurred by Noteholder for collection and for acquisition, protection, and sale of the Collateral; second to interest due upon any of the Obligations; and third to the principal of the Obligations. If any deficiency shall arise, Guarantor shall remain liable to Noteholder therefor. The commencement of any action, legal or equitable, or the rendering of any judgment or decree for deficiency shall not affect Noteholder's security interest in the Collateral until the Note Discharge. Guarantor agrees that Noteholder has no obligation to preserve rights to Collateral against any other parties.

12. Cumulative Remedies; Power of Attorney; Effect on Guaranty. All of Noteholder's rights and remedies with respect to the Patents, whether established hereby, by the Guaranty, by any other Note Document, or by law shall be cumulative and may be exercised singularly or concurrently. Guarantor hereby authorizes Noteholder to make, constitute and appoint any officer or agent of Noteholder as Noteholder may select, in its sole discretion, as Guarantor's true and lawful attorney-in-fact, with power, upon the occurrence of a Specified Event of Default and solely during the continuance of such Specified Event of Default to (a) endorse Guarantor's name on all applications, documents, papers and instruments necessary or desirable for Noteholder in the use of the Patents, (b) take any other actions with respect to the Patents as Noteholder deems in the best interest of Noteholder, (c) grant or issue any exclusive or non-exclusive license under the Patents to anyone or (d) assign, pledge, convey or otherwise transfer title in or dispose of the Patents to anyone. Guarantor hereby ratifies all that such attorney shall lawfully do or cause to be done by virtue hereof. This power of attorney, being coupled with an interest, shall be irrevocable until the Note Discharge. Guarantor acknowledges and agrees that this Agreement is not intended to limit or restrict in any way the rights and remedies of Noteholder under the Guaranty and the other Note Documents but rather is intended to facilitate the exercise of such rights and remedies.

13. Notices. Any notice, approval, consent or other communication to any party hereunder shall be in the form and manner, and to the addresses as set forth in the Guaranty.

-4-

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 11

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

14. Binding Effect; Benefits of Agreement.   This Agreement and all covenants and agreements of each party contained in this Agreement shall be binding upon and inure to the successors and assigns of such party.   Noteholder may assign or otherwise transfer its rights under this Agreement to any assignee of the Note in connection with an assignment thereof made in accordance with the terms of the NPA.

15. Authority of Noteholder.   Noteholder shall have and be entitled to exercise all powers hereunder which are specifically delegated to Noteholder by the terms hereof, together with such powers as are reasonably incident thereto.   Noteholder may perform any of its duties hereunder or in connection with the Patents by or through agents or employees and shall be entitled to retain counsel and to act in reliance upon the advice of counsel concerning all such matters.

16. Interpretation of Agreement.   All terms not defined herein shall have the meaning set forth in the Guaranty and in the UCC, except where the context otherwise requires.   To the extent any term or provision of this Agreement conflicts with the Guaranty and is not dealt with more specifically herein, the Guaranty shall control with respect to such term or provision.

17. Waiver.   To the fullest extent it may lawfully so agree, Guarantor agrees that it will not at any time insist upon, claim, plead, or take any benefit or advantage of any appraisement, valuation, stay, extension, moratorium, redemption or similar law now or hereafter in force in order to prevent, delay, or hinder the enforcement hereof or the absolute sale of any part of the Patents.   Guarantor for itself and all who claim through it, so far as it or they now or hereafter lawfully may do so, hereby waives the benefit of all such laws; and all right to have the Patents marshalled upon any foreclosure hereof, and agrees that any court having jurisdiction to foreclose this Agreement may order the sale of the Patents as an entirety.   Guarantor hereby waives and releases any and all right to require Noteholder to collect any of the Obligations from any specific item or items of the Patents or from any other party liable as guarantor or in any other manner in respect of any of the Obligations or from any collateral (other than the Patents) for any of the Obligations.

18. Reinstatement.   This Agreement shall continue to be effective or be reinstated, as the case may be, if at any time any amount received by Noteholder in respect of the Obligations is rescinded or must otherwise be restored or returned by Noteholder upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Guarantor or upon the appointment of any intervenor or conservator of, or trustee or similar official for, Guarantor or any substantial part of its assets, or otherwise, all as though such payments had not been made.

19. Final Expression.   This Agreement, together with the Guaranty and the other Note Documents to which Guarantor is a party, is intended by the parties as a final expression of their agreement and is intended as a complete and exclusive statement of the terms and conditions thereof.   Acceptance of or acquiescence in a course of performance rendered under this Agreement shall not be relevant to determine the meaning of this Agreement even though the accepting or acquiescing party had knowledge of the nature of the performance and opportunity for objection.

WEIL:\95477755\7\44348.0003
3583093-v2\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM    INDEX NO. 650026/2018

NYSCEF DOC. NO. 11    RECEIVED NYSCEF: 01/03/2018

20. Survival of Provisions. All representations, warranties and covenants of Guarantor contained herein shall survive the execution and delivery of this Agreement, and shall terminate only upon the full and final payment and performance by Guarantor of the Obligations and termination of the Guaranty and the other Note Documents.

21. Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which shall together constitute one and the same agreement.

22. GOVERNING LAW; SUBMISSION TO JURISDICTION; WAIVER OF JURY TRIAL.

(a)    THIS AGREEMENT SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK, INCLUDING THE UCC.

(b)    GUARANTOR AND NOTEHOLDER ACKNOWLEDGE THAT THE RIGHT TO A TRIAL BY JURY IS A CONSTITUTIONAL RIGHT, BUT THAT THE RIGHT MAY BE WAIVED, BOTH GUARANTOR AND NOTEHOLDER EACH KNOWINGLY, VOLUNTARILY, IRREVOCABLY AND WITHOUT COERCION, WAIVE ALL RIGHTS TO TRIAL BY JURY OF ALL DISPUTES BETWEEN THEM. NEITHER NOTEHOLDER NOR GUARANTOR SHALL BE DEEMED TO HAVE GIVEN UP THIS WAIVER OF JURY TRIAL UNLESS THE PARTY CLAIMING THAT THIS WAIVER HAS BEEN RELINQUISHED HAS A WRITTEN INSTRUMENT SIGNED BY THE OTHER PARTY STATING THAT THIS WAIVER HAS BEEN GIVEN UP.

(c)    EACH PARTY HERETO AGREES THAT ANY LEGAL ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY MAY BE BROUGHT IN ANY COURT OF THE UNITED STATES OF AMERICA OR OF THE STATE OF NEW YORK, SITTING IN OR HAVING JURISDICTION OVER THE COUNTY OF NEW YORK, NEW YORK AND EACH PARTY HERETO HEREBY SUBMITS TO AND ACCEPTS GENERALLY AND UNCONDITIONALLY THE NON-EXCLUSIVE JURISDICTION OF THOSE COURTS WITH RESPECT TO ITS PERSON AND PROPERTY AND IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS IN CONNECTION WITH ANY SUCH ACTION OR PROCEEDING BY MAILING SUCH SERVICE OF PROCESS (CERTIFIED OR REGISTERED, IF CAPABLE OF CERTIFICATION OR REGISTRATION) TO SUCH PARTY AT ITS ADDRESS FOR NOTICES SET FORTH IN THE GUARANTY. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ANY OBJECTION TO THE LAYING OF VENUE OF ANY SUCH SUIT OR PROCEEDING IN THE ABOVE-DESCRIBED COURTS. EACH PARTY HERETO IRREVOCABLY AND GENERALLY CONSENTS IN RESPECT OF ANY PROCEEDINGS TO THE GIVING OF ANY RELIEF OR THE ISSUE OF ANY PROCESS IN CONNECTION WITH THOSE PROCEEDINGS INCLUDING, WITHOUT LIMITATION, THE MAKING, ENFORCEMENT OR EXECUTION AGAINST ANY ASSETS WHATSOEVER OF ANY ORDER OR JUDGMENT WHICH MAY BE MADE OR GIVEN IN THOSE PROCEEDINGS.

WEIL:\96547776\17\44349.0003
9383093-v2\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 11

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

23. <u>Termination of Agreement</u>. This Agreement shall terminate upon the Note Discharge automatically and without the requirement for any further action by any party. At such time, Noteholder shall promptly (a) reassign and redeliver to Guarantor all of the Patents that have not been otherwise sold or disposed of by Noteholder in accordance with the terms hereof and (b) execute and deliver to Guarantor, at Guarantor's expense, all documents that Guarantor requests to evidence such termination and the release of Noteholder's security interest in and to the Collateral. In addition, the security interest created by this Agreement with respect to any Collateral shall automatically terminate without the requirement for any further action by any party upon any sale or disposition of such Collateral that is permitted by the Note Documents, subject to the mandatory prepayment provisions of the NPA.

[The rest of this page is intentionally left blank.]

-7-

WEIL:95477755\14\43349.0003
3583093-v2\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM
NYSCEF DOC. NO. 11

INDEX NO. 650026/2018
RECEIVED NYSCEF: 01/03/2018

IN WITNESS WHEREOF, Guarantor has duly executed and delivered this Agreement as of the day and year first above written.

NOMADIX, INC.,
a Delaware corporation

By: _GALE MOORE_____

Its: _CEO_____

By acceptance hereof as of this __29 th__ day of September, 2015, Noteholder agrees to be bound by the provisions hereof.

NTT DOCOMO, INC.,
a Japanese corporation

By: _KOICHI TAKAHARA_____

Its: _MANAGING DIRECTOR_____

*Signature Page to Patent Security Agreement*

WEIL:\95477765\7\44349.0003
3583093-v2\

FILED: NEW YORK COUNTY CLERK 01/03/2018 11:03 AM

NYSCEF DOC. NO. 11

INDEX NO. 650026/2018

RECEIVED NYSCEF: 01/03/2018

SCHEDULE A

TO

PATENT SECURITY AGREEMENT

Dated as of September 29, 2015

Patents Owned By Nomadix, Inc.

| Title | Country | Application No. | Filing Date | Patent Number | Issue Date |
|-------|---------|-----------------|-------------|---------------|------------|
| NOMADIC TRANSLATOR OR ROUTER | US | 09/041534 | 12-Mar-1998 | 6130892 | 10-Oct-2000 |
| SYSTEM AND METHOD FOR ESTABLISHING NETWORK CONNECTION WITH UNKNOWN NETWORK AND/OR USER DEVICE | US | 09/684937 | 6-Oct-2000 | 7088727 | 08-Aug-2006 |
| SYSTEM AND METHOD FOR ESTABLISHING NETWORK CONNECTION WITH UNKNOWN NETWORK AND/OR USER DEVICE | US | 11/057925 | 11-Apr-2005 | 7554995 | 30-Jun-2009 |
| SYSTEM AND METHOD FOR ESTABLISHING NETWORK CONNECTION | US | 12/240427 | 29-Sep-2008 | 8027339 | 27-Sep-2011 |
| SYSTEM AND METHOD FOR ESTABLISHING NETWORK CONNECTION | US | 13/225059 | 2-Sep-2011 | 8594107 | 26-Nov-2013 |
| REEXAM OF NOMADIC TRANSLATOR OR ROUTER | US | 90/007423 | 15-Feb-2005 | 6130892 C1 | 01-Dec-2009 |

WELИ9547775517443a9.0003
3383083v21