# Exhibit A



Via Email Only

December 12, 2018

Mr. Seale Moorer
Chairman and CEO
interTouch Holdings, LLC & interTouch Topco, LLC
480 Olde Worthington Rd
Suite 350
Westerville, OH 43082

Dear Mr. Moorer:

Thank you for selecting Momentum Advisors Services, LLC ("MA") as financial advisor to interTouch Holdings, LLC (Case #18-12772) and interTouch Topco LLC (Case #18-12773) ("interTouch" or the "Company").

This letter sets forth our understanding that the interTouch has agreed to retain MA to provide financial and management advisory and consulting services described below. Also detailed below you will find our standard engagement terms for your review. If the aforementioned work scope and terms herein meet with your approval, then please sign and return this Engagement Letter.

*Scope of Work*

In connection with the foregoing, MA may be requested to:
- Assist management in preparing short-term cash flow projections and in modifying and updating such projections, as required.
- Assist management in assessing the Company's strategic options and developing the related financial projections.
- Assist management in the development and preparation of an operating plan and longer-term cash flow projections as well as the presentation of such plans, as requested.
- Assist management in its a Chapter 11 filings, if necessary, including assistance with various motions such as first day filings, financing and/or use of cash collateral and other tasks as requested by management and/or counsel as may be necessary to provide for an orderly filing.
- Assist management in the development of the financial aspects of a restructuring plan, including preparation of financial projections, liquidation analysis and other schedules in support of the plan of reorganization process.
- Assist the Company with the preparation of reports and communications with the Company's creditor constituencies.

- Assist the Company with the preparation and review of the various reporting requirements of the Court during the Chapter 11 proceedings, including the Statement of Financial Affairs and Schedules, the Initial Reporting Requirements and Monthly Operating Reports, if necessary.
- Assist with the development, evaluation, negotiation and execution of any potential plan of reorganization or restructuring transaction.
- Assist the Company in the negotiations with lenders, creditors, and other parties-in-interest regarding any potential plan of reorganization or restructuring transaction, as requested.
- Assist management in preparing the Company to present itself to sources of appropriate financing, and advise management throughout the attendant discussions and negotiations, as requested.
- Assist with the analysis and reconciliation of claims against the Debtors and other bankruptcy avoidance actions.
- Provide testimony at any hearings that constitute part of the Chapter 11 process, including, without limitation, financial matters relating to a plan or plans of reorganization, the feasibility of such reorganization plans and the valuation attributed to the entities.
- Assist counsel with the preparation of any disclosure statements to be filed by the Company as part of the Chapter 11 reorganization.
- Interact with other retained professionals, such as attorneys and accountants, and lenders and creditors' committee, if any, and other parties-in-interest.
- Perform such other tasks as appropriate and as may be requested by the Company's management or the Company's counsel.

*MA's Professionals Assigned to the Project*

This engagement will be staffed by MA professionals appropriate to the particular task at hand. Robert Agarwal will lead this engagement; other MA professionals will work as needed, as we consider it appropriate and most cost effective to utilize other consultants, some of whom may be independent contractors, on the engagement, we would discuss with you the nature and scope of their participation before having them begin work.

*Fees*

An important factor in selecting a consulting firm is the experience, expertise and qualifications of the individuals that will work on the engagement. Our consultants average over 20 years of hands-on management, operational and financial consulting experience. We will manage and work on this assignment and will be assisted by other MA professionals if needed, as discussed above.

Mr. Agarwal's billing rate will be $390 per hour for this engagement. MA's standard hourly rates range from $250 to $455 per hour. Other professionals will be billed at their standard rates.

Periodically, our standard hourly rates are adjusted to reflect the increased experience of our staff and changing market conditions. We agree to provide you prior written notice of any fee increase adjustments. Our fees and expenses are not contingent upon the final results, nor do we guarantee any result or resolution in the above-captioned matter.



The Company agrees to pay MA a retainer of $10,000.00 due and payable at an agreed upon time and approved method. At the end of the case, subject to the approval of the Bankruptcy Court, any amount of retainer remaining after application to unpaid fees will be returned to the Debtors.

*Standard Engagement Terms:*

1)      MA will be paid on an hourly basis to provide services as described above. During the course of our engagement we will communicate with you on a regular basis, as often as you feel necessary, in person or by phone.

We will endeavor to minimize the cost to you by working efficiently and cost effectively. The efficiency of our work will depend upon the cooperation and availability of relevant Company management team members or other relevant individuals, as well as the quality and timeliness of relevant data and financial information. If the engagement lasts more than six months, MA reserves the right to increase its hourly fees.

2)      Since the Company has already filed for Chapter 11 protection, MA understands that it will be retained as part of first day orders (or nunc pro tunc should MA's retention not be filed as a first day order). In accordance with the Bankruptcy Code, interim and final compensation and reimbursement of costs expended are subject to approval by the Bankruptcy Court. Fee applications will be submitted to the Court for its consideration in accordance with the Bankruptcy Code or the Court-approved administrative order modifying terms of payments to professionals, if any.

3)      The Company shall reimburse MA for any out-of-pocket expenses reasonably incurred by MA in connection with the services rendered hereunder. Such expenses include, but are not limited to out-of-town travel (meals, lodging, parking, etc.) telephone calls, general office services, as necessary and reasonably required by MA in connection with this engagement.

4)      In performing the service described above, you agree to furnish or cause to be furnished to MA such information as MA reasonably believes appropriate to the execution of its engagement hereunder (all such information so furnished being the "Information"). You agree to advise MA immediately of the occurrence of any event or any other change known by you or your agents which results in the Information ceasing to be complete and correct in all material respects. The Company recognizes and confirms that MA (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated hereby without having independently verified any of the same and (b) does not assume responsibility for accurateness or completeness of the Information and such other information and (c) will not make an appraisal of any of the assets or liabilities of the Company.

5)      The Company at its premises shall provide MA with the use of office facilities, telephone facilities and general office services, as necessary, and reasonably required by MA in connection with this engagement.

6)      MA is being retained by the Company and shall report to Seale Moorer, or his designee.

7)      The Company agrees to make available to MA all of the Company's financial and operational information and data as requested by MA and agrees to permit discussions with Company personnel that MA might reasonably require in connection with this engagement.



8)      MA is authorized to share any information or data it collects and to discuss the affairs of the Company, as deemed necessary by MA, with the authorized representatives of the Company or other designated parties with the prior concurrence of Seale Moorer, or his designee.

9)      Should services outside the scope of this engagement be requested, their extent and the additional compensation to be paid to MA for such services shall be mutually agreed to before MA begins to perform such services and a separate engagement letter will be entered into.

10)     MA is not an independent accounting firm or law firm and does not undertake the performance of an audit or the rendering of legal advice in this engagement. MA will rely upon financial data and legal advice provided by the Company's own independent auditors and counsel.

11)     (a) Subject to the provisions of subparagraph (b), (c) and (d) below, the Company agrees to indemnify and hold harmless MA, its affiliates and their respective shareholders, directors, officers, employees and agents (collectively, "the Indemnified Parties") from and against any claims, losses, damages or expenses arising from, related to, or in connection with this Engagement Agreement;

(b)     The Company shall have no obligation to indemnify the Indemnified Parties, or provide contribution or reimbursement to the Indemnified Parties, for any claim, loss, damage or expense that is either (1) judicially determined (the determination having become final) to have arisen from MA's gross negligence or willful misconduct, or (ii) settled prior to a judicial determination as to MA's gross negligence or willful misconduct, but determined by the Bankruptcy Court, after notice and a hearing, to be a claim, loss, damage or expense for which the Indemnified Parties should not receive indemnity, contribution or reimbursement under the terms of this Engagement Agreement;

(c)     if, before the earlier of (i) the entry of an order confirming a Chapter 11 plan in the Debtors bankruptcy (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Chapter 11 case, MA believes that it is entitled to the payment of any amounts by the Company on account of the indemnification, contribution and/or reimbursement obligations under this Engagement Agreement, including without limitation the advancement of defense costs, MA will file an application therefor in the Bankruptcy Court, and the Company will not pay any such amounts to MA before the entry of an order by the Bankruptcy Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Bankruptcy Court shall have jurisdiction over any request for fees and expenses by MA for indemnification, contribution or reimbursement and not a provision limiting the duration of the Company's obligation to indemnify MA; and

12)     (a) If MA is requested or required to appear and/or testify before any tribunal in connection with this Engagement Agreement, whether or not pursuant to lawful purposes, all time spent and out-of-pocket expenditures by MA, including reasonable expenses for legal counsel, will be considered to have been performed under the terms of this Engagement Agreement, and MA shall be entitled to receive payment of fees and reimbursement of expenses thereof from the Company.

(b) Notwithstanding the provisions of subsection (a) above, MA will not be entitled to payment for time spent and reimbursement for out-of-pocket expenses incurred by MA in any proceeding between MA and the Company regarding any dispute arising out of this Engagement Agreement provided, however, that in any such dispute if MA shall prevail, then, and only in that event, shall MA be entitled to reimbursement of time spent testifying in such dispute, reimbursement of fees, and for reasonable attorneys' fees, all of which are as approved by the Bankruptcy Court.



13)    Except for the services to be provided by MA pursuant to this Agreement, during the term of this engagement and for a period of two (2) years thereafter, the Company shall not utilize, whether as employee or independent consultant, and whether directly or indirectly, the services of any person who is, was or had been employed by MA during the term of this engagement.

14)    Either MA or the Company may terminate this Agreement upon written notice. Paragraph 11, 12 and 13 shall survive any termination. Payment by the Company of all outstanding amounts due MA is to accompany termination by the Company.



The signing of this engagement letter is necessary for this engagement to commence. If the foregoing is in accordance with our understanding, please sig n the attached copy of the engagement letter and forward it to our office.

Sincerest regards,

MO MENTUM ADVISORS SERVICES, LLC

Stephen E. Judge, Partner

AGREED TO AND ACCEPTED:

On behalf of interTouch Holdings LLC and interTouch Topco LLC

Seale Moorer, Chairman and CEO

By:_____

Date:___December 14, 2018_____

