**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| In re: | Chapter 11 |
|---|---|
| INTERTOUCH TOPCO LLC, *et al.*, | Case No. 18-12773 (BLS) |
| Debtors. | Jointly Administered<br>**Related to Docket Nos. 4, 5, and 45** |

**GATE WORLDWIDE HOLDINGS LLC'S OMNIBUS REPLY MEMORANDUM IN FURTHER SUPPORT OF GATE WORLDWIDE HOLDINGS LLC'S EMERGENCY MOTION TO DISMISS THE DEBTORS' CHAPTER 11 CASES PURSUANT TO SECTION 1112(B) OF THE BANKRUPTCY CODE AND/OR ABSTAIN FROM HEARING DEBTORS' CHAPTER 11 CASES PURSUANT TO SECTION 305(A) OF THE BANKRUPTCY CODE AND GATE WORLDWIDE HOLDINGS LLC'S EMERGENCY MOTION FOR ENTRY OF AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTIONS 362(D) AND (F) OF THE BANKRUPTCY CODE**[1]

Gate Worldwide Holdings LLC ("GWH") hereby files this *Omnibus Reply Memorandum* in further support of its motion to dismiss [D.I. 4] (the "Motion to Dismiss") and its motion for relief from the automatic stay [D.I. 5] (the "Motion for Relief from Stay").[2] In support of the Omnibus Reply Memorandum, GWH respectfully states as follows:

## INTRODUCTION

1. In their Omnibus Objection, the Debtors make clear that there is no disputed issue of fact related to bad faith.[3] The Debtors do not dispute that the New York Court "authorized the

[1] The "Omnibus Reply Memorandum".

[2] Unless otherwise defined herein, all capitalized terms have the same meaning as defined in GWH's Motion to Dismiss and Motion for Relief from Stay.

[3] Although the parties do not dispute the *relevant* issues of fact, the Debtors' Opposition Brief contains several allegations that are both inflammatory and irrelevant to the discrete issues before this Court. For instance, the Debtors claim that the New York Court approved auction process was inadequate, that GWH has engaged in "predatory creditor practice[s]" and that GWH will obtain the Debtors' assets at a "distressed discount." The Court should ignore the Debtors' invitation to relitigate these immaterial issues that have already been briefed, argued, and decided in the New York Action.

sale of [interTouch's] membership interests at a public auction and established certain procedures with respect thereto."  Opp. Br., ¶ 31.  The Debtors also do not dispute that GWH prevailed as the highest bidder in a judicially-authorized auction process.  Opp. Br., ¶ 32. Further, the Debtors acknowledge that the right to redeem interTouch's membership interests expired at the end of the day on December 7, 2018 and that they did not file their bankruptcy petitions until the morning of December 10, 2018, hours before the New York Court was scheduled to confirm the sale of the membership interest in interTouch from Topco to GWH. *See* Opp. Br., ¶¶ 30, 34, 48-50.  The only true issues in dispute are whether, under these circumstances, the filing of the bankruptcy petitions by the Debtors were in good faith or otherwise a permissible use of the Bankruptcy Code under Third Circuit precedent, and whether GWH has met its initial burden to obtain relief from the automatic stay.

2.    When GWH initially filed its Motion to Dismiss and Motion for Relief from Stay, the Debtors' subjective bad faith intent in filing for bankruptcy was only inferred.  However, now that the Debtors have filed their Opposition Brief and the Seale A. Moorer Jr. Declaration, their intentions are abundantly clear:  Under the auspices of the automatic stay provisions of the Bankruptcy Code, the Debtors wish to turn back the clock on the New York Action and resurrect a previously expired right of redemption—like a "Phoenix rising from the ashes"—with hopes that the Tiller Transaction (or some other white knight) will finally provide financing to satisfy GWH's $50 million plus judgment (the "New York Court Judgment").  Opp. Br., ¶¶ 48, 50.  The Debtors do not even suggest another bankruptcy-related purpose.  Plain and simple, the Debtors filed the petitions for the sole purpose of gaining an advantage in litigation.  On these grounds, the Debtors cannot meet their burden of establishing a good faith basis for filing for bankruptcy, and therefore dismissal or, alternatively, relief from stay is appropriate.

## I.  THE DEBTORS HAVE FAILED TO MEET THEIR BURDEN OF ESTABLISHING GOOD FAITH IN FILING THE PETITIONS

3.      As an initial matter, the Debtors misconstrue the burden of proof related to a bad faith filing,  claiming that GWH needs to establish cause for dismissal before the burden shifts to the Debtors to establish a good faith basis for filing.  *See* Opp. Br., ¶¶ 36, 41-43.  This argument is directly contrary to the law in the Third Circuit that "[o]nce a party calls into question a petitioner's good faith, the burden shifts to the petition to prove his good faith."  *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000); *Solow v. PPI Enters.*(*U.S.*) (*In re PPI Enters.*(*U.S.*)), 324 F.3d 197, 211 (3d Cir. 2003) ("The debtor bears the burden of establishing good faith."); *In re SGL Carbon Corp.,* 200 F.3d 154, 162 n.10 (3d Cir. 1999) (same); *In re Rent-a-Wreck of Am., Inc.*, 580 B.R. 364, 374 n.72 (Bankr. D. Del. 2018); *In re Quinn*, 423 B.R. 454, 461 (Bankr. D. Del. 2009) ("Once bad faith is raised by a creditor, the debtor bears the burden of proving that its filing were in good faith.").  The Debtors' bad faith has clearly been called into question.  Thus, the burden of proving a good faith basis for filing the petitions rests solely with the Debtors.  The Debtors cannot establish good faith.

### A.      The Debtors' Only Purpose for Filing the Bankruptcy Petitions was to Resurrect the Right of Redemption, Which Expired Prepetition Pursuant to the New York Court's Order.

4.      In the first instance, the Debtors concede—as they must—that the <u>only</u> purpose for filing the bankruptcy petitions was to stay the entry of the *Order Confirming Sale of InterTouch Holdings, LLC* (the "Order Confirming Sale") and use a new venue (the Bankruptcy Court) to gain additional time to secure financing to pay off the New York Court Judgment.  *See* Opp. Br., ¶ 50 ("These cases were filed to gain relief from real debt and to avoid liquidation and with the intent . . . to pay [GWH] on the Note *in full.*").  Specifically, the Debtors state that the bankruptcy petitions were filed to (i) extend Topco's redemption period, which expired at the

end of December 7, 2018, (ii) avoid entry of the Order Confirming Sale, and (iii) block the transfer of Topco's interTouch shares to GWH. *See* Opp. Br., ¶¶ 48, 50.[4]

5. It is well-established, however, that the Debtors cannot resurrect a right or interest that expired prepetition. In order to determine if Topco's rights of redemption expired, the Court must look to applicable state law in New York insofar as New York law applies to the Note Documents.[5] *See In re Connors,* 497 F.3d 314, 321 (3d Cir. 2007) (state law governs whether a debtor's right to redeem expired prepetition). Under New York's Uniform Commercial Code, Topco and GWH were free to reach an agreement regarding Topco's right to redeem the interTouch shares. *See* N.Y. U.C.C. §§ 9-602, 9-603, 9-623, 9-624 ("The parties may determine by agreement the standards measuring the fulfillment of the rights of a debtor . . . and duties of a secured party" including the right of redemption under U.C.C. § 9-623); *HH Cincinnati Textile L.P. v. Acres Capital Servicing LLC,* No. 652871/2018, 2018 WL 3056919, at *3-4 (N.Y. Sup. Ct. June 20, 2018) (right to redeem partnership interest governed by U.C.C. § 9-623 and agreement between the parties); *see also In re Rodgers*, 333 F.3d 64, 67 n.2 (2d Cir. 2003) (noting that under New York law, "a debtor loses all equitable and legal interest in property validly sold at foreclosure . . . unless of course he has a right to redeem"). Since Topco and GWH stipulated on August 27, 2018 in the Sale Order (as hereinafter defined) that the right of redemption expired at the end of the Sale Hearing date (December 7, 2018) and the Debtors did not commence the Bankruptcy Cases until December 10, 2018, Topco and its estate no longer

---

4 While cast as a "restructuring" or "reorganization", in reality the Debtors seek to resurrect their right of redemption, which expired prior to the filing of the Debtors' December 10, 2018 petitions, and prevent the entry of the Order Confirming Sale. As noted in GWH's Motion to Dismiss, the New York Court ultimately entered the Order Confirming Sale after the Debtors filed their December 10, 2018 petitions but before the Debtors filed a notice of bankruptcy in the New York Action.

5 The Note Documents were attached to the New York Complaint, which in turn was filed with the Motion to Dismiss as an exhibit to the Clasen Affidavit.

have any legal or equitable right to redeem the interTouch membership interests. As the Third Circuit has previously noted, "[w]hen a debtor's legal and equitable interests in property are terminated prior to the filing of the petition with the Bankruptcy Court that was intended to preserve the debtor's interest in such property, the Bankruptcy Court cannot then cultivate rights where none can grow." *In re Triangle Laboratories, Inc.*, 663 F.2d 463, 468 (3d Cir. 1981).

6. Indeed, it is undisputed that, on August 27, 2018, the New York Court So Ordered the *Stipulation and Order for the Public Sale of Subject Collateral* (the "Sale Order"). *See* Exhibit 5 at 1. The Sale Order provided that after the completion of the auction process, the New York Court would hold a hearing to confirm the sale of the membership interest units. *See id.*, ¶ 8. The Sale Order also provided that the Debtors "shall have the right to redeem the Subject Collateral *at any point prior to the end of the date of the Sale Hearing* by payment to GWH of the amount set forth in [the New York Court Judgment] and post-judgment statutory interest . . . which will have the effect of satisfying the Judgment and extinguishing any liens arising from the [the New York Court Judgment] and execution thereon, and canceling the Public Sale." Ex. 5, ¶ 11 (emphasis added).

7. The Debtors' right of redemption expired at the end of the day on December 7, 2018, the date of the Sale Hearing before the New York Court. *See* Ex. 5 (Sale Order) & Ex. 10 (transcript of 12/7/18 Hearing). As the Debtors' counsel noted on the record at the December 7, 2018 Sale Hearing, "under the Court's prior order of August 27th, [the Debtors] shall have the right to redeem at any point prior to the end of the date of the sale hearing by payment to Gate. *This is the sale hearing*." Ex. 10 at 2:14-18 (emphasis added).[6] The New York Court also concluded that the Debtors "have the right to redeem" but if the Debtors did not redeem by the

[6] Counsel for the Debtors also asked the New York Court to confirm that "the redemption deadline is the end of today [December 7, 2018]." 12/7/18 H. Tr. (Ex. 10) at 3:18-21.

end of the day "then [the Court has] a motion to confirm the sale, which [it] will decide on the papers." *Id.* at 6:2-9.

8.      Now, under the guise of a "reorganization", the Debtors ask this Court to resuscitate an expired right—the right to redeem the property—after (i) the Debtors stipulated and even requested[7] the terms regarding the period of redemption, (ii) the New York Court adopted the terms in the Sale Order, and (iii) the redemption date expired prior to the petition date.  Such a request falls outside the statutory and equitable powers of a bankruptcy court.  *In re Connors*, 497 F.3d at 321 (no right to cure when redemption right expired prepetition). Accordingly, the Debtors do not have a good faith basis for seeking the protections of the Bankruptcy Court and do not have "a reasonable possibility of a successful reorganization within a reasonable time."  Opp. Br., ¶ 42

**B.      Vague Reference to the Tiller Transaction Supports a Finding of Bad Faith.**

9.      The Debtors further claim that they have a "binding commitment" from Tiller International Capital LLC that would allow them to pay off the judgment debt and allow Topco to retain its membership interests in interTouch.  *See* Opp. Br., ¶ 42.  This argument buttresses a finding of bad faith.

10.      First, whether the Debtors will ultimately be able to obtain financing is entirely speculative.  Good faith cannot be established through bare bone assertions that "rehabilitation is plausible and likely" and that the "Tiller Transaction will close in the near future."  Opp. Br., ¶ 42.  Notably, the Debtors and other affiliate business entities have been claiming that such financing was imminent since as early as October 2017.  On October 6, 2017, GWH, the Debtors, and other affiliate entities entered into a Forbearance Agreement regarding enforcement

---

[7]      *See* Opp. Br., ¶ 30 ("The Debtors also requested that any sale order specifically recognize their rights under the Uniform Commercial Code to redeem prior to the closing of any sale . . . .").

of the Note. *See* New York Complaint, ¶¶ 59-63; Copy of Forbearance Agreement is attached as Exhibit L to the New York Complaint. At the time of the Forbearance Agreement, the Debtors and other non-Debtor affiliates represented that they were close to obtaining financing to pay off the Note. On May 31, 2018, counsel for the Debtors told the New York Court that "Defendants have secured $55 million in new financing with a term required to close by June 9th." 5/31/18 H. Tr. at 5:24-6:5 (attached hereto as **Exhibit 14**).[8] On June, 18, 2018, the Debtors issued a press release claiming that they had "secured a $75 million capital investment for the business." 06/18/18 Press Release (attached hereto as **Exhibit 15**). Then on June 20, 2018, Debtors, by and through their counsel, again stated in open court that they intended to secure financing and "redeem their rights in all collateral." 6/20/18 H. Tr. at 3:19-22 (attached hereto as **Exhibit 16**). At the June 2018 hearing before the New York Court, GWH's counsel explained that the latest refinancing assurance was (at least) the tenth instance where the Debtors stated that they were going to pay off the debt owed to GWH. *Id.* at 5:12-23. When, again, payment never came, on July 23, 2018, Seale Moorer Jr., filed an affidavit with the New York Court stating that "all conditions to funding were completed" as of June 17, 2018, however, for some unarticulated reason, the funding never occurred. *See* Affidavit of Seale A. Moorer, Jr., dated July 23, 2018 (attached hereto as **Exhibit 17**). On December 7, 2018, counsel for the Debtors again stated that they "expect to have that payment by the end of the day." Ex. 10 at 2:19-21. The multitude of empty promises and the length of time the Debtors have unsuccessfully worked to secure financing strongly suggests that such financing is not forthcoming and evidence the bad faith nature of the Debtors' cases.

8 The last exhibit to the Clasen Affidavit was Exhibit 13. The numbering of the exhibits attached hereto is continued, starting with Exhibit 14.

11.     Moreover, while the Debtors claim that there is a "binding commitment" by Tiller to provide $75 million in financing, the Debtors failed to provide the Court with more than they provided since October 2017:  Unsubstantiated assurances that financing would materialize.  It has not materialized.   In fact, all that the Debtors can currently state about the purported financing is that "Tiller has provided confirmation that it would soon be able to meet its investment obligations contemplated by the Tiller Transaction."  Opp. Br., ¶ 23.   Based on the current record, unsubstantiated promises of financing, including from the Tiller Transaction, do not evince good faith.

12.     Second, assuming, *arguendo*, that the Debtors could secure the proposed financing, the Court should nevertheless dismiss the Bankruptcy Cases because, as argued *supra*, the Debtors' right to redeem the membership interests in interTouch expired on December 7, 2018, two days before the petitions were filed.  The Debtors cannot now resurrect a right of redemption and, in doing so, permanently block the entry of the New York Court's Confirming Sale Order.

**C.     The *Rooker-Feldman* Doctrine Provides Additional Support of Bad Faith.**

13.     If the Bankruptcy Cases were to proceed, the Debtors' efforts at satisfying the New York Court Judgment pursuant to a purported plan of reorganization would run afoul of the *Rooker-Feldman* doctrine.   Under this doctrine, federal courts lack jurisdiction to review and overturn claims litigated to judgment in state court.  *Great Western Mining & Mineral Co.* v. *Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010).   In analyzing whether *Rooker-Feldman* precludes this Court from proceeding with the Bankruptcy Cases, the Third Circuit requires this Court to ask whether: (1) the Debtors lost in state court, (2) the Debtors complain of injuries caused by the state court judgment, (3) the judgments were rendered before the subsequent

federal proceeding was filed, and (4) the Debtors are inviting the federal court to review and reject the state court's judgment. *Id.* at 166.

14. Here, on June 29, 2018, the New York Court entered the New York Court Judgment. *See* Judgment (Ex. 4). Thereafter on August 27, 2018, the New York Court entered the Sale Order. *See* Ex. 5. The Sale Order expressly So Ordered an agreement between GWH and the Debtors triggering expiration of the right of redemption on the Sale Hearing date. Ex. 5, ¶ 11. The Sale Hearing took place on December 7, 2018, and the Debtors failed to redeem. *See* Exs. 10 & 11.

15. In turn, the Debtors now seek relief from this Court related to purported injuries sustained by the Sale Order, and in particular arising from the expiration of the redemption period contained in the Sale Order. *See* Opp. Br., ¶¶ 48-50. The Debtors further invite this Court to ignore the Sale Order and, notwithstanding promises dating back to October 2017, allow the Debtors to obtain financing and redeem the interTouch membership interests. *Id.,* ¶ 50. Thus, dismissal is warranted as the *Rooker-Feldman* doctrine would preclude the Debtors from seeking to resurrect their redemption rights.

16. Courts in the Third Circuit have previously held that *Rooker-Feldman* precludes federal jurisdiction over similar claims that would overturn or negate state court judgments related to foreclosure proceedings. In *In re New Century TRS Holdings, Inc*. 423 B.R. 467 (Bankr. D. Del. 2010), the debtor brought an adversary proceeding, seeking to challenge the validity of a debt giving rise to the foreclosure and the efficacy of the state court foreclosure proceeding. *Id*. at 468. The debtor filed the action <u>after</u> the state court had ordered and approved of a judicial sale of the collateral property. *Id.* at 470-71. The bankruptcy court dismissed the adversary proceeding, holding that it lacked jurisdiction because "the relief requested would

negate the Illinois State Court judgments" and, thus, the claims "fall within the scope of the *Rooker-Feldman* doctrine." *Id*. at 473-74. Similarly, in *In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009) the Third Circuit affirmed the bankruptcy court and the district court's rulings that *Rooker-Feldman* precluded jurisdiction over claims that were "inextricably intertwined with the Court of Common Pleas' foreclosure judgment." *Id.* The Third Circuit held that "a favorable decision for the [plaintiffs] in the federal courts would prevent the Court of Common Pleas from enforcing its order to foreclose the mortgage." *Id.* (quoting *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005) ("*Rooker-Feldman* does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders.")). Finally, in *Dubose v. Walsh*, 2008 U.S. Dist. LEXIS 74974, at *13-14 (D. Del. Sep. 29, 2008), the district court held that *Rooker-Feldman* barred an action that "rest[ed] on the premise that the state court approval of the subject foreclosure and the Sheriff's sale was invalid" because the requested relief would require the federal court to negate the orders of the Delaware Superior Court. *Id.*

17. As the exclusive reason for the instant Bankruptcy Cases was to attack the Sale Order in order to (i) resurrect Topco's right of redemption, (ii) seek additional time to obtain financing, and (iii) redeem the membership interests in interTouch, the *Rooker Feldman* doctrine provides an additional basis to support a finding of bad faith and the Motion to Dismiss should be granted.

**D. The *Primestone* Factors Similarly Support the Conclusion That the Debtors' Petitions Were Filed in Bad Faith.**

18. The Debtors also baldly assert that dismissal is inappropriate because a handful of *Primestone* factors do not support a finding that the Debtors' Chapter 11 cases lack good faith. These factors do, in fact, support a finding of bad faith. And, in any event, the proper inquiry is to evaluate all of the *Primestone* factors as a whole, with no one factor being determinative. *See*

*In re Primestone Investment Partners L.P.*, 272 B.R. 554, 557-58 (D. Del. 2002) (ordering dismissal where single asset debtor filed hours before foreclosure auction). When all the factors are viewed in total, it becomes clear that the Debtors filed the petitions in bad faith.

19. In the Opposition Brief, the Debtors do not even acknowledge several of the *Primestone* factors, including (1) no ongoing business or employees, (2) no cash or income, (3) no possibility of reorganization, and (4) the subjective intent of the debtor. Opp. Br., ¶¶ 46-52. Indeed, any argument on these issues would be futile as the Debtors concede in other portions of their brief that (1) they "have no dedicated employees or business operations" (see Opp. Br., ¶ 55), (2) "on the evening of the Petition Date . . . they had . . . no cash yet to redeem" (*id.,* ¶ 50), and (3) they filed the bankruptcy petitions with the subjective intent to "gain relief from real debt and to avoid liquidation . . . with the intent . . . to pay [GWH] on the Note *in full*" (*id.*). Moreover, as stated in Part I(A), *supra*, the Debtors possess no legal or equitable relief in the interTouch membership interest insofar as the Debtors' right to redeem expired on December 7, 2018. Thus, each of these four factors support a finding of bad faith.

20. The *Primestone* factors that the Debtors chose to address in their brief also support a finding of bad faith. The Debtors claim that (1) a debtor with a single asset can file bankruptcy in good faith; (2) the Debtors' petitions were filed for a purpose other than to avail themselves of the automatic stay, and (3) the underlying dispute is not a two-party dispute more appropriately resolved in state court. As will be discussed in turn, the Debtors' arguments are flawed and these *Primestone* factors support dismissal.

21. First, the Debtors claim that this Court has previously held that a debtor with "few assets" can file a bankruptcy petition in good faith. Opp. Br., ¶ 47. While this statement may be true in principle, both of the cases cited in support of the Debtors' proposition are easily

distinguishable and in fact actually support GWH's position. In *In re Crown Village Farm LLC,* this Court found that the debtor had filed in good faith, in large part because the "bankruptcy filing was independent of and not in response to the State Court Actions" and thus, "was not a litigation tactic." *In re Crown Village Farm LLC,* 415 B.R. 86, 93 (Bankr. D. Del. 2009). Moreover, unlike the Debtors in the present cases, the debtor in *Crown Village* filed for bankruptcy in order to maximize the value of its sole asset through a bankruptcy court-approved auction process. *Id.* at 93. Here, the Debtors indisputably filed the Bankruptcy Cases after becoming discontented with the sales process, expressly authorized by the New York Court in the Sale Order on August 27, 2018, and stipulated to by the Debtors. Notwithstanding the entry of the Sale Order, and the expiration Debtors' rights of redemption, the Debtors clearly look to this Court to block the transfer of the interTouch membership interests to GWH. *See* Opp. Br., ¶ 50 ("[interTouch] would have lost all its property and Topco, whose only asset is [interTouch], likewise.").

22. *In re PPI Enterprises*, the other case cited by the Debtors, is also distinguishable and supports dismissal based on a finding of bad faith. In that case, the Third Circuit affirmed denial of a motion to dismiss because the court concluded that the debtor had filed for bankruptcy for the valid purpose of invoking § 502(b)(6) of the Bankruptcy Code in order to cap certain claims against it. *In re PPI Enterprises (U.S.), Inc.*, 324 F.3d at 210-12. The bankruptcy court reasoned that "it was not necessarily 'bad faith' for debtors to file for bankruptcy to avail themselves of certain Code provisions." *Id.* (*citing In re PPI Enters.*, 228 B.R. 339, 345 (Bankr. D. Del. 1998)). Here, the Debtors desperately sell the prospect of a potential refinancing materializing to satisfy the New York Court Judgment as a first step toward a "visionary … impracticable scheme of resuscitation." Opp. Br. ¶ 41, (*citing Tennessee Publishing Co. v.*

*American Nat'l Bank*, 299 U.S. 18, 22 (1936)). This rationale is not a valid reason to seek bankruptcy protection, in and of itself. *See In re 15375 Memorial Corp.,* 589 F.3d 605, 620 (3d Cir. 2009).

23. The Debtors further assert that their petitions "were not filed solely to benefit from the automatic stay." Opp. Br., ¶ 48. Yet, when the Debtors' Opposition Brief is distilled to its essence, it is beyond doubt that the only reason for filing was to "obtain the protections of the Bankruptcy Code" after "Tiller was unable to timely secure funding." *Id.* Stated differently, the Debtors sought the protection of the automatic stay to buy additional time to secure funding from Tiller or some other source. As the Third Circuit has previously held, the "desire to take advantage of the protections of the Code, such as the automatic stay of litigation outside of bankruptcy, 'cannot establish *good* faith as a matter of law given the truism that every bankruptcy petition seeks some advantage offered in the Code [and that] any other rule would eviscerate any limitation that the good faith requirement places on Chapter 11 filings.'" *In re 15375 Memorial Corp.*, 589 F.3d at 620. The Debtors' fanciful hopes of consummating the Tiller Transaction (or closing on some other speculative financing) in route to satisfying the New York Court Judgment as part of a plan does not establish good faith. Indeed, when one envelopes the Debtors' arguments in opposition to dismissal by an expired right of redemption, a finding of bad faith should be inevitable.

24. Next, the Debtors claim that "there is nothing improper about seeking chapter 11 protection on the eve of foreclosure." Opp. Br, ¶ 49. The Debtors rely on *Primestone* for the proposition that "there is nothing inherently improper in a single asset debtor filing a Chapter 11 Petition. . . even shortly before or after a foreclosure proceeding has commenced." *Primestone*, 272 B.R. at 558. However, the parties are far removed from "shortly before or after" the

commencement of the New York Action. As the Debtors acknowledge, (i) the New York Court Judgment has entered; (ii) a sale process was approved and an auction completed pursuant to the Sale Order; (iii) the Debtors right of redemption expired on December 7, 2018; and (iv) the New York Court entered the Order Confirming Sale hours after the Bankruptcy Cases were filed. Opp. Br., ¶¶ 27-33. Additionally, the *Primestone* court affirmed the bankruptcy court's decision to dismiss the bankruptcy case based on a bad faith filing under very similar facts.[9] While the Debtors may claim that "sound business judgment" triggered the decision to prevent entry of the Order Confirming Sale (Opp. Br., ¶ 50), Seale Moorer's self-interest and self-dealing do not establish sound business judgment. *See, generally, Official Comm. for Unsec. Creditors v. Aust* (*In re Network Access Sols., Corp.*), 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("'Business judgment' is defined as the presumption that in making business decisions not involving direct self-interest or self-dealing, corporate directors act on an informed basis, in good faith, and in the honest belief that their actions are in the corporation's best interest."). It naturally follows, then, that self-interest and self-dealing cannot provide a foundation for good faith.

25. The Debtors further dispute that this is not a "two-party dispute" because the New York Action involves other defendants and would continue even if the membership interest in interTouch was to be transferred to GWH. This argument fails for two reasons. First, the other defendants in the New York Action are all non-debtor affiliates of the Debtors, and all controlled directly or indirectly by Seale Moorer. *See* Decl. of S. Moorer, Jr. (Doc. Entry No. 5), ¶¶ 8-9. Second, if the Debtors' Bankruptcy Cases were dismissed, and the Order Confirming Sale was

---

[9] In *Primestone*, the district court affirmed the bankruptcy court's decision to dismiss the petition on the basis of a bad faith filing. *Primestone*, 272 B.R. at 555. Similar to the Bankruptcy Cases, in *Primestone*, the debtor filed its Chapter 11 petition 16 hours before its assets would be sold at a foreclosure auction. *Id.* at 557. Also similar to the present case, the debtor improperly sought to challenge the foreclosure sale as "commercially unreasonable". *Id.* Under these circumstances, the bankruptcy court and the district court concluded that the bankruptcy petition was filed in bad faith and that dismissal was warranted. *Id.* at 558.

reinstated, GWH would own 100% of the interest in interTouch, would control interTouch's wholly owned subsidiaries, interTouch Pte. Ltd. and Nomadix; and GWH's only remaining claims would be related to the enforcement of a guaranty against Seale Moorer's ST Holdings, the only remaining non-debtor defendant in the New York Action.

**E. Dismissal Would Be in the Estates' and Creditors' Best Interest, But This Factor is Irrelevant When a Debtor Has Filed in Bad Faith.**

26. The Debtors claim that "dismissal of their cases is in no one's [interest] except [GWH's] self-interest." Opp. Br., ¶ 45. Without any citation to cases within or outside the Third Circuit involving claims of bad faith filings, the Debtors argue that dismissal must be in the best interests of creditors and the estate. *Id.* The Debtors' arguments should be rejected. Third Circuit courts do not apply a "best interest analysis" when evaluating claims of bad faith filings. *See, generally, In re Energy Future Holdings Corp*., 561 B.R. 630, 639 (Bankr. D. Del. 2016) ("The burden of proving that the LSGT Debtors' petitions were filed in good faith is on the Debtors."); *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004) ("Chapter 11 bankruptcy petitions are subject to dismissal under 11 U.S.C. § 1112(b) unless filed in good faith, and the burden is on the bankruptcy petitioner to establish its petition has been filed in good faith."); *see also 7* Collier on Bankruptcy P 1112.04 (Richard Levin & Henry J. Sommer, eds. 16th ed.) ("Likewise if the moving party seeks dismissal rather than conversion, or conversion rather than dismissal, the moving party should demonstrate why the requested alternative is in the best interests of creditors and the estate. However, if the issue is whether the petition was filed in good faith, the movant bears the initial burden to make a prima facie showing to support the allegation of bad faith, but if the movant does so, the ultimate burden rests on the bankruptcy petitioner to demonstrate good faith.").

27.     To be sure, the case law cited by GWH in its Motion to Dismiss does not provide otherwise.[10]  *See e.g., In re Jer/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 298-99 (Bankr. D. Del. 2011) (ordering dismissal based solely on finding of bad faith); *Primestone*, 272 B.R. at 558 (dismissal entered based on bad faith with no best interest analysis conducted).  Indeed, in *In re SGL Carbon Corp.*, 200 F.3d 154 (3d Cir. 1999), the Third Circuit held affirmatively that "§ 1112(b) imposes a good-faith requirement on Chapter 11 petitions" and ordered that the district court dismiss the case for bad faith without engaging in any best interest analysis.  *Id.* at 162.

28.     Additionally, even if this Court were to engage in a "best interest analysis", dismissal would continue to be appropriate.  The Debtors have admittedly faced "significant financial difficulties" that "threatened [their] very existence."  Opp. Br., ¶ 50.  GWH, on the other hand, would be acquiring the interTouch membership interests outside bankruptcy and the claims of non-insiders would remain unaltered and enforceable, and not subject to cramdown.  The Debtors' creditors would be undoubtedly in a much better position if GWH took control pursuant to the orders entered in the New York Action.

29.     Moreover, as stated *infra*, the Debtors have not made any effort to provide the Court with details of the proposed Tiller Transaction.  Thus, the Court is unable to discern the contours of the Tiller Transaction, including whether it imposes onerous or oppressive terms that will leave the unsecured creditors in a more tenuous position than if the membership interest in interTouch were transferred to GWH pursuant to the Order Confirming Sale in the New York Action.

---

[10]     The Debtors' position is illogical as it would allow debtors to file petitions in bad faith and remain in bankruptcy so long as it was in the best interest of the estates or unsecured creditors.  Such a position would eviscerate the good faith requirement in the Third Circuit.  *See Integrated Telecom* 384 F.3d  at 118-19.

**F. GWH has Established Cause for Dismissal Under § 1112(b)(4)(A) of the Bankruptcy Code.**

30. The Debtors also incorrectly argue that a finding of "substantial and continuing loss to or diminution to the estate" is a condition precedent for dismissal. *See* Opp. Br., ¶¶ 41-43. The Debtors misconstrue the contours of the Motion to Dismiss. In the first instance, GWH moved for dismissal based on the Debtors' bad faith. "Substantial or continuing loss" to the Debtors' estates is not an operative element under the bad faith analysis.

31. Alternatively, GWH also sought dismissal of the instant Bankruptcy Cases under Section 1112(b)(4)(A) of the Bankruptcy Code, which requires dismissal upon a finding of "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4). Case law suggests "that where the debtor's only business is as owner of an intangible asset, that it is not an operating company…, the court does not need to undertake an analysis of the 'loss or diminution prong.'" *In re Landmark Atl. Hess. Farm, LLC*, 448 B.R. 707, 714 (Bankr. D. Md. 2011)*; see also In re 3 RAM, Inc.*, 343 B.R. 113, 117 n.14 (Bankr. E.D. Pa. 2006) ("[W]here the debtor is not an operating company as here but merely holds an intangible asset, the loss or diminution prong of § 1112(b)(4)(A) is not relevant and [inability to effectuate a plan] remains the applicable grounds for cause.").

32. Assuming, *arguendo*, that the "substantial and continuing loss to or diminution to the estate" prong contained in § 1112(b)(4)(A) did apply, GWH has clearly met its burden. The accrual of chapter 11 administrative expenses (assuming the Court permits such expenses to be allowed); the ongoing reputational damage befalling interTouch's operating entities—Nomadix and interTouch Pte. Ltd.—as questions of their ownership remain in "no-man's-land"; and the continued accrual of post-judgment interest on the New York Judgment provide concrete examples of "substantial and continuing loss and diminution" to the Debtors' estates.

33. Further, there is no reasonable likelihood of rehabilitation. Topco's right of redemption expired on December 7, 2018. Without an interest in the interTouch membership interests, Topco has nothing that can be rehabilitated. Even if a right of redemption existed (which it doesn't), the Debtors' empty promises regarding their ability to pay GWH have been heard since October 2017 and there is no reason to anticipate the Debtors could satisfy the New York Judgment today, even if a right of redemption existed.

34. Furthermore, GWH *is* impaired under the Bankruptcy Code. *See* Opp. Brief, ¶ 44 (implying that GWH *is not impaired* because it "will make sufficient cash to pay the Judgment owed to GWH in full"). The law imposes a presumption of impairment and the Debtors cannot overcome this presumption with speculation or conjecture. *See In re PPI Enters. (U.S.*), 324 F.3d 197, 202-03 (3d Cir. 2003). The presumption of impairment is overcome only if the plan "leaves unaltered the [creditor's] legal, equitable, and contractual rights. The burden is placed on the debtor to demonstrate the plan leaves the creditor's rights unaltered." *Id.* As no plan *could* leave GWH's "legal, equitable, and contractual" rights unaltered—insofar as it has the legal right to the shares pursuant to the Sale Order following the expiration of the Debtors' rights of redemption—the Debtors have no ability to confirm a plan without GWH's votes.[11] GWH does not intend to vote in favor of any plan proposed by the Debtors.

35. Where a debtor "cannot achieve a reorganization, within the statutory requirements of the Code, then there is no point in expending estate assets on administrative expenses, or delaying creditors in the exercise of their nonbankruptcy law rights." *In re 3 RAM, Inc.*, 343 B.R. at 118.

---

[11] If GWH's judgment claim was hypothetically bifurcated to account for a deficiency claim, the GWH deficiency claim would exceed the small amount of non-insider claims and, accordingly, GWH would control two impaired classes. *See* 11 U.S.C. §1129(a)(10) (requiring at least one impaired accepting class).

## II.    IN THE ALTERNATIVE, THE COURT SHOULD ABSTAIN FROM HEARING THE BANKRUPTCY CASES PURSUANT TO SECTION 305

36.    Despite the Debtors' arguments to the contrary, abstention is also appropriate under § 305(a).  Under § 305(a)(1), the Court has discretion to dismiss a case where both the interests of the debtor and its creditors are better served.  *In re Northshore Mainland Services, Inc.*, 537 B.R. 192, 203 (Bankr. D. Del. 2015).

37.    The Debtors oppose abstention on the unsupported speculation that they can obtain "a $75 million cash infusion" that will allow them to exercise the expired right of redemption.  Opp. Br., ¶ 68.  But this argument fails for the simple fact that the Debtors' rights to redeem the membership interest in interTouch expired on December 7, 2018 and cannot be resurrected by the Court.  *See* Sec. I, *supra*.  Stated differently, the Debtors are barred, as a matter of law, from ever redeeming the membership interest in interTouch since that right expired prepetition.  Accordingly, the claimed "$65 million in value the Debtors intend to generate" is a mirage that will never be realized and cannot form the basis for remaining in bankruptcy court.

38.    Moreover, there is no evidence to suggest that the unsecured creditors would suffer if GWH were to acquire the membership interests in interTouch.  GWH remains a viable business operation, which has the ability to fund interTouch's liabilities and ensure the future success of its underlying operating businesses.  Accordingly, abstention would benefit the unsecured creditors of Holdings by transferring ownership from a cash-strapped entity on the brink of collapse (Topco and Holdings) to a viable and thriving business (GWH).

## III. ALTERNATIVELY, GWH SHOULD BE PERMITTED RELIEF FROM THE AUTOMATIC STAY IN ORDER TO COMPLETE THE SALE OF THE INTERTOUCH MEMBERSHIP SHARES

39. In the event that the Court were to deny GWH's Motion to Dismiss, the Court should alternatively enter an order granting relief from stay so that the New York Court can confirm the sale of interTouch's membership interests to GWH and have the membership interests transferred to GWH. Despite the Debtors' arguments to the contrary, relief from stay is supported by both the facts and applicable case law.

### A. The Requested Stay Relief Is Clear.

40. In a futile attempt to avoid the legal consequences of its bad faith filing, the Debtors attempt to twist the meaning of GWH's request for relief and the definition of the term "Collateral." However, a plain reading of the Motion for Relief from Stay makes abundantly clear that GWH seeks relief from the automatic stay "so that (i) the *Order Confirming Sale of interTouch Holdings, LLC* may be entered in civil action pending in the Supreme Court of the State of New York, County of New York." *See* Motion for Relief from Stay at 1. GWH does not, as the Debtors claim, seek relief from the Sale Order entered in August 2018. While both orders were inadvertently titled the "Sale Order" in the Motion for Relief from Stay, for avoidance of doubt, the GWH seeks relief from stay to allow reentry of the *Order Confirming Sale of interTouch Holdings, LLC* (referred to herein as "Order Confirming Sale") and permit the transfer of interTouch membership interests to GWO.[12]

41. Similarly, Debtors also misconstrue the term "Collateral" for their benefit. The Motion for Relief from Stay is abundantly clear that the term "Collateral" is the membership interest in interTouch. This is the only property subject to the auction process in the New York

---

[12] Incidentally, the Debtors provide no legal support for the proposition that defining two orders as the "Sale Order" could provide a basis for denying the Motion for Relief from Stay. *See* Opp. Br., ¶¶ 71-72.

Court; the only property that GWH sought to foreclose upon in the New York Action, and the only property that GWH was on the verge of obtaining when the Debtors filed the Bankruptcy Cases in bad faith. Most importantly, the membership interest in interTouch is the only "Collateral" for which GWH seeks relief from stay. The Debtors' considerable effort to confuse the issues by unnecessarily arguing the meaning of certain terms further emphasizes the weakness of their substantive arguments.

**B. There Is Cause Warranting Relief from the Automatic Stay Because the Debtors Filed in Bad Faith and There Is No Adequate Protection.**

42. As this Court held in *In re Jer/Jameson*, relief from stay under § 362(d) may be granted either (1) "for cause, including the lack of adequate protection of an interest in property" or alternatively (2) "if the debtor does not have an equity in such property; and such property is not necessary to an effective reorganization." 461 B.R. at 304 (citing § 362(d)). Contrary to the position of the Debtors, these are two independent grounds for stay relief. Further, GWH is only required to establish a lack of equity and a prima facie case for cause; while the Debtors must prove adequate protection and the feasibility of a reorganization. *Id.*

43. For all the reasons stated *supra*, GWH has established a prima facie case for cause based on a bad faith filing and an inability to confirm a Chapter 11 plan. The Debtors filed their bankruptcy petitions hours before the entry of the Order Confirming Sale with the sole purpose of extending the time to obtain additional financing after the redemption period had expired in the New York Action. The Debtors have no other stated purpose in bankruptcy and, on this basis alone, the stay should be lifted so that the New York Court can reenter the Order Confirming Sale and the interTouch membership interests transferred to GWH.

44. The Debtors, on the other hand, have failed to establish that GWH is adequately protected. The Debtors claim that they have an interest in certain operating entities (Nomadix

and interTouch Pte. Ltd.) that own "key assets" and "contracted recurring revenues" worth over $100 million.[13] The basis for and validity of these valuations notwithstanding, the Debtors concede that these assets are not property of the estate and do not adequately protect GWH's claim against the membership interest in interTouch.[14] The Debtors cannot claim that GWH is adequately protected against the potential loss in value to the membership interest in interTouch by claiming that other assets outside of bankruptcy may hold value sufficient to satisfy the debt.

45. Moreover, GWH has serious concerns that the value of the interTouch membership interests will be irreparably damaged as a result of, among other things, the reputational damage to the operating entities resulting from knowledge in the marketplace of the New York Action and the Bankruptcy Cases. Faced with these valid concerns, the Debtors' only response is to claim that no harm will occur because it is in the Debtors' best interest to maintain value. Opp. Br., ¶ 80-81. This bare assertion provides little comfort to GWH and does nothing to establish adequate assurance when the Debtors have admitted to being on the brink of financial collapse. *Id.*, ¶ 50.

**C. There is No Support For Debtors' Position That Post-Judgment Interest Can Serve as Adequate Protection.**

46. Finally, without any supporting case law or other authority, the Debtors posit that GWH is adequately protected by the post-judgment interest awarded by the New York Court. Adequate protection is defined under § 361 of the Bankruptcy Code. *See* 11 U.S.C. § 361. Adequate protection does not include interest accruing on a prepetition judgment entered in state court. In arguing that GWH is adequately protected, the Debtors are unable to cite to a single case where post-judgment interest was held to operate as adequate protection. In fact, GWH's

[13] The Debtors would need to establish this valuation with admissible evidence at the hearing.

[14] If the Court were to conclude that an evidentiary hearing were necessary on these issues, GWH will be prepared to present evidence indicating that the Debtors and their affiliate entities are not worth anywhere near $100 million.

survey of the case law indicates just the opposite; accruing interest and expenses are irrelevant to the issue of adequate protection. *See In re Young*, Docket No. 7-11-12554 JS, 2011 Bankr. LEXIS 3300, at *27-28 (Bankr. D.N.M. Aug. 29, 2011) (post-judgment interest is not relevant to adequate protection inquiry); *In re Sun Valley Ranches, Inc.,* 38 B.R. 595, 598 (Bankr. D. Idaho 1984).

47. The Debtors' proposition is not only unsupported, but it is also illogical. As post-judgment interest continues to accrue, the judgment debt becomes larger, thereby reducing the possibility that any collateral will satisfy the judgment debt. The accruing interest, coupled with the fact that the interTouch membership interests could lose value during the stay, provides additional support that GWH lacks adequate protection and that relief from stay is warranted.

**CONCLUSION**

48. For the foregoing reasons and the reasons set forth in the Motion to Dismiss, GWH respectfully requests that this Court enter an order dismissing with prejudice the Debtors' Chapter 11 cases for cause pursuant to § 1112(b) of the Bankruptcy Code or, in the alternative, enter an order abstaining from hearing and dismissing the Debtors' Chapter 11 cases pursuant to § 305(a) of the Bankruptcy Code.

49. In the alternative, for the foregoing reasons and the reasons set forth in the Motion for Relief from Stay, GWH requests that this Court enter an order granting the GWH relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code permitting (i) the New York Court's entry of the Sale Order in the New York Action; and (ii) the transfer of Topco's 100% membership interest in interTouch to GWH in accordance with the Sale Confirmation Order. GWH further requests that any order granting this Motion not be stayed under Bankruptcy Rule 4001(a)(3), but be effective and enforceable immediately upon entry.

Dated: January 8, 2019

SAUL EWING ARNSTEIN & LEHR LLP

*/s/ Lucian B. Murley*
Lucian B. Murley (DE Bar No. 4892)
1201 North Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE 19899
Telephone: (302) 421-6898
Facsimile: (302) 421-5864
luke.murley@saul.com

-and

Joseph L. Clasen
Patrick M. Birney
Ian T. Clarke-Fisher
Andrew A. DePeau
**ROBINSON & COLE LLP**
666 Third Avenue
New York, New York 10017
Telephone: (212) 451-2900
jclasen@rc.com
iclarke-fisher@rc.com

*Counsel for Gate Worldwide Holdings LLC*